UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDIMPACT HEALTHCARE SYSTEMS, INC., et al.,<br><br>                              Plaintiffs,<br><br>v.<br><br>IQVIA INC., et al.,<br><br>                              Defendants. | Case No.:  19-cv-1865-GPC (DEB)<br><br>**ORDER:**<br><br>  **(1) REGARDING PLAINTIFFS' MOTION FOR PROTECTIVE ORDER; AND**<br>  **(2) GRANTING PLAINTIFFS' MOTION TO FILE DOCUMENTS UNDER SEAL**<br><br>**[DKT. NOS. 151, 157]** |

**I.     BACKGROUND**

This is a suit for misappropriation of trade secrets. In their Amended Complaint, Plaintiffs allege IMS Health (now Defendants IQVIA Inc., IQVIA Ltd., and IQVIA AG) wrongfully obtained and used data from Plaintiffs' pharmacy benefits management ("PBM") platform. Dkt. No. 93.

Before the Court is the parties' dispute over whether to include an "Attorney's Eyes Only – Outside Counsel Only" confidentiality category in a protective order. Dkt. No. 151-1 at 4. Plaintiffs seek the additional confidentiality category to prevent Defendants' in-house counsel from accessing their trade secrets and source codes. *Id*. Defendants

contend that the following in-house attorneys and staff should have access to this information: Harvey Ashman, Laura Kibbe, Maureen Nakly, and Lisa Katz (collectively referred to as "Designees").[1] The parties briefed the issue. Dkt. Nos. 151, 153, 159.[2]

For the foregoing reasons, the Court GRANTS Plaintiffs' request to preclude access by Mr. Ashman and DENIES Plaintiffs' request as to the remaining Designees.

## II.  LEGAL STANDARDS

"Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *GXP Capital, LLC v. Argonaut EMS*, No. 17-cv-2283-GPC (BLM), 2018 U.S. Dist. LEXIS 102581, at *7 (S.D. Cal. June 19, 2018) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). To resolve disputes over protective orders "distinguishing between outside and in-house counsel," courts balance the conflicting interests of the parties involved. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). On one end of the balancing scale is the risk of inadvertent disclosure of the producing party's confidential information; on the other end is the risk that restricting access to confidential information might impair the requesting party's ability to litigate the case. *Kaseberg v. Conaco*, No. 15-cv-01637-JLS (DHB), 2016 WL 3997600, at *13 (S.D. Cal. July 26, 2016).

When determining whether in-house counsel may have access to confidential information, the Court must "examine factually all the risks and safeguards surrounding inadvertent disclosure by *any* counsel. . . ." *Brown Bag Software*, 960 F.2d at 1470 (emphasis in original). A crucial factor is "whether in-house counsel was involved in

---

[1]  In their Opposition, Defendants agreed to remove Adam Shanti from the list of in-house counsel who may receive access to Plaintiff's trade secrets and source codes. Dkt. No. 153 at 9 n.3.

[2]  Defendants request an evidentiary hearing. Dkt. No. 153 at 13. The Court finds that the briefing, declarations, and exhibits submitted by the parties provide all the information and evidence necessary to decide this Motion. Defendants' request is, therefore, DENIED.

competitive decision-making; that is, advising on decisions about pricing or design made in light of similar or corresponding information about a competitor." *Id.* (internal citation and quotations omitted). Also, the "nature of the claims and of a party's opportunity to develop its case through alternative discovery procedures factors into decisions on the propriety of such protective orders." *Id.*

At the outset, Plaintiffs bear the burden of showing that a risk of inadvertent disclosure exists (i.e., that Defendants' Designees participate in competitive decision-making). *See ODS Techs., L.P. v. Magna Entm't Corp.*, 583 F. Supp. 2d 1141, 1144–45 (C.D. Cal. 2008) ("[D]efendants must show that [plaintiff's in-house counsel designated attorney's] relationship to [plaintiff] is such that she gives advice or participates in [competitive decision-making]."). If the Designees are involved in competitive decision-making, the burden shifts to Defendants to demonstrate actual prejudice to their case if access is not granted. *See id.*

### III. DISCUSSION

Plaintiffs assert that their trade secrets and source codes are proprietary, closely guarded, and that their disclosure to Defendants' in-house counsel will result in competitive harm. Dkt. No. 151-1 at 4. In response, Defendants argue that there is no risk of competitive harm because: (1) the parties are not competitors, and (2) the Designees are not competitive decisionmakers. Dkt. No. 153 at 4.

