1
2
3
4
5
6
7
8

9        UNITED STATES DISTRICT COURT

10        SOUTHERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12  MEDIMPACT HEALTHCARE SYSTEMS, INC., a California corporation, MEDIMPACT INTERNATINAL LLC, a California limited liability company, MEDIMPACT INTERNATIONAL HONG KONG LTD., a Hong Kong company,<br><br>Plaintiff,<br><br>v.<br><br>IQVIA INC., a Connecticut corporation; IQIA Ltd., a UK company; IQVIA AG, a Swiss company, OMAR GHOSHEH, individually, and AMIT SADANA, individually,<br><br>Defendant. | Case No.:  19cv1865-GPC(LL)<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**[Dkt. No. 144.]** |

24

25        Before the Court is Defendants' motion for partial summary judgment seeking to

26  dismiss claims that were either adjudicated or could have been adjudicated in a prior

27  international arbitration.  (Dkt. No. 144.)  Plaintiff filed an opposition on January 22,

28  2021.  (Dkt. No. 170.)  Defendants replied on February 12, 2021.  (Dkt. No. 178.)  Based

1

on the reasoning below, the Court DENIES Defendants' motion for partial summary judgment.

## Procedural Background

On September 26, 2019, Plaintiffs Medimpact Healthcare Systems, Inc. ("MHSI"), Medimpact International LLC ("MIL"), and MedImpact International Hong Kong Ltd. ("MI-HK") (collectively "Plaintiffs" or "MedImpact") filed a Complaint against Defendants IQVIA Holdings, Inc. ("IQVIA Holdings"), IQVIA Inc., IQVIA AG, Omar Ghosheh ("Dr. Ghosheh") and Amit Sadana ("Mr. Sadana") (collectively "Defendants") alleging twelve causes of action for misappropriation of trade secrets under state and federal law and other claims. (Dkt. No. 1, Compl.) On March 24, 2020, the Court granted Defendants' motion to dismiss for lack of personal jurisdiction with leave to amend. (Dkt. No. 91.) On April 7, 2020, Plaintiffs filed the operative first amended complaint ("FAC"). (Dkt. No. 93.) The FAC alleges ten causes of action for 1) breach of fiduciary duty; 2) inducing breach of contract; 3) intentional interference with prospective economic advantage; 4) negligent interference with prospective economic advantage; 5) intentional interference with a contractual relationship; 6) unfair competition; 7) conspiracy; 8) misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836; 9) misappropriation of trade secrets under California Uniform Trade Secrets Act ("CUTSA"); and 10) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). (*Id.*) The FAC removed IQVIA Holdings as a defendant; therefore, the remaining named defendants are IQVIA Inc., IQVIA Ltd., IQVIA AG, (collectively "IQVIA Defendants"), Dr. Ghosheh and Sadana. (*Id.*) After the Court ruled on Defendants' motion to dismiss on August 27, 2020, the remaining claims are the first cause of action for breach of fiduciary duty, seventh cause of action for conspiracy as to Dr. Ghosheh and Mr. Sadana, eighth cause of action for misappropriation of trade secret under DTSA, the ninth cause of action for misappropriation of trade secrets under CUTCA and tenth cause of action

19cv1865-GPC(LL)

1  for RICO violations.  (Dkt. No. 130.)  Defendants answered on September 10, 2020.

2  (Dkt. No. 131.)

**Factual Background**

**A.  International Arbitration**

Prior to the litigation in this case, on January 23, 2018, Plaintiffs MIL and MI-HK filed claims in arbitration against Dimensions Healthcare LLC ("Dimensions") with the Dubai International Financial Centre-London Court of International Arbitration ("DIFC-LCIA") pursuant to the terms of the parties' Joint Venture Agreement ("JVA") and Services and License Contract ("SLC").  (Dkt. No. 170-5, Bennett Decl. Ex. A.)  On April 16, 2019, the Arbitrator made a number of legal and factual findings in a 75-page order entitled Partial Final Award on Liability.  (*Id.* at 2-78.)  On July 24, 2019, the Arbitrator issued another 34-page order on damages entitled Final Award.  (Dkt. No. 170-6, Bennett Decl., Ex. B.)

