UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDIMPACT HEALTHCARE SYSTEMS, INC., a California corporation, MEDIMPACT INTERNATINAL LLC, a California limited liability company, MEDIMPACT INTERNATIONAL HONG KONG LTD., a Hong Kong company,<br><br>         Plaintiff,<br><br>v.<br><br>IQVIA HOLDINGS INC., a Delaware corporation, IQVIA INC., a Connecticut corporation, IQVIA AG, a Swiss company, OMAR GHOSHEH, individually, and AMIT SADANA, individually,<br><br>         Defendant. | Case No.:  19cv1865-GPC(LL)<br><br>**ORDER DENYING IQVIA INC. AND IQVIA AG'S MOTION FOR LEAVE TO FILE SECOND AMENDED ANSWER AND COUNTERCLAIMS**<br><br>[REDACTED- ORIGINAL FILED UNDER SEAL]<br><br>[DKT. NO. 305.] |

  Before the Court is Counterclaim-Plaintiffs IQVIA Inc. and IQVIA AG's ("IQVIA Counterclaim-Plaintiffs") motion for leave to file a second amended answer and counterclaims.  (Dkt. No. 305.)   Medimpact Healthcare Systems, Inc., Medimpact International LLC, and MedImpact International Hong Kong Ltd. filed an opposition.

1

(Dkt. No. 323.)  IQVIA Counterclaim-Plaintiffs filed their reply.  (Dkt. No. 348.)  Based on the reasoning below, the Court DENIES the motion for leave to file a second amended answer and counterclaims.

## Background[1]

Prior to the filing of the complaint in this case, on January 23, 2018, Plaintiffs Medimpact International LLC ("MIL"), and MedImpact International Hong Kong Ltd. ("MI-HK") filed claims in arbitration against Dimensions Healthcare LLC ("Dimensions"), which was acquired by IQVIA AG in August 2016, with the Dubai International Financial Centre-London Court of International Arbitration ("DIFC-LCIA") for breaches of the terms of the parties' Joint Venture Agreement ("JVA") and Services and License Contract ("SLC").  (Dkt. No. 170-5, Bennett Decl. Ex. A.)  On April 16, 2019, the Arbitrator made a number of legal and factual findings in an order entitled Partial Final Award on Liability.  (*Id.* at 2-78.[2])  On July 24, 2019, the Arbitrator issued another order on damages entitled Final Award.  (Dkt. No. 170-6, Bennett Decl., Ex. B.)

On April 7, 2020, Plaintiffs Medimpact Healthcare Systems, Inc. ("MedImpact U.S."), Medimpact International LLC ("MIL"), and MedImpact International Hong Kong Ltd. ("MI-HK") (collectively "Plaintiffs") filed the operative first amended complaint ("FAC") against Defendants IQVIA Holdings, Inc., IQVIA Inc., IQVIA AG, Omar Ghosheh and Amit Sadana (collectively "Defendants").[3]  (Dkt. No. 93, FAC.)  The FAC alleges ten causes of action for 1) breach of fiduciary duty; 2) inducing breach of contract; 3) intentional interference with prospective economic advantage; 4) negligent interference with prospective economic advantage; 5) intentional interference with a contractual relationship; 6) unfair competition; 7) conspiracy; 8) misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836; 9)

---

[1] The Court incorporates by reference the factual background presented in its prior order on Defendants' motion to dismiss.  (*See* Dkt. No. 130 at 3-10.)
[2] Page numbers are based on the CM/ECF pagination.
[3] The original complaint was filed on September 26, 2019.  (Dkt No. 1, Compl.)

misappropriation of trade secrets under California Uniform Trade Secrets Act ("CUTSA"); and 10) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c).  (*Id.*)

