1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  | MEDIMPACT HEALTHCARE                    Case No.:  19cv1865-GPC(DEB)
12  | SYSTEMS, INC., a California
    | corporation, MEDIMPACT                  **ORDER GRANTING IN PART AND**
13  | INTERNATINAL LLC, a California          **DENYING IN PART PLAINTIFFS'**
    | limited liability company, MEDIMPACT    **MOTION FOR PARTIAL**
14  | INTERNATIONAL HONG KONG LTD.,           **SUMMARY JUDGMENT**
15  | a Hong Kong company,

16  |                          Plaintiff,      [REDACTED - ORIGINAL
    |                                         **[FILED UNDER SEAL]**
17  | v.

18  | IQVIA HOLDINGS INC., a Delaware         **[DKT. NO. 377.]**
    | corporation, IQVIA INC., a Connecticut
19  | corporation, IQVIA AG, a Swiss
    | company, OMAR GHOSHEH,
20  | individually, and AMIT SADANA,
    | individually,
21
22  |                          Defendant.

23

24       Before the Court is Plaintiffs' motion for partial summary judgment based on issue

25  preclusion.  (Dkt. No. 377.)  Defendants filed an opposition.  (Dkt. No. 394.)  Plaintiffs

26  filed their reply.  (Dkt. No. 399.)  The Court finds that the matter is appropriate for

27  decision without oral argument pursuant to Local Civ. R. 7.1(d)(1).  Based on the

28

reasoning below, the Court GRANTS in part and DENIES in part Plaintiffs' motion for partial summary judgment.

## Procedural Background

On April 7, 2020, Plaintiffs Medimpact Healthcare Systems, Inc. ("MHSI"), Medimpact International LLC ("MIL"), and MedImpact International Hong Kong Ltd. ("MI-HK") (collectively "Plaintiffs" or "MedImpact") filed the operative first amended complaint[1] ("FAC") against Defendants IQVIA Holdings, Inc., IQVIA Inc., IQVIA AG, Omar Ghosheh ("Dr. Ghosheh") and Amit Sadana ("Mr. Sandana") (collectively "Defendants").  (Dkt. No. 93, FAC.)  Relevant to the instant motion, one remaining claim is the eighth cause of action for misappropriation of trade secret under the Defend Trade Secrets Act ("DTSA").[2]  (Dkt. No. 130.)

On December 3, 2020, Defendants moved for partial summary judgment arguing claim and issue preclusion barred re-litigation of the already adjudicated claims, in their favor, by a prior international arbitration between MIL and MI-HK and non-party Dimensions Healthcare LLC ("Dimensions") with the Dubai International Financial Centre-London Court of International Arbitration on (1) the "PBM Claims Data Theft" claim; and (2) the "account-based damages" claim.  (Dkt. No. 144.)  On March 2, 2021, the Court denied Defendants' motion for partial summary judgment on issue and claim preclusion because they failed to demonstrate privity, an element of both theories of

---

[1] The FAC alleged ten causes of action for 1) breach of fiduciary duty; 2) inducing breach of contract; 3) intentional interference with prospective economic advantage; 4) negligent interference with prospective economic advantage; 5) intentional interference with a contractual relationship; 6) unfair competition; 7) conspiracy; 8) misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836; 9) misappropriation of trade secrets under California Uniform Trade Secrets Act ("CUTSA"); and 10) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c).

[2] After the Court ruled on Defendants' motion to dismiss the FAC, the remaining claims are the first cause of action for breach of fiduciary duty and seventh cause of action for conspiracy against Dr. Ghosheh and Mr. Sadana; and eighth cause of action for misappropriation of trade secret under DTSA, ninth cause of action for misappropriation of trade secrets under CUTSA and tenth cause of action for RICO violations against all Defendants.  (Dkt. No. 130.)

preclusion, between Dimensions and each IQVIA Defendant.  (Dkt. No. 195.)  On May 14, 2021, the Court granted in part Defendants' motion for reconsideration and found that Defendants had demonstrated privity only as to Defendants IQVIA AG and IQVIA Inc. and not as to IQVIA Holdings, Inc.  (Dkt. No. 222.)  Subsequently, Defendants IQVIA AG and IQVIA Inc. renewed their motion for partial summary judgment on claim and issue preclusion.  (Dkt. No. 228.)  On August 19, 2021, the Court denied Defendants' renewed motion concluding that they failed to demonstrate that there was an "identity of claims" on the PBM Claims Data Theft and the account based damages claims between this case and the arbitration.  (Dkt. No. 294 at 11-12; 16-19.[3])  Specifically, the Court found, on claim preclusion, that Defendants failed to "explain, parcel out, and provide specifics that the Claims Data Theft claims in this case and in the arbitration arise from the same transactional nucleus of facts."  (*Id.* at 12.)  Therefore, the Court also concluded that issue preclusion did not apply because that claim was not actually litigated in the arbitration.  (*Id.* at 16.)  As to the account-based damages issue, on claim and issue preclusion, the Court concluded that Defendants failed to demonstrate that the damages for a breach of contract claim would render the same relief as a misappropriation of trade secrets claim.  (*Id.* at 16-17.)

Now before the Court is Plaintiffs' fully briefed motion for partial summary judgment seeking issue preclusion on two elements of a claim for misappropriation of trade secret under the DTSA that the Arbitrator made in Plaintiffs' favor.  (Dkt. Nos. 377, 394, 399.)