The Court accepts Plaintiffs' assertion that their trade secrets are proprietary, and prejudice will result if they are disclosed to their competitors. Defendants' argument that the parties are not competitors is in dispute and goes to the merits of this case. The Court, therefore, is in no position to make a finding on this ultimate issue at this early stage of the litigation. Plaintiffs sued Defendants for misappropriation of trade secrets indicating that Plaintiffs believe (be it meritorious or not) that the parties have at least some overlapping interests in the same industry. *See Vampire Family Brands, LLC v. Applebees Restaurants, LLC*, No. 19-cv-09222-DOC-ADSx, 2020 WL 7380143, at *2 (C.D. Cal. Sept. 30, 2020) (rejecting similar argument that parties are not in competition because "one of Plaintiff's

claims is nevertheless based on its allegation that Defendants' marketing of a particular cocktail 'closely resembles' one of Plaintiff's own cocktails"). Additionally, the Court notes that both parties operate in the pharmaceutical management industry and that Defendants could enter into the PBM space in the future, even if they are not directly involved in that space now. *Accord Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 555 (C.D. Cal. 2007) (finding good cause for a protective order even though "[plaintiff] asserts that it currently sells to different buyers, this assertion does not mean that [plaintiff] will not choose to become a direct competitor of [defendant] in the future"). The Court, therefore, finds that Plaintiffs have adequately established potential harm should their confidential information become inadvertently disclosed.

Next, the Court will balance the conflicting interests of the parties involved based on the *Brown Bag* factors on an attorney-by-attorney basis. *Brown Bag Software*, 960 F.2d at 1470; *see also U.S. Steel Corp. v. U.S.*, 730 F.2d 1465, 1468 (Fed. Cir. 1984) ("Whether an unacceptable opportunity for inadvertent disclosure exists, however, must be determined . . . by the facts on a counsel-by-counsel basis. . . .").

Plaintiffs claim each Designee is a competitive decisionmaker because "knowledge of MedImpact's trade secrets will inherently put these . . . individuals in conflicted positions." Dkt. No. 151-1 at 10–12. Plaintiffs argue disclosure to these individuals would, therefore, result in "far too great a risk . . . of inadvertent disclosure." *Id*. at 13. Specifically, Plaintiffs present evidence showing Mr. Ashman's position at IQVIA, Dkt. No. 151-9 at 2, his former testimony as an IMS Health in-house lawyer, Dkt. No. 151- 8 at 5, and attach Mses. Nakly, Kibbe, and Katz's LinkedIn profiles listing their employment history, Dkt. Nos. 151-11–151-13.

Defendants respond that the Designees are not competitive decisionmakers. Dkt. No. 153 at 9–12. Defendants submitted a declaration from each Designee containing identical assertions regarding duties they do not perform:

- [They] do not make any IQVIA decisions regarding business issues like pricing, product design or product development.

- [They are] not . . . involved in any discussions at IQVIA about the design of IQVIA's products or services, in light of the design, features, functions or other details of a competitor's products or services.

- [They are] not . . . involved in any IQVIA assessments of competitive product services.

- [They are] not . . . responsible for constructing go-to-market strategies as against IQVIA competitors.

- [They are] not . . . responsible for pricing decisions at IQVIA.

- [They are] not . . . responsible for setting the economic terms of IQVIA intellectual property licenses.

Dkt. Nos. 153-2 at 3–4; 153-3 at 3–4; 153-4 at 2–3; 153-4 at 3. Further, Defendants describe safeguards in place to prevent inadvertent disclosures of information in possession of their in-house counsel, including secure offices, restricted computer storage, and a secure third-party vendor platform to host the document repository. *See, e.g.*, Dkt. No. 153-3 at 4.

The Court evaluates each Designee in turn.