**B.  Allegations in the FAC**

By way of a brief summary of the allegations in the FAC, on February 1, 2012, MedImpact entered into a joint venture ("JV") with Dimensions in order to expand their pharmacy benefit management ("PBM") services to the Middle East.  MHSI spent more than 30 years and invested hundreds of millions of dollars developing its proprietary PBM platform.  The JV established MedImpact Arabia ("MIA") to provide PBM services to the Gulf Region.  Dimensions is a United Arab Emirates ("UAE") company and has extensive regulatory contacts and presence in the Middle East.  Defendant Dr. Ghosheh is a co-founder of Dimensions, had been employed with Dimensions, and was a board member of MIA.  Mr. Sadana is a senior level IQVIA executive and was a board member of MIA.  The JV was mutually beneficial as MedImpact brought its PBM technology to the joint venture and Dimensions contributed its knowledge of the local market.

The JVA and SLC required Dimensions to maintain the confidentiality of confidential and proprietary information, not use the confidential and proprietary information for any purpose outside the contracts, to limit the use of claims data provided

19cv1865-GPC(LL)

by Plaintiffs for providing JV services, and agreed that any business opportunity that arose under the agreement within the Territory would strictly belong to the joint venture. During the course of the joint venture, Plaintiffs allege that Dimensions violated all these provisions during its acquisition by IMS Health AG, now IQVIA AG and post-acquisition.  Through the acquisition, each IQVIA Defendant gained access to MedImpact's trade secrets and large repository of pharmaceutical data.

In addition, beginning in 2015 and continuing until at least to late 2017, Plaintiffs claim that Dimensions developed the Adjudication Insurance Management System ("AIMS"), a platform similar to PBM using Medimpact's trade secret and confidential information.  Finally, prior to terminating the JV, IQVIA AG and Dimensions stole a number of JV clients, including Oman Insurance, the JV's largest client, by offering AIMS to replace the PBM product.  Once Defendants successfully developed and marketed AIMS and stole the JV's largest customer, Plaintiffs claim Dimensions terminated the JV.

Pursuant to the arbitration provisions in the JVA and SLC, Plaintiffs MIL and MI-HK filed claims before the DIFC-LCIA seeking relief against Dimensions for breaches of the JVA and SLC.  The instant action was filed on September 26, 2019 and seeks relief against IQVIA Defendants and Dr. Ghosheh and Mr. Sadana.

Dimensions is a corporate affiliate of IQVIA Defendants.  (Dkt. No. 178-1, Ds' Reply SSUF, No. 1.)  Specifically, Dimensions is a wholly owned subsidiary of Defendant IQVIA AG, which is in turn a wholly owned subsidiary of IQVIA Holdings. (*Id.*, No. 2.)  In addition, Defendant IQVIA Inc. is a wholly owned subsidiary of IQVIA Holdings while Defendant IQVIA Ltd. is a subsidiary of IQVIA Holdings.  (*Id.*)

Defendants, who were not parties in the underlying arbitration, move for partial summary judgment asking the Court to dismiss certain claims or allegations that were ruled upon in their favor by the Arbitrator based on the doctrines of claim and issue preclusion.  Plaintiffs oppose.

/ / /

## Discussion

**A.     Legal Standard on Federal Rule of Civil Procedure 56**

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986).  Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).   A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp.,* 477 U.S. at 323.  The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. *Id.* at 322-23.  If the moving party fails to bear the initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324.  If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Id.* at 325.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.  v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." *Fontana*

5

*v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001).  The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact.  *Anderson*, 477 U.S. at 255.