After the Court ruled on Defendants' motion to dismiss the FAC on August 27, 2020, the remaining claims are the first cause of action for breach of fiduciary duty, seventh cause of action for conspiracy against Dr. Ghosheh and Mr. Sadana, and eighth cause of action for misappropriation of trade secret under DTSA, ninth cause of action for misappropriation of trade secrets under CUTSA and tenth cause of action for RICO violations against all Defendants.  (Dkt. No. 130.)  Defendants filed an answer on September 10, 2020.  (Dkt. No. 131.)  On October 15, 2020, Defendants filed an amended answer.  (Dkt. No. 134.)  On March 2, 2021, the Court denied Defendants' motion for partial summary judgment on issue and claim preclusion based on proceedings before the international arbitration.  (Dkt. No. 195.)  Pursuant to the Court's ruling on May 14, 2021 granting in part Defendants' motion for reconsideration, they renewed their motion for partial summary judgment on claim and issue preclusion which the Court denied on August 19, 2021.  (Dkt. Nos. 222, 228, 294.)

On September 1, 2021, IQVIA AG and IQVIA Inc. filed a motion for leave to file a second amended answer and counterclaims against MedImpact U.S. and Dale Brown (collectively "MedImpact Counter-Defendants").  (Dkt. No. 305.)  They seek to add counterclaims for 1) misappropriation of trade secrets under the DTSA; 2) misappropriation of trade secrets under CUTSA; 3) violations of RICO; 4) breach of fiduciary duty and duty of loyalty against Dale Brown; and 5) civil conspiracy against Dale Brown.  (Dkt. No. 305-3, Proposed Second Am. Ans. and Counterclaims.)

The proposed counterclaim alleges that MedImpact U.S. and Dale Brown targeted Dimensions for the express purpose of stealing Dimensions' trade secrets concerning drug-to-diagnosis indication and contraindication edits.  (*Id.* ¶¶ 1, 3.)  "Drug-to-diagnosis indication edits provide a rejection alert when a patient requests to fill a prescription for a medication that is not used to treat that patient's medical diagnosis. For example, an

indication edit would reject the incorrect prescription of an antibiotic—used to treat bacterial infections—for a viral infection, such as influenza. Relatedly, drug-to-diagnosis contraindication edits provide a rejection alert when a patient requests to fill a prescription for a medication that may result in an adverse drug event if the medication is taken by a patient with certain medical conditions." (*Id.*) These edits save lives and minimize errors, fraud, waste, and/or abuse of medications and drive savings. (*Id.* ¶¶ 21, 23.) MedImpact U.S. did not have the ability to offer such drug-to-diagnosis indication and contraindication edits before the Joint Venture ("JV") (*Id.* ¶ 5.) According to IQVIA Counter-Plaintiffs, the unlawful scheme dated back to 2011, months before the JV was created in February 2012. (*Id.* ¶ 1.) Medimpact U.S. gained access to Dimensions' trade secrets through the JV and stole the trade secrets, bypassing years of research and development, to incorporate them into MedImpact's U.S.'s pharmacy benefit management ("PBM") platform. (*Id.* ¶¶ 34-35.) After the JV was terminated, MedImpact U.S. planned to replace Dimensions by misappropriating IQVIA Counter-Plaintiffs' trade secrets. (*Id.* ¶¶ 44, 46.) MedImpact U.S., in fact, offered and/or provided drug-to-diagnosis indication and contraindication edits for sale in the United States, Australia, South Africa, Canada and Turkey. (*Id.* ¶ 48.)