## Background

According to the FAC, MHSI spent more than 30 years and invested hundreds of millions of dollars developing its proprietary PBM platform.  (Dkt. No. 93, FAC ¶ 14.)  A PBM platform determines, in real time, whether a pharmacy claim should be dispensed to

---

[3] Page numbers are based on the CM/ECF pagination.

the patient or whether the claim should be rejected.  (*Id.* ¶¶ 1, 32.)  Through its features, the PBM platform provides access to unparalleled data related to prescription drug transactions as well as business, financial, operational, technical and clinical know-how. (*Id.*)  Non-Party Dimensions Healthcare LLC ("Dimensions") is a United Arab Emirates ("UAE") company and has extensive regulatory contacts and presence in the Middle East.  (*Id.* ¶¶ 5, 30.)

On February 1, 2012, MIL, Dimensions and MedImpact Arabia Limited[4] ("MIA") entered into a Joint Venture Agreement ("JVA") and Services and License Contract ("SLC") in order to expand Plaintiffs' PBM services to the Middle East.  (Dkt. No. 396, Bennett Decl., Exs. 13, 14 (UNDER SEAL).)  The JVA and SLC were mutually beneficial as MedImpact brought its PBM technology to the joint venture and Dimensions contributed its knowledge of the local market.  (Dkt. No. 93, FAC ¶¶ 5, 30.) On January 1, 2014, MIL assigned its rights and interest in the JVA to Plaintiff MI-HK. (*Id.* ¶ 32.)

Under the Licensed Technology provision, Article 10.1 of the JVA provides that "███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████."  (Dkt. No. 396, Bennett Decl., Ex. 13, JVA, Art. 10.1 (UNDER SEAL).)  On Confidentiality, Article 11.1 of the JVA provides,

███████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████

---

[4] The FAC describes MIA as the entity used to provide PBM services to the Gulf Region.  (Dkt. No. 93, FAC ¶ 31.)



(*Id.*, JVA, Art 11.1(a) (UNDER SEAL).)  The

(*Id.*, JVA, Art 11.1(b)(iii) (UNDER SEAL).)

Similarly, the Confidentiality provision of the SLC under Article 9 provides,

.

(Dkt. No. 396, Bennett Decl., Ex. 14, SLC, Art. 9.1 (UNDER SEAL).)  In turn,

(*Id.*, SLC, Art. 9.2 (UNDER SEAL).)

According to the FAC, beginning in 2015 and continuing until at least to late 2017, Plaintiffs claim that Dimensions secretly developed the Adjudication Insurance Management System ("AIMS"), a competing platform similar to MedImpact's PBM, using Medimpact's trade secret and confidential information.  (Dkt. No. 1, FAC ¶¶ 55, 56.)  Prior to terminating the JVA, IQVIA AG and Dimensions stole a number of joint

venture clients, including Oman Insurance, the joint venture's largest client, by offering AIMS to replace the PBM product.  (*Id.* ¶¶ 58, 60.)  Once Defendants successfully developed and sold AIMS, Dimensions terminated the JVA on July 23, 2017.  (*Id.* ¶ 60.)

## A.    International Arbitration in Dubai

Due to Dimensions' conduct in developing AIMS and selling it to the joint venture clients and pursuant to the arbitration clause in the JVA and SLC, on January 23, 2018, Plaintiffs MIL and MI-HK filed claims in arbitration against Dimensions with the Dubai International Financial Centre-London Court of International Arbitration ("DIFC-LCIA") seeking relief against Dimensions for a number of breaches of the JVA and SLC, including Articles 10.1 and 11.1(b) of the JVA and Article 9.2 of the SLC, and misappropriation of trade secret under U.S., English and UAE Law.  (Dkt. No. 396, Bennett Decl., Ex. 16, Statement of Claim ¶¶ 1.4, 5.9-5.32, 7.5 (UNDER SEAL); *see also id.*, Ex. 1, Partial Final Award on Liability ("Partial Final Award") ¶¶ 89(5) & (6)[5] (UNDER SEAL).)

The Arbitration Tribunal ("Tribunal") referred to the claims for breaches of Articles 10.1 and 11.1 of the JVA and Article 9.2 of the SLC as the "Contractual IP Claim" and the misappropriation of MedImpact's intellectual property rights under U.S., English and UAE law as the "Statutory IP Claim."  (Dkt. No. 396, Bennett Decl., Ex. 1, Partial Final Award ¶¶ 97(2)(iii) & (iv) (UNDER SEAL).)

Pursuant to the JVA and SLC, ███████████████████████
███████████████.  (Dkt. No. 396, Bennett Decl. Ex. 1, Partial Final Award on Liability ¶¶ 27, 28 (UNDER SEAL).)  On April 16, 2019, after extensive discovery and an evidentiary hearing, the Arbitrator made numerous legal and factual findings in a 75-page order entitled Partial Final Award on Liability.  (*Id.*, Ex. 1 (UNDER SEAL).)

---

[5] As noted by Plaintiffs, the Partial Final Award contains a typo stating US Trade Secrets Directive 2016/943 instead of EU Trade Secrets Directive 2016/943.

1   Relevant to the instant motion, on the Contractual IP Claim, the Arbitrator found

2   that Dimensions ████████████████████████████████████████

3   ████████████████████████████████████████████

4   ██████████████████████████████████████████████████

5   ████████████████   (*Id.* ¶¶ 178(1), 203(2) (UNDER SEAL).)   On the

6   Statutory IP Claim, the Arbitrator ruled:

7   ████████████████████████████████████████

8   ████████████████████████████████████████

9   ██████████████████████████████████████████

10  ████████████████████████████████████████

11  ██████████████████████████████████████████

12  ██████████████████████████████████████

13  ████████████████████████████████████████

14  ██████████████████████████████████████████

15  ██████████████████████████

16  (*Id.* ¶ 179 (internal footnotes omitted) (UNDER SEAL).)