### Harvey Ashman

Mr. Ashman's duties involve at least some of the competitive decision-making described in *Brown Bag*. *Compare* Dkt. Nos. 151-9 at 2 (speaker profile from "text IQ" website stating Mr. Ashman is IQVIA's current senior vice president and deputy general counsel), *and* 153-2 at 2–4 (Mr. Ashman describing his roles as "providing advice in connection with potential or actual infringement or non-compliance issues" and "intellectual property, data protection and information security, privacy, information governance, antitrust, contracting, compliance, and licensing" issues, as well as "deciding whether a competitor should receive a license to access [certain] IQVIA data"), *with Brown Bag Software*, 960 F.2d at 1471 (finding in-house counsel was a competitive decisionmaker where he "was responsible for advising his employer on a gamut of legal issues, including contracts, marketing, and employment"). Therefore, having reviewed Mr. Ashman's

affidavit, Plaintiff's exhibits, and the parties' arguments, the Court concludes that Mr. Ashman should not have access to Plaintiffs' trade secrets and source codes.

The Court further finds that denying Mr. Ashman access to Plaintiffs' trade secrets and source codes will not significantly prejudice Defendants. Unlike *Brown Bag* and *Mad Catz Interactive, Inc. v. Razor USA, Ltd.*, Case No. 13-cv-2371-GPC (JLB), 2014 WL 4161713) (S.D. Cal. Aug. 9, 2017) (cited by Defendants), Mr. Ashman is neither counsel of record nor lead trial counsel. Prejudice to Defendants is also minimized because Mr. Ashman will not be denied access to all discovery, just Plaintiffs' trade secrets and source codes. Lastly, and as discussed below, the Court is allowing three of Defendants' in-house Designees access to Plaintiffs' confidential information. Those Designees will be available to assist outside counsel. Accordingly, the *Brown Bag* factors support denying Mr. Ashman access to Plaintiffs' trade secrets and source codes.

<u>Maureen Nakly, Laura Kibbe, Lisa Katz</u>

With respect to Mses. Nakly, Kibbe, and Katz, the Court has reviewed their declarations and the parties' exhibits and finds no basis to conclude that they are competitive decisionmakers. *See* Dkt. Nos. 151-11–151-13; 153-3–153-5. *See Javo Beverage Co. v. California Extraction Ventures, Inc.*, No. 19-cv-1859-CAB (WVG), 2020 WL 2062146, at *2 (S.D. Cal. Apr. 29, 2020) ("[U]nrebutted statements made by counsel asserting that he does not participate in competitive decision-making, which the court has no reason to doubt, form a reasonable basis to conclude that counsel is isolated from competitive decision-making.") (citing *Matsushita Elec. Indus. Co. v. United States*, 929 F.2d 1577, 1580 (Fed. Cir. 1991)); *cf. U.S. Steel Corp. v. U.S.*, 730 F.2d at 1469 ("[S]tatus as in-house counsel cannot alone create that probability of serious risk to confidentiality and cannot therefore serve as the sole basis for denial of access."). Because they are not competitive decisionmakers, and because they have safeguards in place to protect against further disclosure of Plaintiffs' trade secrets and source codes, the Court finds that the *Brown Bag* factors do not support denying Mses. Nakly, Kibbe, or Katz access to any of the discovery generated in this case.

### IV. MOTION TO SEAL

Plaintiffs request sealing Exhibit 1 to their Reply. Dkt. No. 157. Plaintiffs assert that this exhibit is an excerpt from a confidential arbitration proceeding. *Id*. at 3. Good cause appearing, the Court GRANTS the Motion to Seal and orders Exhibit 1 be filed under seal. *See Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179–80 (9th Cir. 2006) ("[A] particularized showing . . . under the 'good cause' standard of Rule 26(c) will suffice to warrant preserving the secrecy of sealed discovery material attached to non-dispositive motions.") (internal citations, quotations, and edits omitted).

### V. CONCLUSION

The Court **GRANTS** Plaintiffs' Motion for a protective order precluding access to Mr. Ashman and **DENIES** the Motion as to Mses. Kibbe, Katz, and Nakly. The Court directs the parties to meet and confer and jointly submit (by email to efile_butcher@casd.uscourts.gov) a proposed protective order consistent with this order on or before **February 11, 2021**. The document lodged at Dkt. No. 158 **SHALL BE FILED UNDER SEAL**.

**IT IS SO ORDERED**.

Dated: February 3, 2021

Honorable Daniel E. Butcher
United States Magistrate Judge