**B.    Claim Preclusion and Issue Preclusion**

Defendants move for summary judgment arguing claim and issue preclusion bar re-litigation of the already adjudicated claims by the DIFC-LCIA (1) concerning data theft or "PBM Claims Data Theft"; and (2) "account-based damages."  (Dkt. No. 144-1 at 5, 14.[1])  Plaintiffs assert that claim and issue preclusion do not apply to this case.

As an initial matter, neither party addresses the choice of law issue based on a ruling in an international arbitration but presume and apply federal law.  "The preclusive effect of a federal-court judgment is determined by federal common law."  *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008); *Semtek Int'l Inc. v. Lockheed Martin Corp*., 531 U.S. 497, 507 (2001).  While the underlying arbitration was conducted abroad in the Middle East, Dimensions recently filed a petition to confirm international arbitration award in this Court.  (Case No. 21cv193-GPC(DEB).)  Therefore, to the extent this Court will issue a final order of judgment on the petition to confirm arbitration, it will apply federal law.  *See Taylor*, 553 U.S. at 891.

The doctrines of claim and issue preclusion preclude parties from raising matters that they had a full and fair opportunity to litigate and protect against "the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions."  *Taylor,* 553 U.S. at 892 (quoting *Montana v. United States*, 440 U.S. 147, 153-54 (1979)).  "Claim preclusion precludes relitigation of claims that were raised or should have been raised in earlier litigation", *San Remo Hotel, L.P. v. S.F. City & Cnty*. 364 F.3d 1088, 1094 (9th Cir. 2004), while "[i]ssue preclusion . . . forecloses relitigation of factual or legal issues

---

[1] Page numbers are based on the CM/ECF pagination.

that have been actually and necessarily decided in earlier litigation." *Id.* "Unlike issue preclusion, claim preclusion prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated. If a later suit advances the same claim as an earlier suit between the same parties, the earlier suit's judgment 'prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'" *Lucky Brand Dungarees, Inc. v. Marcel Fashions Group, Inc.*, 140 S. Ct. 1589, 1595-96 (2020) (quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979)).  Defendants bear the burden to demonstrate that claim preclusion applies. *See Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 855 (9th Cir. 2016).

The elements of claim preclusion are "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas, LLC,* 946 F.3d 542, 545 (9th Cir. 2019) (quoting *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003) (internal quotation marks omitted)).  The elements of issue preclusion are "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom [issue preclusion] is asserted was a party or in privity with a party at the first proceeding." *Garity*, 828 F.3d at 858 n. 8 (quoting *Paulo v. Holder*, 669 F.3d 911, 917 (9th Cir. 2011)).  Both claim and issue preclusion require privity between the parties in the prior litigation and this case. *See United States v. Bhatia*, 545 F.3d 757, 759 (9th Cir. 2008).

### 1.    Privity

The parties dispute whether there is privity between the Defendants in this case and Dimensions, the defendant in the prior arbitration.  Defendants summarily argue that the IQVIA Defendants are all in privity with Dimensions because it is a wholly owned subsidiary of Defendant IQVIA AG which is a wholly owned subsidiary of IQVIA Holdings.  (Dkt. No. 144-1 at 19, 25.)  Defendants also allege that Dr. Ghosheh and Mr.

1    Sadana, as board members of the JV, were in privity with Dimensions as they
2    participated in the PBM Claims Data Theft through Dimensions and controlled
3    Dimensions.  (Dkt. No. 144-1 at 19-20 & n. 6; Dkt. No. 183 at 27 (UNDER SEAL).)
4    Plaintiffs respond that Defendants failed to bear their burden to demonstrate privity by
5    failing to cite to any evidence in support.  (Dkt. No. 170 at 28-29.)

6         The Court agrees and concludes that Defendants fail to demonstrate with legal
7    authority and supporting facts that there is privity between Defendants and Dimensions
8    for purposes of claim and issue preclusion.