## Discussion

### A.    Federal Rule of Civil Procedure 16

Once a district court has established a deadline for amended pleadings, and that deadline has passed, a party's ability to amend a pleading is initially governed by Federal Rule of Civil Procedure ("Rule") 16. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). Rule 16 provides that a pretrial scheduling order can only be modified "upon a showing of good cause." Fed. R. Civ. P. 16(b). "Newly discovered facts can constitute good cause to modify a scheduling order." *Ogier v. KC Care, LLC*, Case No. 3:18-cv-00361-YY 2019 WL 3210089, at *2 (D. Or. June 17, 2019) (citing *Mentor Graphics Corp. v. EVE-USA, Inc.,* 13 F. Supp. 3d 1116, 1121 (D. Or. 2014)); *Woodward v. Cnty. of*

1  *San Diego*, Case No.: 17-CV-2369 JLS (KSC)2020 WL 1820265, at *3 (S.D. Cal. Apr. 10, 2020) ("Under Rule 16(b), a finding of diligence is proper when the moving party obtains new evidence through the discovery process and promptly moves to amend the pleading.").

"Good cause" also requires a showing of diligence of the party seeking an amendment once the new facts are discovered. *Johnson*, 975 F.2d at 609.  The pretrial schedule may be modified "if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id*.  In general, the focus of the diligence inquiry is on the time between the moving party's discovery of new facts and its asking leave of the court to file an amended pleading. *See Zivkovic v. S. Cal. Edison Corp.,* 302 F.3d 1080, 1087-88 (9th Cir. 2002).

"Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification.  If that party was not diligent, the inquiry should end." *Johnson,* 975 F.2d at 609 (internal citation omitted).  Rule 16's good cause standard is more stringent that the liberal amendment standard under Rule 15. *AmerisourceBergen Corp. v. Dialysist W., Inc*., 465 F.3d 946, 952 (9th Cir. 2006).

Once "good cause" is shown under Rule 16(b), then the moving party must demonstrate that an amendment is proper under Rule 15(a). *Johnson*, 975 F.2d at 608. Under Rule 15(a), courts consider five factors when assessing a motion for leave to amend: undue delay, bad faith, futility of amendment, prejudice to the opposing party and whether the plaintiff has previously amended the complaint. *Ahlmeyer v. Nev. Sys. of Higher Educ*., 555 F.3d 1051, 1055 n. 3 (9th Cir. 2009).

**B.   Analysis**

In this case, because the deadline to file amended pleadings passed on December 14, 2020, (Dkt. No. 139), Rule 16(b) applies.  In their motion, IQVIA Counter-Plaintiffs argue that they only recently discovered the factual bases underlying their proposed counterclaims based on recent production of records by Plaintiffs in August 2021.  (Dkt.

1  No. 305-1 at 17 n.8.) They also maintain that judicial economy will be served if the
2  proposed counterclaims are litigated in a single lawsuit. (*Id.*) Plaintiffs respond that
3  IQVIA Counter-Plaintiffs previously knew of the claims raised in the proposed
4  counterclaims; in fact, the same proposed counterclaims were raised in the prior
5  arbitration proceedings. (Dkt. No. 323 at 7, 14-15.) In reply, IQVIA Counter-Plaintiffs
6  claim the proposed counterclaims are not the same as the ones raised in the prior
7  arbitration, which concluded in February 2019, because they are alleging wrongdoing by
8  MedImpact U.S. through the present. Moreover, they did not learn until August 2021
9  that MedImpact U.S. actually misappropriated trade secrets in its MedBlocX PBM
10 product because MedImpact U.S. has refused to respond to document requests relating to
11 MedBlocX in this case as well as in the prior arbitration. (Dkt. No. 348 at 9, 10.)

      Based on a review of the counterclaims raised in the arbitration and the proposed
counterclaims sought to be raised this case, the Court concludes that the discovery
obtained in August 2021 are not "new" facts[4] to support IQVIA Counter-Plaintiffs'
counterclaim but instead additional misappropriating conduct supporting the proposed
counterclaims IQVIA Counter-Plaintiffs have known about since the arbitration.