17  On July 24, 2019, the Arbitrator issued a 34-page order on damages entitled Final

18  Award.  (Dkt. No. 396, Bennett Decl., Ex. 2, Final Award (UNDER SEAL).)   He

19  ████████████████████████████████████████

20  ████████████████████████████████████████████

21  ██████   (*Id.*, Final Award ¶ 107 (UNDER SEAL).)   On April 20, 2021, pursuant to the

22  parties' joint motion for entry of judgment, this Court confirmed the international

23  arbitration award pursuant to 9 U.S.C. § 207 and final judgment was entered.  (Case No.

24  21cv193-GPC(DEB), Dkt. No. 22.)  Dimensions has fully paid the damages to MIL and

25  MI-HK.

26  Because the Tribunal ruled that MedImpact's trade secrets are "protectable

27  intellectual property" and "Dimensions misappropriated the Trade Secrets in the course

28  of developing AIMS", Plaintiffs move for partial summary judgment arguing issue

preclusion bars re-litigation of two elements of the DTSA claim that "MedImpact trade secrets that were used to build AIMS are protectable" and "AIMS uses Plaintiffs' misappropriated trade secrets." (Dkt. No. 377-1 at 30.) They also seek partial summary judgment that IQVIA AG misappropriated trade secrets in the course of providing AIMS to NUPCO-Wasfaty. (*Id.*) Defendants oppose arguing that judicial estoppel applies to bar Plaintiffs' inconsistent arguments made in this motion and the prior motion for partial summary judgment, and the Tribunal explicitly stated it would not rule on the statutory misappropriation claim under the DTSA. (Dkt. No. 394 at 21-23.) They also claim that there are genuine issues of material fact in dispute on whether IQVIA AG misappropriated MedImpact's trade secrets. (*Id.* at 18-19, 27.)

**Discussion**

**A.  Federal Rule of Civil Procedure 56**

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp.,* 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. *Id.* at 322-23. If the moving party fails to bear the initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

1    Once the moving party has satisfied this burden, the nonmoving party cannot rest

2    on the mere allegations or denials of his pleading, but must "go beyond the pleadings and

3    by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions

4    on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*,

5    477 U.S. at 324.  If the non-moving party fails to make a sufficient showing of an

6    element of its case, the moving party is entitled to judgment as a matter of law.  *Id.* at

7    325.  "Where the record taken as a whole could not lead a rational trier of fact to find for

8    the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co.  v.*

9    *Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In making this determination, the court

10   must "view[] the evidence in the light most favorable to the nonmoving party." *Fontana*

11   *v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001).  The Court does not engage in credibility

12   determinations, weighing of evidence, or drawing of legitimate inferences from the facts;

13   these functions are for the trier of fact.  *Anderson*, 477 U.S. at 255.

14   **B.    Judicial Estoppel**

15   As an initial matter, Defendants argue that Plaintiffs' motion should be denied

16   based on judicial estoppel because Plaintiffs' argument in this motion is inconsistent with

17   the arguments they raised and won in opposition to Defendants' prior summary judgment

18   motion.  (Dkt. No. 394 at 21-23.)  Plaintiffs reply that the elements of judicial estoppel

19   are not present in this case because they did not take inconsistent positions and the Court

20   was not even persuaded by their arguments.  (Dkt. No. 399 at 12.)

21   Judicial estoppel "generally prevents a party from prevailing in one phase of a case

22   on an argument and then relying on a contradictory argument to prevail in another

23   phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Pegram v.*

24   *Herdrich*, 530 U.S. 211, 227, n. 8 (2000)).  The purpose of the doctrine is "to protect the

25   integrity of the judicial process." *Id.* at 750 (citation omitted).  "Judicial estoppel is

26   imposed at the discretion of the district court." *Baughman v. Walt Disney World Co.*, 685

27   F.3d 1131, 1133 (9th Cir. 2012) (citing *New Hampshire*, 532 U.S. at 750).  While there is

28   no specific formula to apply, three factors inform a court's decision: [1] "a party's later

position must be 'clearly inconsistent' with its earlier position'" [2] the party has succeeded in persuading a court to accept its earlier stance; and [3] "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposition party if not estopped." *New Hampshire*, 532 U.S. at 750-51 (citations omitted).  The second factor is often dispositive.  *Baughman*, 685 F.3d at 1134.

Defendants rely on alleged inconsistent statements made by Plaintiffs in their initial opposition to Defendants' motion for partial summary judgment filed on January 22, 2021, (Dkt. No. 170).  (Dkt. No. 394 at 22.)  Defendants assert that in that briefing, MedImpact argued that issue preclusion cannot apply because the Tribunal applied English law on a breach of contract claim which is distinct from misappropriation of trade secrets raised in this case, and the Tribunal expressly refused to rule on the Statutory IP Claim, (Dkt. No. 170 at 18-19, 31).  Contrary to what they argued before, Defendants maintain that Plaintiffs now claim that the Tribunal applied the DTSA on the breach of contract which is the same legal standard on trade secret misappropriation that applies in this case.  (Dkt. No. at 377-1 at 17-18, 22.)

First, on the initial summary judgment motion, the Court agrees with Plaintiffs that it was not persuaded by Plaintiffs' prior alleged inconsistent argument on identity of claims because it denied Defendants' motion based on privity.  (Dkt. No. 195.) Therefore, Defendants' judicial estoppel argument is without merit.  *See Baughman*, 685 F.3d at 1134 (factor that a party has succeeded in persuading a court to accept its earlier stance is often dipositive).

However, even if Defendants relied on arguments raised in Plaintiffs' second opposition concerning "identity of claims" or whether the issue was "actually litigated", they are not "clearly inconsistent" with the arguments raised in the instant motion.  In Defendants' renewed motion for partial summary judgment, the Court agreed with Plaintiffs that the legal standard on the account based damages claim between the Arbitration and this case were distinct.  (Dkt. No. 294 at 16-10.)  Defendants sought a ruling that the Arbitrator's ruling on damages on the breach of contract claim should

1  similarly apply to a damages award on a misappropriation of trade secret claim in this

2  case without showing that the standard on damages were the same for both causes of

3  action.  Therefore, the Court denied Defendants' motion.