9         First, on the legal authority, Defendants' reliance on *In re Imperial Corp. of*
10   *America*, 92 F.3d 1503 (9th Cir. 1996) is misplaced.  In that case, the Ninth Circuit
11   applied the "virtual representative"[2] theory of privity but this theory was rejected by the
12   United States Supreme Court in *Taylor v. Sturgell,* 553 U.S. at 904 (2008) ("[W]e
13   disapprove the theory of virtual representation on which the decision below rested."); *see*
14   *also FastVDO LLC v. LG Elecs. Mobilecomm USA, Inc*., Case No.: 16-cv-02499-H-
15   WVG, 2016 WL 9526400, at *3 (S.D. Cal. Dec. 13, 2016) (rejecting defendants' primary
16   reliance on *In re Imperial Corp of America* as disapproved by *Taylor*).

17        In *Taylor*, the Supreme Court noted the "general rule that 'one is not bound by a
18   judgment *in personam* in a litigation in which he is not designated as a party or to which
19   he has not been made a party by service of process.'"  *Taylor,* 553 U.S. at 893.  Because a
20   party who was not a party to a case does not typically have a "full and fair opportunity to
21   litigate", the Court recognized the "deep-rooted historic tradition that everyone should
22   have his own day in court."  *Id.* at 892-93.  But the Court enumerated six categories of
23   exceptions to the general rule where (1) the nonparty agreed to be bound by the

24

25   _____

26   [2] "A non-party can be bound by the litigation choices made by his virtual representative . . . when two
     parties are so closely aligned in interest that one is the virtual representative of the other. . . ."  *Irwin v.*
27   *Mascott*, 370 F.3d 924, 929 (9th Cir. 2004).  There must be a close relationship, substantial participation
     or control by the non-party in the named party's suit and tactical maneuvering plus an identity of
28   interests and adequate representation.  *Id.* at 930.

determinations in the prior case; (2) the nonparty has a "pre-existing 'substantive legal relationship[s]'" with the party bound by the judgment; (3) the nonparty was adequately represented in the first action by someone with the same interests (i.e. class actions and suits brought by trustees, guardians or other fiduciaries); (4) the nonparty "'assume[d] control' over the litigation in which that judgment was rendered"; (5) a party to the previous litigation was a "designated representative" or proxy of the nonparty; and (6) the nonparty is barred by a special statutory scheme from relitigating an issue already adjudicated. *Id*. at 893-95.  The Court rejected the "virtual representation" standard as too expansive and reiterated that the exceptions to the general rule barring nonparty preclusion are "discrete" and "apply in limited circumstances." *Id.* at 898 (citation omitted).

Neither party addresses *Taylor* but it appears that the second exception, where the non-parties have a "substantive legal relationship" with the party bound by the arbitration, would apply in this case.  "The substantive legal relationships justifying preclusion are sometimes collectively referred to as 'privity.'"[3]  *Taylor,* 553 U.S. at 894 n.8.  As specified by the United States Supreme Court, substantive legal relationships include "preceding and succeeding owners of property, bailee and bailor, [and] assignee and assignor".  *See id.* at 894 (citing Restatement (Second) of Judgments §§ 43, 44, 52, 55).  The Restatement (Second) of Judgment also includes a number of other legal relationships such as "co-owners and co-tenants of property; decedents and their heirs, successors in interest and survival claimants; bailors and bailees; joint obligees; assignors and assignees; parties to a contract, and in some cases promisees and third-party beneficiaries; indemnitors and indemnitees; corporations and their officers or shareholders; partners and their partnerships; and unincorporated associations and their

---

[3] The Supreme Court explained that because "[t]he term 'privity'. . . has also come to be used more broadly, as a way to express the conclusion that nonparty preclusion is appropriate on any ground", it avoided using the term, "privity" in its opinion.  *Taylo*r, 533 U.S. at 894 n.8.