      In arbitration, Dimensions filed a counterclaim against MIL and MI-HK for breach
of the JVA and SLC for having used ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Dkt. No. 355, Bennett Decl., Ex. 3, Response to Arb. ¶ 52 at 201
(UNDER SEAL).) Specifically, they claimed that the technology MIL and MI-HK
misused concern the ability to manage ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*Id.* ¶ 54(b) (UNDER SEAL).) Moreover, ▮▮▮▮▮▮▮▮▮▮▮

---

[4]While not specifying what evidence was "new" in their motion, IQVIA Counter-Plaintiffs, in reply, state they recently obtained evidence in August 2021 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Dkt. No. 357, Swedlow Decl. ¶ 14 (UNDER SEAL).) The Swedlow declaration also attaches emails where MedImpact sought to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* (UNDER SEAL).)

|   |   |
|---|---|
| 1 | ███████████████████████████████████████ |
| 2 | █████████████████████████. (*Id.* ¶ 59 (UNDER SEAL).)  Further, |
| 3 | ███████████████████████████████████████ |
| 4 | ████████████████████ (*Id.* ¶ 67 (UNDER SEAL).)  These issues were |
| 5 | further presented with evidentiary support in "████████████████████ |
| 6 | ████████████████████."  (Dkt. No. 355, Bennett Decl., Ex. 6 at |
| 7 | 257-65 (UNDER SEAL).)  Further, in arbitration, Dimensions' expert concluded that the |
| 8 | ███████████████████████████████████████ |
| 9 | ███████████████████████████████████████ |
| 10 | █████████████████████████████."  (*Id.*, Ex. 7 at 277 |
| 11 | (UNDER SEAL).)  ████████████████████████ |
| 12 | █████████████ (*Id.* (UNDER SEAL).) |

After the evidentiary hearing, Dimensions attempted to withdraw its counterclaim; however, the Arbitrator exercised his discretion to retain jurisdiction over the counterclaim, and dismissed it.  (Dkt. No. 355, Bennett Decl., Ex. 1, ¶¶ 200-03 (UNDER SEAL).)  The Arbitrator noted that the counterclaim "was the subject of lengthy written submissions, document production, evidence of fact and expert evidence and oral submissions at the Evidentiary Hearing."  (*Id.* ¶ 200 (UNDER SEAL).)  The facts underlying the breach of contract claims based on the misappropriation of trade secrets and breach of fiduciary duty raised in the arbitration mirror the facts supporting the counterclaims for the misappropriation of trade secrets and breach of fiduciary duty raised in this case.

In reply, IQVIA Counter-Plaintiffs argue that the proposed counterclaims are not coextensive with the arbitration counterclaim because this case concerns conduct by MedImpact U.S. that continue to the present day.  (Dkt. No. 348 at 9.)  Their argument essentially concedes that the evidence provided in discovery are not "new" but are merely additional facts supporting the same core operative facts that formed the basis of the counterclaims in the arbitration.  Interestingly, IQVIA Counter-Plaintiffs do not challenge

or dispute that the facts supporting the counterclaims raised in the arbitration are similar to those raised in the proposed counterclaims. (*See* Dkt. No. 348.) Because the proposed counterclaims are premised on the very same facts set forth in the prior arbitration, IQVIA Counter-Plaintiffs have failed to demonstrate good cause. *See In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013), *aff'd sub nom. Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015) (quoting the district court's decision that "[t]he good cause standard typically will not be met where the party seeking to modify the scheduling order has been aware of the facts and theories supporting amendment since the inception of the action.").

"The Federal Rules of Civil Procedure contemplate that plaintiffs may not have access to evidence to support their claims until they engage in the discovery process. This is why parties are permitted to allege facts upon information and belief. Thus, Plaintiff's lack of access to documentary evidence to prove his new causes of action did not prevent him from raising those allegations in either his initial or first amended complaints." *Alsabur v. Autozone, Inc.*, Case No.: CV 13–01689–KAW, 2014 WL 1340730, at *3 (N.D. Cal. Apr. 3, 2014) (factual allegations in a pleading do not need to be supported by actual evidence at the time of filing) (citing Fed. R. Civ. P. 11(b)(3)[5]). Here, even if IQVIA Counter-Plaintiffs did not have the additional evidence of MedImpact U.S.'s alleged misappropriation or Mr. Brown's alleged breach of fiduciary duty, the proposed counterclaims could have and should have been raised when IQVIA Counter-Plaintiffs filed their answer. IQVIA Counter-Plaintiffs have failed to demonstrate diligence in seeking to file the proposed second amended answer and counterclaim under Rule 16(b).[6]

---

[5] Rule 11(b)(3) provides that an attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; . . . ." Fed. R. Civ. P. 11(b)(3).