4      In this motion, Plaintiffs' motion seeks issue preclusion on entirely different bases

5  and on specific, articulated and identified rulings by the Arbitrator that relate specifically

6  to two elements of a misappropriation of trade secret claim in this case.  Therefore, while

7  Plaintiffs' arguments in opposition to the prior motion and this motion may facially

8  appear inconsistent, in fact, they are not "clearly inconsistent."

9  **C.    Issue Preclusion**

10     Plaintiffs contend that issue preclusion bars re-litigation of the already adjudicated

11 claims by the DIFC-LCIA on two elements of the DTSA that 1) MedImpact's trade

12 secrets used to build AIMS are protectible; and 2) Dimensions misappropriated

13 MedImpact's trade secret in the course of developing AIMS and these rulings should

14 apply to Dimensions proven privies, IQVIA AG and IQVIA Inc.  (Dkt. No. 377-1 at 7,

15 30.)  Defendants respond that issue preclusion does not apply to this case because the

16 Arbitrator did not rule on whether Plaintiffs' trade secrets are protectable or whether they

17 were misappropriated under the DTSA; in fact, he specifically declined to address the

18 Statutory IP Claim.  (Dkt. No. 394 at 21-25.)

19     Issue preclusion precludes parties from raising matters that they had a full and fair

20 opportunity to litigate and "protect against the expense and vexation attending multiple

21 lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by

22 minimizing the possibility of inconsistent decisions."  *Taylor v. Sturgell,* 553 U.S. 880,

23 892 (2008) (quoting *Montana v. United States*, 440 U.S. 147, 153-54 (1979)).  "When an

24 issue of fact or law is actually litigated and determined by a valid and final judgment, and

25 the determination is essential to the judgment, the determination is conclusive in a

26 subsequent action between the parties, whether on the same or a different claim."

27 Restatement (Second) of Judgments § 27; *Taylor*, 553 U.S. at 892 (issue preclusion bars

28 "'successive litigation of an issue of fact or law actually litigated and resolved in a valid

court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim").  The Ninth Circuit has articulated four conditions that must be met for issue preclusion to apply: "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits."  *Snoqualmie Indian Tribe v. Washington*, 8 F.4th 853, 864 (9th Cir. 2021) (quoting *Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019)).

Here, the parties solely dispute the second element.[6]  Defendants argue that issue preclusion does not apply because the issues of whether MedImpact's trade secrets are protectible and whether Dimensions misappropriated MedImpact's trade secrets were not actually litigated and decided in the prior Arbitration.  "[A]n issue is actually litigated when an issue is raised, contested, and submitted for determination."  *Janjua,* 933 F.3d at 1066 (citing Restatement (Second) of Judgments § 27, cmt. (d) (1982) ("When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination and is determined, the issue is actually litigated. . . .").  Courts must look to the record of the prior proceeding to determine if the issue was "in fact raised, contested, and submitted for determination."  *Id.* at 1065; *Factory Direct Wholesale, LLC v. iTouchless Housewares & Prod., Inc*., 411 F. Supp. 3d 905, 921 (N.D. Cal. 2019).

In this case, Plaintiffs bear the burden to demonstrate that issue preclusion applies. *See Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1518 (9th Cir. 1985), *superseded on other grounds by* 28 U.S.C. § 1961.  "To sustain this burden a party must introduce a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action."  *Hernandez v. City of Los Angeles*, 624 F.2d 935, 937 (9th Cir. 1980) (citing *United States v. Lasky*, 600 F.2d 765, 769 (9th Cir. 1979)).  After "an issue is

---

[6] The parties do not dispute that there has been a final judgment in the prior arbitration and privity exists between Dimensions and Defendants IQVIA AG and IQVIA Inc. and privity exists between Plaintiffs MIL and MI-HK, parties to the arbitration, with MHSI because MHSI is a parent to its wholly owned subsidiary MIL.  (*See* Dkt. No. 377-11, Bennett Decl., Ex. 8, Brown Decl. ¶¶ 3, 4.)

actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana*, 440 U.S. at 153.

The elements of a misappropriation claim under the DTSA requires the plaintiff to prove "(1) that the plaintiff possessed a trade secret[7], (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *InteliClear, LLC v. ETC Global Holdings, Inc*., 978 F.3d 653, 657-58 (9th Cir. 2020) (citing 18 U.S.C. § 1839(5)). The "definition of a trade secret consists of three elements: (1) information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret." *InteliClear, LLC*, 978 F.3d at 657 (citing 18 U.S.C. §§ 1839(3),[8] (5).)

As an initial matter, Defendants do not challenge that the issue of protectability and misappropriation, two elements to support a DTSA cause of action, were raised, contested and submitted for determination.[9] Instead, they dispute whether the Arbitrator, in fact, determined the issue.

---

[7] Plaintiffs seek issue preclusion on the Arbitrator's ruling that their trade secrets used to create AIMS are protectable, not that they possessed a trade secret. However, both assertions are one and the same because a trade secret is protectable under the DTSA's definition of trade secret. *See e.g., Woodall v. Walt Disney Co*., Case No.: CV 20-3772-CBM-(Ex), 2021 WL 2982305 (C.D. Cal. Apr. 14, 2021) ("Plaintiff fails to allege sufficient facts that he had any protectable trade secrets to state a claim under the DTSA"); *Chartwell Staffing Services Inc. v. Atlantic Solutions Group Inc*., Case No. 8:19-cv-00642-JLS-JDE, 2019 WL 2177262, at *6 (C.D. Cal. May 20, 2019).