members." *Headwaters Inc. v. U.S. Forest Serv*., 399 F.3d 1047, 1053 (2005) (citing Restatement (Second) of Judgments §§ 43–61 (1982)).  However, a corporation and its subsidiaries are not among the list of "substantive legal relationship" provided in the Restatement.  *See* Restatement (Second) of Judgments §§ 43–61; *see also FastVDOLLC*, 2016 WL 9526400, at *4 (noting that the six exceptions enumerated in *Taylor* did not include a wholly owned subsidiary and the defendant failed to show that it was in privity with the LG entities that were parties to the earlier action).  Notwithstanding that, the Supreme Court did not limit the "substantive legal relationship" exception to the ones named in the Restatement (Second) of Judgments.  *See Taylor,* 553 U.S. at 894.

Because *Taylor* is binding on this Court and by failing to address *Taylor,* Defendants have not demonstrated that the general rule that nonparties may not be bound by a prior judgment does not apply.  *See Taylor*, 553 U.S. at 893.

Next, in their brief, Defendants also cite to *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983), where a defendant in a prior suit was wholly owned by the defendant in a subsequent suit, and collateral estoppel barred the second suit.  The Ninth Circuit looked at whether there was "substantial identity" or "sufficient commonality of interest" between the parties.  *Id.* at 1140.  While the *Gottheiner* court did not reference "virtual representation", the "substantial identity" or "sufficient commonality of interest" analysis bears similarity to language used to demonstrate virtual representation and Ninth Circuit cases have cited *Gottheiner t*o support virtual representation.  *See Irwin v. Mascott,* 370 F.3d 924, 929 (9th Cir. 2004) (citing *In re Gottheiner* as support for virtual representation); *Shaw v. Hahn*, 556 F.3d 1128, 1131 (9th Cir. 1995) (same).  Nonetheless, district courts continue to cite and rely on the "substantial identity" or "sufficient commonality of interest" language of privity post-*Taylor.  See Pierce v. Wilmington Savings Fund Society, FSB*, Case No. 2:17-cv-04512-CAS(PLAx), 2017 WL 3836037, at *4 (C.D. Cal. Aug. 30, 2017); *Sepehry-Fard v. Nationstar Mortg. LLC,* Case No.: 14–CV–03218–LHK 2015 WL 332202, at *13 (N.D. Cal. Jan. 26, 2015); *Dye v. First Source Funding Group, Inc.,* No. 2:12–cv–3090 MCE AC PS, 2013 WL 1907737,

at *4 (E.D. Cal. May 7, 2013); *but see Fast VDO LLC*, 2016 WL 9526400, at *4 ("substantial identity between the parties/commonality of interest is also not listed as an exception in *Taylor*").

It is not clear whether the "substantial identity" or "sufficient commonality of interest" standard still remains viable after *Taylor* but even it was, in *Gottheiner,* the defendant provided evidence demonstrating that the defendant owned all the outstanding shares of the stock of the party to the prior litigation and exercised control over its day to day affairs. *Id*. Here, no evidence is provided to support the relationship between the IQVIA corporate entities. *See Zendel v. Circle Location Sers., Inc*., CASE NO.: CV 11-07963 SJO (CWx), 2012 WL 12877182, at *4 (C.D. Cal. Apr. 5, 2012) (declining to dismiss claims based on privity between parent/wholly owned subsidiary relationship because the defendant failed to provide "clear, unambiguous proof" of the relationship between the complicated Disney entities)

Second, on the facts, Defendants, in their moving brief, fail to cite to any evidence supporting their position that there is privity between Dimensions and the IQVIA Defendants, and between Dimensions and Defendants Dr. Ghosheh and Mr. Sadana. To the extent that the facts in Defendants' Undisputed Material Facts and Supporting Evidence stating that "Dimensions is wholly-owned by Defendant IQVIA AG, which is in turn wholly-owned by non-party IQVIA Holdings Inc. Defendant IQVIA Inc. is likewise a wholly owned subsidiary of IQVIA Holdings Inc. Defendant IQVIA Ltd. is a subsidiary of IQVIA Holdings Inc", (Dkt. No. 144-3, Ds' UMF No. 2), are not disputed,[4]