[6] IQVIA Counter-Plaintiffs raise a number of arguments not relevant on a Rule 16(b) analysis such as prejudice to them as the moving party, "fundamental unfairness" and judicial efficiency. Instead, the

IQVIA Counter-Plaintiffs further claim that they should be granted leave to amend to add their counterclaim in order to bolster their existing unclean hands defense.[7] (Dkt. No. 305-1 at 17.) Plaintiff objects arguing that IQVIA Counter Plaintiffs should not be allowed to backdoor their counterclaims into an unclean hands affirmative defense. (Dkt. No. 323 at 31.)

The unclean hands affirmative defense is alleged in the operative Amended Answer claiming, "Plaintiffs' First Amended Complaint is barred, in whole or in part, by the doctrine of unclean hands. Among other things, Plaintiffs' allegations in this case are inconsistent with their allegations in the prior arbitral proceeding." (Dkt. No. 134 at 27). The proposed Second Amended Answer seek to amend the unclean hands affirmative defense to "Plaintiffs' First Amended Complaint is barred, in whole or in part, by the doctrine of unclean hands. Among other things, Plaintiffs' allegations in this case are inconsistent with their allegations in the prior arbitral proceeding. Defendants additionally incorporate herein by reference all allegations set forth in IQVIA Inc.'s and IQVIA's AG's Counterclaims against MedImpact Healthcare Systems Inc. and Dale Brown." (Dkt. No. 305-3, Swedlow Decl., Ex. A at 30.)

IQVIA Counter-Plaintiffs fail to provide relevant legal authority that bolstering an affirmative defense satisfies the "good cause" standard under Rule 16(b).[8] Accordingly,

---

Ninth Circuit has held that the key question under a Rule 16 "good cause" analysis is diligence. *See Johnson*, 975 F.2d at 609 ("If that party was not diligent, the inquiry should end."); *see also McBroom v. Ethicon, Inc.*, No. CV-20-02127-PHX-DGC, 2021 WL 961777, at *1 (D. Az. Mar. 15, 2021) ("Defendants cite no Ninth Circuit authority holding that judicial efficiency satisfies Rule 16(b)'s good cause requirement. . . ."). Here, IQVIA Counter-Plaintiffs lacked diligence by not alleging the proposed counterclaims at the time the answer was filed.

[7] While IQVIA Defendants withdrew its unclean affirmative defense in a supplemental response to interrogatories because at the time they did not have sufficient evidentiary support for the defense, (Dkt. No. 357 at 25-26 (UNDER SEAL)), they submitted a supplemental interrogatory response reasserting their unclean hands defense, (*id.*). Because no court order dismissing that defense was filed, the affirmative defense of unclean hands remains.

[8] Because IQVIA Counter-Plaintiffs failed to demonstrate good cause under Rule 16(b), the Court need not address Rule 15. *See Johnson*, 975 F.2d at 608.

the Court DENIES IQVIA Counter-Plaintiffs' motion for leave to file a second amended answer and counterclaims.

## Conclusion

Based on the reasoning above, the Court DENIES IQVIA Counter-Plaintiffs' motion for leave to file a second amended answer and counterclaim.  The hearing set on November 19, 2021 shall be **vacated.**

IT IS SO ORDERED.

Dated:   November 15, 2021

Hon. Gonzalo P. Curiel
United States District Judge