[8] "[T]rade secret" is defined as "all forms and types of financial, business, scientific, technical, economic, or engineering information . . . [that] (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

[9] The arbitration record shows that these two issues were raised contested and presented to the Arbitrator. ███████████████████████████████████████████████████████████████████. (Dkt. No. 396, Bennett Decl., Ex. 16, Statement of Claim ¶¶ 5.9-5.32 (UNDER SEAL).) ████████████████████████████████████. (Dkt. No. 396, Bennett Decl., Ex. 16, Statement of Claim ¶ 5.13 (UNDER SEAL); *id*., Ex. 18, Bates Expert Report ¶ 126; *id*., Ex. 19, Gollaher Statement ¶¶ 4-9 (UNDER SEAL).) ████████████████████ ████████████████████████████████████ (Dkt. No. 396, Bennett Decl., Ex.

1

### 1.     Actually Litigated and Decided in the Prior Proceedings

2      In their motion, Plaintiffs argue that on the issue of protectability and

3 misappropriation, the Arbitrator was applying the DTSA on the Contractual IP Claim

4 because it used terminology only provided for in the DTSA statute and not the laws of the

5 UAE or EU Trade Secrets Directive 2016/943 or Laws of England.  (Dkt. No. 377-1 at

6 16-18.)  Defendants respond that Plaintiffs have not provided legal authority that issue

7 preclusion can apply where a prior ruling uses some terminology similar to the statute at

8 issue especially in light of the fact that the prior decision expressly declined to rule on the

9 Statutory IP Claim.  (Dkt. No. 394 at 24.)

10      On protectability, Plaintiffs seek issue preclusion based on the following

11 highlighted statement by the Arbitrator,



12

13

14

15

16

17

18

19 (Dkt. No. 396, Bennett Decl., Ex. 1, Partial Final Award ¶ 171 (emphasis added)

20 (UNDER SEAL).)  On the element of misappropriation, Plaintiffs seek issue preclusion

21 on the following highlighted ruling by the Arbitrator on the Contractual IP Claim,

22

23

24 17, Statement of Defence and Counterclaim ¶¶ 187-206 (UNDER SEAL).)  They also presented

████████████████████████████████ y.  (*Id.*, Ex. 20 at p. 38 and ¶¶ 130-67; *id.* at p. 47, ¶¶ 168-99; *id.,*

25 at p. 53, ¶¶ 200-18 (UNDER SEAL).)  In the Partial Final Award, the Tribunal articulated the issues

before it to include, "████████████████████████████████████████████████

26 ███████████████████████████████████████████████████ (the "Contractual IP Claim"), (Dkt. No. 396,

27 Bennet Decl., Ex. 1, Partial Final Award ¶ 97(2)(iii) (UNDER SEAL), and ███████████████

28 ████████████████████████████████████████████████ (the

"Statutory IP Claim")".  (*Id.* at ¶ 97(2)(iv) (UNDER SEAL).)

14



(*Id.* at ¶¶ 178(1), (2), & (5) (emphasis added) (UNDER SEAL).)  Defendants, in opposition, ask the Court to rely on the Arbitrator's highlighted ruling below on the Statutory IP Claim,



(*Id.* ¶ 179 (emphasis added) (UNDER SEAL).)

　　　While Defendants rely solely on the Arbitrator's ruling on the Statutory IP Claim stating he would not consider the issue of misappropriation under U.S. law, in other words, the DTSA, several inferences can be made from the Arbitrator's ruling in light of the arbitration record on the Contractual IP Claim.  *See e.g., Davis*, 751 F.2d at 1518 ("If a court does not make specific findings, the party [seeking preclusion] must introduce a

record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action.  Necessary inferences from the judgment, pleadings and evidence will be given preclusive effect.").

First, the Arbitrator did not decline to rule on the misappropriation claim under U.S. law because it had no merit but because the claim was raised in order to seek additional damages for unjust enrichment.  Notably, in the Final Award addressing damages, ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████.  (Dkt. No. 396, Bennett Decl., Ex. 2, Final Award ¶ 87(2) (UNDER SEAL).)  In reply, ██████████ ██████████████████████████████████████████████ (*Id.* ¶ 90(2) (UNDER SEAL).)  The Arbitrator noted that the ██████████████████████ ████████████████████████████████████████████████████████████████ █████████████████ (*Id.* ¶ 100(2) (UNDER SEAL).)  These statements suggest that the Statutory IP Claim and the Contractual IP Claim were not distinct but related claims.  Therefore, Defendants' argument against issue preclusion because the Arbitrator explicitly declined to consider the Statutory IP Claim does not take into account the relevance of the Arbitrator's ruling on the related Contractual IP Claim.

Next, a ruling on the Contractual IP Claim necessarily considered the underlying misuse by Dimensions of MedImpact's trade secret used to build AIMS.  In other words, █████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ███████████████████████████████████████████.  (Dkt. No. 396, Bennett Decl., Ex. 1, Partial Final Award, App'x 1 & 2 (UNDER SEAL).)  Relying on the JVA and the SLC, ███████████████████████████████████████████ ████████████████████████████████ (*Id.,* Partial Final Award ¶ 97 n. 74; ¶¶ 178(2), & (5) (UNDER SEAL).)  Further, ████████████████████████████████████████ ████████████████████████████████████████████████████████ (*Id.*, Partial Final

Award, App'x 1 & 2 (UNDER SEAL).)   Therefore, the Arbitrator's ruling that

██████████████████████████████████████████████████████

necessarily found that MedImpact's trade secrets used to build AIMS are protectable and were misused or misappropriated by Dimensions.  *See e.g., Shapiro v. Hasbro, Inc.,* CV 15-02964-BRO (AJWx), 2016 WL 9176559, at *14 (C.D. Cal. Aug. 23, 2016) (misappropriation of a trade secret would necessarily breach the contract between the parties where the defendant agreed to the confidentiality of the plaintiff's submissions and that it would not use the plaintiff's submissions without her consent).