_____

[4] To support the corporate structure of the IQVIA Defendants, Defendants cite to IQVIA Holdings Form 10-K for fiscal year 2019 filed with the Securities and Exchange Commission. (Dkt. No. 144-2, Taber Decl., Ex. J at 19, 20.) Form 10-K merely shows that IQVIA Inc, and IQVIA Ltd are subsidiaries of IQVIA Holdings. It does not show that IQVIA Inc. is a wholly owned subsidiary of IQVIA Holdings, does not show that IQVIA AG is a subsidiary of IQVIA Holdings or that Dimensions is a wholly owned by IQVIA AG. (*See id*.) There is no listing of Dimensions or IQVIA AG on the Form 10-K. The Court notes there is an entity named IQVIA RDS AG on Form 10-K but it is not clear whether IQVIA AG and IQVIA RDS AG are the same entity. (*See id*.) While the Court questions the evidence provided by

Defendants have still failed to provide evidence demonstrating a "substantial legal relationship" between Dimensions and each IQVIA Defendant.  *See Taylor* 553 U.S. at 894.  First, there are no facts to support the substantial legal relationship between Dimensions and IQVIA AG.  Second, as to IQVIA Inc. and IQVIA Ltd, Defendants do not explain, legally or factually, how they are in privity with Dimensions.  In other words, whether separate subsidiaries of one corporation can have a "substantial legal relationship" with each other can support a finding of privity is not answered by Defendants' papers.  In sum, the Court concludes that Defendants have not provided any evidence of a substantial legal relationship between Dimensions and IQVIA AG; Dimensions and IQVIA Inc; and Dimensions and IQVIA Ltd. to support the privity element of issue and claim preclusion.

Furthermore, Defendants do not provide any evidence concerning Dr. Ghosheh and Mr. Sadana's privity with Dimensions and rely solely on allegations in the FAC which is not sufficient on a motion for summary judgment.

Therefore, the Court concludes Defendants have failed to bear their burden on summary judgment demonstrating an absence of a genuine issue of material fact on an element of their defense, that is privity.   Because privity has not been demonstrated for both claim and issue preclusion, the Court need not address the remaining factors under both doctrines.  *See Fernandez v. Citigroup Mort. Loan Trust, Inc*., Case No. SA CV 19-02519-DOC-JDE, 2020 WL 616214, at *3 (C.D. Cal. Aug. 17, 2020) ("Since one element of the issue preclusion doctrine is not met, the Court need not address the remaining elements."); *Genchev v. Detroit Diesel Corp*., No. 08-CV-1021 W(NLS), 2008 WL 4492648, at *3 (S.D. Cal. Oct. 2, 2008) (declining to address the first two elements of claim preclusion because the defendant failed to establish that privity existed); *Yusko v. Horace Mann Ins. Co*., No. 2:13–cv–00418–GMN–CWH, 2014 WL 580777, at *2 (D.

---

Defendants to support the alleged corporate structure of the IQVIA Defendants, Plaintiffs did not oppose these facts and so the Court construes them as undisputed.

1  Nev. Feb. 13, 2014) (because the defendant failed to establish privity, the court did not
2  address the remaining two elements of claim preclusion).  Thus, the Court DENIES
3  Defendants' motion for partial summary judgment.

### Conclusion

5  Based on the above, the Court DENIES Defendants' motion for partial summary
6  judgment.  The hearing set on March 5, 2021 shall be **vacated**.

7  IT IS SO ORDERED.

8  Dated:  March 2, 2021

Hon. Gonzalo P. Curiel
United States District Judge

19cv1865-GPC(LL)