Accepting these inferences that the Arbitrator made a ruling on misappropriation of trade secret for purposes of the Contractual IP Claim, the issue before the Court on issue preclusion is whether the Arbitrator applied DTSA law or a legal standard similar to it when he concluded that Plaintiffs' trade secrets are "protectable intellectual property", (Dkt. No. 396, Bennett Decl, Ex. 1 ¶ 171 (UNDER SEAL)), and "Dimensions misappropriated the Trade Secrets in the course of developing AIMS . . . .", (Dkt. No. 396, Bennett Decl, Ex. 1 ¶ 178(a).  *See e,g., Haung Tan v. Aetna Life Ins. Co*., 523 F.2d 811, 813 (9th Cir. 1975) (denying application of collateral estoppel of defense in Taiwanese criminal case where the moving party failed to show that the "defense of legal insanity in Taiwanese criminal law is the same as that defense under California law.").

Defendants' challenge solely relies on the Arbitrator's ruling that he did not consider the Statutory IP Claim; however, caselaw makes clear that issue preclusion applies to an issue of fact or law actually litigated and essential to the prior judgment even if the issue recurs in the context of a different claim.  *See Taylor*, 5535 U.S. at 892; *Eilrich v. Remas*, 839 F.2d 630, 634-35 (9th Cir. 1988) (collateral estoppel applied to § 1983 claim based on prior First Amendment ruling in administrative employment proceedings under California law); *Wyly v. Weiss*, 697 F.3d 131, 142 (2d Cir. 2012) (applying issue preclusion in a class action settlement order on reasonableness of attorneys' fees to a subsequent legal malpractice claim); *Benafel v. U.S. Dep't of Trans*., No. 6:16–cv–273–MC, 2016 WL 4367246, at *3 (D. Or. Aug. 12, 2016) (granting motion

to dismiss the plaintiff's federal civil rights claims as precluded by earlier state court litigation resolving the plaintiff's state trespass claims).

On the flip side, the Court finds Plaintiffs' logic that the Tribunal applied the DTSA when it considered the Contractual IP Claim because it used terminology similar to the DTSA flawed and not sufficiently supported.  As a starting point, the parties agree ██████████████████████████████████████████████████████████████; therefore, ████████████████████████████████████████████████████████ ████████████████████████████████.[10]  Moreover, ████████████████████ ██████████████████████████████████████████████████████ Arbitrator implicitly confirmed he applied English law on the Contractual IP Claim.  (*See* Dkt. No. 396, Bennett Decl., Ex. 1, Partial Final Award ¶ 179.)

The next question is whether the English laws on trade secret misappropriation are identical or substantially similar to the DTSA.  *See Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 775 (9th Cir. 2003) ("collateral estoppel [issue preclusion] applies where the issue sought to be litigated is sufficiently similar to the issue presented in an earlier proceeding and sufficiently material in both actions to justify invoking the doctrine").  The DTSA was enacted in 2016.  *See* Pub. L. No. 114-153, 130 Stat. 376 (2016).  In the same year, the EU Trade Secrets Directive 2016/943 (the "EU Directive") was approved to create more uniformity in the EU countries in the areas of "unlawful acquisition, disclosure, and use of trade secrets."  David S. Levine and Ted Sichelman, *Why Do StartUps Use Trade Secrets*, 94 Notre Dame L. Rev. 751, 778 (2018).  The EU

---

[10] Moreover, the Arbitrator stated that the issue before him on the Contractual IP Claim was ████ █████████████████████████████████████ ██████████████████████████████████████████████████████████ (Dkt. No. 396, Bennett Decl., Ex. 1, Partial Final Award ¶ 97(2)(iii) & n. 74 (emphasis added) (UNDER SEAL).) ████████████████████████████████ *See* https://www.legislation.gov.uk/uksi/2018/597/contents/made.

Directive was adopted by the United Kingdom through the Trade Secrets (Enforcement, etc) Regulations 2018 (SI 2018 No. 597).  *See* https://www.legislation.gov.uk/uksi/2018/597/contents/made.

"Given the recent passage of the Defend Trade Secrets Act ("DTSA") and the EU Trade Secrets Directive (the "Directive"), it is clear that both regions have recognized the substantial value of trade secrets to the global economy and have decided to take analogous stances on the basics of trade secret law, including what constitutes a trade secret and how a violation occurs."  Anand B. Patel, Jeffrey A. Pade, Victoria Cundiff, and Bradford Newman, *The Global Harmonization of Trade Secret Law: The Convergence of Protections for Trade Secret Information in the United States and European Union*, 83 Defense Counsel Journal 472, 473 (2016).  Therefore, the DTSA and EU Directive have similar definition of what constitutes a trade secret and what constitutes misappropriation.  *Id.* at 475-76.

The following review of the DTSA and U.K's Trade Secrets (Enforcement, etc) Regulations 2018 (SI 2018 No. 597) on the definition of a trade secret and misappropriation based on "use" reveals commonalities between the two statutes.

The UK's Trade Secrets (Enforcement, etc.) Regulations 2018, in effect on June 9 2018, defines "trade secret" to "mean information which –(a) **is secret in the sense that it is not,** as a body or in the precise configuration and assembly of its components, **generally known among, or readily accessible to,** persons within the circles that normally deal with the kind of information in question, (b) has **commercial value because it is secret**, and (c) **has been subject to reasonable steps under the circumstances, by the person lawfully in control of the information, to keep it secret**."  (Dkt. No. 377-6, Bennett Decl., Ex. 3 at 3, Trade Secrets (Enforcement, etc.) Regulations 2018, Art. 2.)  Similarly, the DTSA defines trade secret as "all forms and types of financial, business, scientific, technical, economic, or engineering information . . . [that] (A) **the owner thereof has taken reasonable measures to keep such information secret**; and (B) the information derives **independent economic value,**

**actual or potential**, from **not being generally known to, and not being readily ascertainable through proper means by, another person** who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).  The definition of a trade secret under both provisions are nearly identical.

The Trade Secrets (Enforcement, etc.) Regulations 2018 adopts the EU Directive's provisions concerning "unlawful acquisition, use, and disclosure of trade secrets", (Dkt. No. 377-2, Ex. 3 at 10 (explanatory note)), and provides,

2. The acquisition of a trade secret without the consent of the trade secret holder shall be considered unlawful, whenever carried out by:

(a) unauthorised access to, appropriation of, or copying of any documents, objects, materials, substances or electronic files, lawfully under the control of the trade secret holder, containing the trade secret or from which the trade secret can be deduced;

(b) any other conduct which, under the circumstances, is considered contrary to honest commercial practices.

**3. The use or disclosure of a trade secret shall be considered unlawful whenever carried out, without the consent of the trade secret holder, by a person who is found to meet any of the following conditions:**

**(a) having acquired the trade secret unlawfully;**

**(b) being in breach of a confidentiality agreement or any other duty not to disclose the trade secret;**

**(c) being in breach of a contractual or any other duty to limit the use of the trade secret.**

**4. The acquisition, use or disclosure of a trade secret shall also be considered unlawful whenever a person, at the time of the acquisition, use or disclosure, knew or ought, under the circumstances, to have known that the trade secret had been obtained directly or indirectly from another person who was using or disclosing the trade secret unlawfully within the meaning of paragraph 3.**

5. The production, offering or placing on the market of infringing goods, or the importation, export or storage of infringing goods for those purposes,

shall also be considered an unlawful use of a trade secret where the person carrying out such activities knew, or ought, under the circumstances, to have known that the trade secret was used unlawfully within the meaning of paragraph 3.

(Dkt. No. 377-7, Bennett Decl., Ex. 4 at 11-12, EU Trade Secret Directive 2016/943, Art. 4.)  Similarly, the DTSA defines misappropriation as:

(5) the term "misappropriation" means--

(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

**(B) disclosure or use of a trade secret of another without express or implied consent by a person who--**

**(i) used improper means to acquire knowledge of the trade secret;**

**(ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was--**

**(I) derived from or through a person who had used improper means to acquire the trade secret;**

**(II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or**

**(III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret**; or

(iii) before a material change of the position of the person, knew or had reason to know that--

(I) the trade secret was a trade secret; and

(II) knowledge of the trade secret had been acquired by accident or mistake.

18 U.S.C. § 1839(5).  The "use" provisions of the DTSA and EU Directive, while worded differently, capture the same type of conduct.  Therefore, the Court concludes that the Arbitrator applied a legal standard substantially similar to the DTSA when he ruled on the Contractual IP Claim.

Moreover, Plaintiffs have shown, and Defendants do not dispute, that the burden of proof that the Arbitrator applied, "the simple balance of probabilities", (Dkt. No. 396, Bennett Decl., Ex. 1, Partial Final Award ¶ 100), is equivalent to preponderance of the evidence standard to be applied in this case. *See Cooper v. Oklahoma*, 517 U.S. 348, 358 (1996) ("Modern English authority [instructing on balance of probabilities] confirms our interpretation of these early cases as applying a preponderance standard."); (Dkt. No. 377-10, Bennett Decl., Ex. 7, *In re H (Minors)* (1996) AC 563 (HL) 586 (Eng.) ("The balance of probability standard means that a court is satisfied an event occurred if the court considers that, on the evidence, the occurrence of the event was more likely than not.")).

Because the legal standard for protectability and misappropriation that the Arbitrator applied are substantially similar to the DTSA in this case, the Court concludes the Arbitrator's rulings on these issues were actually litigated and determined and conclusive in this case.

Defendants additionally argue that even though Plaintiffs move for summary judgment on MedImpact's trade secrets used to build AIMS, they fail to identify which of the alleged trade secrets in AIMS it is requesting that this Court find protectable and misappropriated. (Dkt. No. 394 at 24-25.) They also maintain that it is not disputed that only certain features, and not all, of AIMS used MedImpact's trade secrets and the Arbitrator failed to separate which elements of AIMS were trade secrets under the Contractual IP Claim. Plaintiffs reply that they clearly identified the trade secrets in a summary table that the Arbitrator ruled were protectable and misappropriated. (Dkt. No. 399 at 5; Dkt. No. 396, Bennett Decl., Ex. 1, ¶ 151 & n. 148 (UNDER SEAL).) They also restate that they are only seeking issue preclusion on MedImpact trade secrets used to build AIMS as adjudicated by the Arbitrator. (Dkt. No. 377-1 at 17 n.2.)

In the Arbitration, Ms. Bates, Plaintiffs' expert, identified the protectable and definable trade secrets with detailed descriptions with the following headings: MedImpact Client Implementation Questionnaires, Standard Benefit Templates and PBM

Processes; MIL File Types; MedAccess Tool and POS System Adjudication Logic.  (Dkt. No. 396, Bennett Decl., Ex. 18, Bates Expert Report ¶¶ 131-55 (UNDER SEAL).)  In the ruling, the Arbitrator adopted MedImpact's summary table of trade secrets identified by Ms. Bates, provided in its Closing Submission, as the protectable and definable Trade Secrets at issue.  (Dkt. No. 396, Bennett Decl., Ex. 1, Partial Final Award ¶ 151 (UNDER SEAL).)  The summary table included five categories: Implementation Questionnaires, Benefit Templates, File Type Formats, MedAccess, and POS System Adjudication Logic.  (*Id.*, Partial Final Award ¶¶ 150, 151, 154 (UNDER SEAL).)  The Arbitrator also relied on this summary table when he imposed an injunction barring Dimensions from "selling, offering for sale, using, disclosing or transferring . . . the Trade Secrets and the Confidential Information."  (Dkt. No. 396, Ex. 2, Final Award, App'x at ¶¶ 2, 6 (UNDER SEAL).)

Similarly, in this case, Ms. Bates, in her expert report, presents the identical summary table of the trade secrets identified in the Arbitration and cited in the Partial and Final Awards.  (Dkt. No. 396, Bennett Decl., Ex. 22, Bates Expert Report 2021 ¶ 28 (UNDER SEAL).)  She declares that "the trade secrets at issue in the Arbitration are the same as MedImpact's identified trade secrets at issue in this matter."  (*Id.* (UNDER SEAL).)  Therefore, Defendants' challenge to the Trade Secrets defined by the Arbitrator is not persuasive.

Furthermore, Defendants present additional substantive challenges on the merits of the Arbitrator's decision on defining the Trade Secrets, (Dkt. No. 394 at 11-18); however, Final Judgment has issued confirming the Arbitration award and the Arbitrator's ruling is not subject to challenge on issue preclusion.

Finally, Defendants assert that the Court should consider that because privity is lacking as to Defendants IQVIA Ltd., Mr. Sadana and Dr. Ghosheh, bifurcation of the trial will likely be in order to preserve their constitutional right to contest those issues.  (Dkt. No. 394 at 26.)  Plaintiffs argue it is not improper to seek issue preclusion as to some defendants and any prejudice can be cured by a limited instruction at trial.  Because

Defendants have not provided binding or persuasive legal authority to support their argument that the Court should deny issue preclusion because privity has not been established as to all Defendants, it is without merit.

In sum, the Court GRANTS Plaintiffs' motion for partial summary judgment on issue preclusion based on the Arbitrator's ruling that 1) "MedImpact's trade secrets used to build AIMS are protectible"; and 2) because Dimensions misappropriated MedImpact's trade secret in the course of developing AIMS, "AIMS uses Plaintiffs' misappropriated trade secrets."[11]

**D.     Misappropriation by IQVIA AG - Selling AIMS to NUPCO-Wasfaty**

Plaintiffs also seek partial summary judgment that IQVIA AG misappropriated Plaintiffs' trade secrets by providing AIMS to NUPCO-Wasfaty on their DTSA claim. (Dkt. No. at 377-1 at 24-28.)  They argue that IQVIA AG, through Mr. Sadana, its Senior Vice President and General Manager for Africa, Middle East and South Asia, marketed and sold AIMS for a project called NUPCO or Wasfaty during the Arbitration which was not disclosed to the Arbitrator.  (*Id.*)  Defendants respond that notwithstanding their arguments on issue preclusion that the Arbitrator did not rule on protectability or misappropriation, they contend that there is a material fact in dispute as to whether the Wasfaty project uses AIMS for claims adjudication.  (Dkt. No. 394 at 18-19, 27.)  In reply, Plaintiffs argue that Defendants' arguments are irrelevant because the injunction enjoins Defendants from using AIMS, in whole or in part.  (Dkt. No. 399 at 13.)

In the Arbitration, a Final Injunction was imposed stating,



---

[11] The Court need not address Plaintiffs' argument that the Court apply Rule 56(g).

1  (Dkt. No. 396, Bennett Decl, Ex. 2, App'x (UNDER SEAL).)

2       Plaintiffs present evidence ███████████████████████████

3  ████████████████████████. (Dkt. No. 396, Bennett Decl., Ex. 29

4  (UNDER SEAL).)  On June 11, 2020, █████████████████████████

5  ████████████████████████████████████████████████████

6  ████████████. (*Id.*, Ex. 39 (UNDER SEAL).)

7       Defendants respond that Barbara A. Frederiksen-Cross, their expert, opined that

8  ████████████████████████████████████████████████████

9  ████████████████████████████████████████████

10  ████████████ (Dkt. No. 398-8, Swedlow Decl., Ex. 7, Frederiksen-Cross Expert Report

11  ¶ 352 (UNDER SEAL).)  She also included a table with clients, ██████████████

12  ████████████████████████████████████████████████

13  ████████████████████████████████████████████ (*Id.* ¶ 326

14  & *id.*, n.362 (UNDER SEAL).)  Further, Mr. Sadana testified that █████████████

15  ████████████████████. (Dkt. No. 398-10, Swedlow Decl., Ex. 10, Sadana

16  Depo. at 37:17-21 (UNDER SEAL).)

17       Defendants have raised a genuine issue of material fact as to whether AIMS API is

18  the same as AIMS as it relates to use of Plaintiffs' trade secrets.  Accordingly, the Court

19  DENIES Plaintiffs' motion for partial summary judgment that IQVIA AG has

20  misappropriated Plaintiffs' trade secrets by providing AIMS to NUPCO-Wasfaty.

21                              **Conclusion**

22       Based on the reasoning above, the Court GRANTS in part and DENIES in part

23  Plaintiffs' motion for partial summary judgment.  Specifically, the Court GRANTS

24  Plaintiffs' motion on issue preclusion which bars re-litigation against Defendants IQVIA

25  AG and IQVIA Inc. on the following: 1) MedImpact's trade secrets used to build AIMS

26  are protectible; and 2) AIMS uses Plaintiffs' misappropriated trade secrets.  The Court

27  / / /

28  / / /

also DENIES Plaintiffs' motion for partial summary judgment that IQVIA AG

misappropriated Plaintiffs' trade secrets by providing AIMS to NUPCO-Wasfaty.

      IT IS SO ORDERED.

Dated:  March 10, 2022

Hon. Gonzalo P. Curiel
United States District Judge