UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDIMPACT HEALTHCARE SYSTEMS, INC., a California corporation, MEDIMPACT INTERNATIONAL LLC, a California limited liability company, MEDIMPACT INTERNATIONAL HONG KONG LTD., a Hong Kong company,<br><br>        Plaintiffs,<br><br>v.<br><br>IQVIA HOLDINGS INC., a Delaware corporation, IQVIA INC., a Connecticut corporation, IQVIA AG, a Swiss company, OMAR GHOSHEH, individually, and AMIT SADANA, individually,<br><br>        Defendants. | Case No.: 19cv1865-GPC(DEB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**[Dkt. No. 405.]** |

  Before the Court is Plaintiffs' motion for partial summary judgment, and alternatively, motion to bifurcate. (Dkt. No. 405.) Defendants filed an opposition. (Dkt. No. 450.) Plaintiffs replied. (Dkt. No. 458.) Based on the reasoning below, the Court GRANTS in part and DENIES in part Plaintiffs' motion for partial summary judgment.

1

**Background**

On April 7, 2020, Plaintiffs Medimpact Healthcare Systems, Inc. ("MHSI"), Medimpact International LLC ("MIL"), and MedImpact International Hong Kong Ltd. ("MI-HK") (collectively "Plaintiffs" or "MedImpact") filed the operative first amended complaint ("FAC") against Defendants IQVIA Holdings, Inc., IQVIA Inc., IQVIA AG, Omar Ghosheh ("Dr. Ghosheh") and Amit Sadana ("Mr. Sandana") (collectively "Defendants").  (Dkt. No. 93, FAC.)  The remaining claims are the first cause of action for breach of fiduciary duty and seventh cause of action for conspiracy against Dr. Ghosheh and Mr. Sadana, and eighth cause of action for misappropriation of trade secret under the Defend Trade Secrets Act ("DTSA"), ninth cause of action for misappropriation of trade secrets under California Uniform Trade Secrets Act ("CUTSA"), and tenth cause of action for Racketeer Influenced and Corrupt Organizations Act ("RICO") violations against all Defendants.  (Dkt. No. 130.)  Defendants filed an amended answer on October 15, 2020 claiming a number of affirmative defenses.  (Dkt. No. 134.)

Plaintiffs move for partial summary judgment on the following affirmative defenses asserted by Defendants: 1) unclean hands; 2) statute of limitations; 3) waiver; 4) equitable estoppel; and 5) apportionment of liability.  (Dkt. No. 405-1.)  They also move for partial summary judgment on lack of damages/injury, no extraterritorial application, standing and ascertainability arguing they are not valid affirmative defenses, but elements to support Plaintiffs' causes of action.  (*Id.*)  In response, Defendants do not oppose summary judgment on statute of limitations, apportionment of liability and standing as affirmative defenses.  (Dkt. No. 450 at 7 n.2.[1])  Accordingly, the Court GRANTS Plaintiffs' motion for partial summary judgment on the affirmative defenses of statute of limitations, apportionment of liability and standing as unopposed.

---

[1] Page numbers are based on the CM/ECF pagination.

## Discussion

### A. Legal Standard on Motion for Summary Judgment

Federal Rule of Civil Procedure ("Rule") 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp.,* 477 U.S. at 323. The moving party can satisfy its burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Id.* at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin,* 262 F.3d 871, 876 (9th Cir. 2001).  The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact.  *Anderson*, 477 U.S. at 255.

**B.     Affirmative Defense - Unclean Hands**

Plaintiffs maintain that Defendants waived the unclean hands affirmative defense, and even if it was not waived, it would fail as a matter of law because the alleged inequitable conduct by Plaintiffs concerning Defendants' trade secrets does not directly relate to the Plaintiffs' claims related to their trade secrets.  (Dkt. No. 405-1 at 12, 14-16; Dkt. No. 458 at 9.)  Defendants oppose arguing that they have not waived the unclean hands affirmative defense and the defense applies because the inequitable conduct arises from the same joint venture and the same trade secrets, that is, "edits" or "rules" applied to adjudicate pharmaceutical claims, asserted by Plaintiffs.  (Dkt. No. 450 at 3-4, 14.)

The amended answer provides that "Plaintiffs' First Amended Complaint is barred, in whole or in part, by the doctrine of unclean hands." (Dkt. No. 134, Am. Ans. at 27.) The amended answer raises, "[a]mong other things, Plaintiffs' allegations in this case are inconsistent with their allegations in the prior arbitral proceeding." (*Id.*)  On March 18, 2021, in the supplemental response to Plaintiffs' Interrogatory No. 8, Defendants stated, they "are withdrawing the Unclean Hands affirmative defense." (Dkt. No. 466, Bennett Decl., Ex. 10 at 32 (UNDER SEAL).)  Then on September 8, 2021, in their second supplemental response to Plaintiff MedImpact's Interrogatory No. 8, "Defendants assert an Unclean Hands affirmative defense . . . ." (Dkt. No. 466, Bennett Decl., Ex. 11 at 40 (UNDER SEAL).)

Plaintiffs argue that because Defendants did not verify their supplemental response to Interrogatory 8, they have waived the unclean hands affirmative defense.  (Dkt. No. 405-1.)  Defendants respond that they withdrew the defense in response to an interrogatory before Plaintiffs produced any discovery and it was only after Plaintiffs

produced 51,479 documents in August 2021 that Defendants discovered the bases for their unclean hands defense and promptly served a supplemental interrogatory response on September 8, 2021, a month before the close of fact discovery. (Dkt. No. 450 at 9 & n.3.)

Under Federal Rules of Civil Procedure 33 "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). "The person who makes the answers must sign them, and the attorney, who objects must sign any objections." Fed. R. Civ. P. 33(b)(5). "Thus, for discovery responses to be admissible evidence, they must be signed under oath." *Nash-Perry v. City of Bakersfield*, Case No.: 1:18-cv-01512 JLT, 2021 WL 3883681, at *5 (E.D. Cal. Aug. 31, 2021 ) (citing *Blevins v. Marin*, No. 11–cv–03475–KJN P, 2013 WL 5718869, at *1 (E.D. Cal. Oct. 11, 2013) ("all responses to interrogatories and requests for admission must be verified—that is, bear plaintiff's signature attesting under penalty of perjury that his responses are true and correct—in order to be an admissible form at summary judgment")).

Here, it is not disputed that the supplemental response to Interrogatory No. 8 was verified and signed and not disputed that the second supplemental interrogatory response was signed but not verified. (Dkt. No. 450-1, Ds' Response to Ps' SMUF Nos. 3, 4, 8.) Because the second supplemental interrogatory response is unverified, it cannot serve as admissible evidence. *See Nash-Perry*, 2021 WL 3883681, at *5. But it does serve to resurrect the unclean hands defense where Defendants had not amended their answer to withdraw an unclean hands defense. *Cf. Hart v. Farwell*, No. 3–05–cv–00139–LRH (VPC), 2007 WL 2049845, at *4 n. 4 (D. Nev. July 12, 2007 (where defendants never amended their answer to reflect a purported withdrawal of the affirmative defense in an interrogatory response, the court accepted repudiation of withdrawal and permitted affirmative defense to proceed). Therefore, Plaintiffs' argument that an unverified response to an interrogatory constitutes a waiver is not persuasive.

Plaintiffs also argue that Defendants intended to relinquish the unclean hands defense when they withdrew it in March 2021; however, under the same reasoning, Defendants intended to reinstate the defense in their second supplemental response in September 2021. In a prior order, the Court concluded before, "[b]ecause no court order dismissing [the unclean hands] defense was filed, the affirmative defense of unclean hands remains." (Dkt. No. 360 at 9 n. 7.) Thus, Plaintiffs' waiver argument is without merit.

Finally, "[t]he key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Wyshak v. City Nat. Bank*, 607 F.2d 824, 827 (9th Cir. 1979). Here, even though Plaintiffs complain that the supplemental response was served on the last day to serve fact discovery and deprived them of the ability to conduct discovery on this issue, Plaintiffs could have sought leave to extend the discovery deadlines based on the resurrected defense. Thus, the Court concludes that Defendants have not waived the unclean hands affirmative defense and now consider Plaintiffs' argument that the unclean hands defense is without merit.

Under the unclean hands affirmative defense, "[t]he guiding doctrine . . . is the equitable maxim that 'he who comes into equity must come with clean hands.' This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co*., 324 U.S. 806, 814 (1945). The doctrine "proscribes equitable relief when, but only when, an individual's misconduct has 'immediate and necessary relation to the equity that he seeks.'" *Henderson v. United States*, 575 U.S. 622, 625 (2015) (quoting *Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240, 245 (1933)). In applying the unclean hands doctrine, the relevant inquiry is "not [whether] the plaintiff's hands are dirty, but [whether] he dirtied them in acquiring the right he now asserts, or [whether] the manner of dirtying renders inequitable the assertion of such rights against the defendants."

*Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir. 1985), *abrogated on other grounds as recognized by Watkins v. Westinghouse Hanford Co.*, 12 F.3d 1517 (9th Cir. 1993); *see also Pond v. Ins. Co. of N. Am.*, 151 Cal. App. 3d 280, 290 (1984) ("The [unclean hands] rule is qualified by the requirement that the party against whom the doctrine is sought to be invoked directly 'infected' the actual cause of action before the court, and is not merely guilty of unrelated improper past conduct."). "Factual similarity between the misconduct that forms the basis for an unclean hands defense and the plaintiff's allegations in the lawsuit is not sufficient." *Pom Wonderful LLC v. Welch Foods, Inc.*, 737 F. Supp. 2d 1105, 1110 (C.D. Cal. 2010). Rather, "equity requires that those seeking its protection shall have acted fairly and without fraud or deceit *as to the controversy in issue.*" *Fuddruckers, Inc., v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987) (emphasis in original) (quoting *Ellenburg*, 763 F.2d at 1097); *Specialty Minerals, Inc. v. Pleuss-Staufer AG*, 395 F. Supp. 2d 109, 113 (S.D.N.Y. 2005) (the "misconduct that forms the basis for the unclean hands defense [must be] directly related to plaintiff's use or acquisition of the right in suit.").

Therefore, to prevail on an unclean hands defense, the defendant "must demonstrate [1] that the plaintiff's conduct is inequitable and [2] that the conduct relates to the subject matter of its claims." *Fuddruckers, Inc.*, 826 F.2d at 847; *see also Kendall-Jackson Winery, Ltd. v. Super. Ct.*, 76 Cal. App. 4th 970, 978 (2000) (citing *Precision Instrument Mfg. Co.*, 324 U.S. at 814-15).

On the two factors, the parties dispute whether Plaintiffs' alleged inequitable conduct is directly related to the subject matter of Plaintiffs' trade secret claims. Defendants argue that the factual underpinnings of the unclean hands affirmative defense arise from the same joint venture and the same trade secrets asserted by Plaintiffs. (Dkt. No. 450 at 14-15.) Plaintiffs disagree. (Dkt. No. 458 at 9-12.) The Court agrees with

Defendants that Plaintiffs' alleged inequitable conduct relates to the same joint venture addressed in their FAC.[2]

In *Unilogic, Inc. v. Burroughs Corp.*, 10 Cal. App. 4th 612, 618, 621 (1992), the court of appeal held that although the defendant converted the plaintiff's proprietary information during a failed joint project, the plaintiff's unclean hands—bribery to obtain the contract, failure to disclose financial difficulties, and its own conversion of defendant's property—during the same joint project precluded relief. The court explained that the plaintiff's conversion claim and the plaintiff's misconduct "occurred in the same transaction that forms the subject of this litigation-the joint litigation project." *Id.* In the case, the joint development project was an agreement where the plaintiff's predecessor, OSM, agreed to develop five prototypes of a personal computer capable of running two separate operating systems, including the defendant's operating system. *Id.* at 616. On the conversion claim, the plaintiff claimed that during development of the technology the defendants never intended to complete the contract but intended to allow the plaintiff to engage in the effort and expense of developing the new technology and then converting it for its own use and hire away plaintiff's employees. *Id.* at 618. While the plaintiff argued that its conversion claim was unrelated to the unclean hands claims based on its bribe, its failure to disclose financial difficulties, failure to return the BTOX software and subsequently use of the software through demonstration of a prototype, the court of appeal concluded that the conversion claim in the complaint and the plaintiff's misconduct "occurred in the same transaction that forms the subject of this litigation-the joint development project. In our view, that is enough to trigger the application of the unclean defense." *Id.* at 621.

---

[2] Because the Court concludes that the conduct underlying the unclean hands affirmative defense is related to the subject matter of Plaintiffs' FAC, the Court need not address Defendants' second argument that the unclean hands defense relates to the same trade secrets asserted by Plaintiffs.

In *Saudi Basic Industries Corp. v. Exxonmobil Corp*. 194 F. Supp. 2d 378 (D.N.J. 2002), the district court determined that two separate agreements with different sets of parties and the inequitable conduct supporting the unclean hands defense arose from the same overall joint venture agreement. *Id.* at 391. While recognizing that the unclean hands defense generally would not apply if the inequitable conduct was not related to the breach of contract provisions at issue, the district court concluded that there was a "close enough relationship between the inequitable conduct and the claims in the lawsuit" to assert the defense. *Id.* at 392. The court explained that even though different contract provisions were being challenged on the unclean hands defense, the two agreements were part of the overall joint venture agreement, and therefore a breach of one agreement was directly related to breach of the other agreement. *Id*.

Here, similar to the reasoning in *Unilogic* and *Saudi Arabia Industries Corp*., the allegations in the FAC and the allegations to support the unclean hands affirmative defense relate to the same joint venture during the same time period and the same transactional events where both parties were exchanging or had access to each other's trade secrets. Thus, the Court concludes that the Plaintiffs' alleged inequitable conduct is related to the subject matter of Plaintiffs' claims to support an unclean hands affirmative defense.

Accordingly, the Court DENIES Plaintiffs' motion for partial summary judgment on the unclean hands defense. Alternatively, Plaintiffs ask the Court to bifurcate the unclean hands defense at trial in order to avoid risk of confusion and prejudice at trial. (Dkt. No. 405-1 at 24-27.) Defendants oppose. (Dkt. No. 450 at 17-20.) Because there is a pending motion for summary judgment by Defendants on the remaining causes of action in the FAC, the Court finds it premature to rule on the motion to bifurcate without knowing what claims will remain for trial. Accordingly, the Court DENIES Plaintiffs' motion to bifurcate without prejudice as premature.

/ / /

/ / /

### C.     Affirmative Defense – Waiver and Equitable Estoppel

Plaintiffs argue that summary judgment should be granted on the waiver and equitable estoppel affirmative defenses because the evidence shows that they never gave up any rights but diligently pursued the litigation. (Dkt. No. 405-1 at 18.) Defendants respond that the affirmative defenses on waiver and equitable estoppel are premised on Plaintiffs' consent to the acts and/or omissions about which they now complain and not on diligence which they assert is related to the laches affirmative defense. (Dkt. No. 450 at 20.) In reply, Plaintiffs argue that Defendants have failed to point to any language in the subject contracts stating that MedImpact released Defendants from liability or promised not to pursue relief for the tort claims alleged. (Dkt. No. 458 at 13.)

The twelfth affirmative defense alleges the doctrine of laches, waiver or estoppel. (Dkt. No. 134, Am. Ans. at 27.) It asserts that "Plaintiffs failed to promptly assert their claims against these Defendants choosing instead to wait on the results of the arbitration proceeding, moving forward only after becoming dissatisfied with the arbitration results. Such delay prejudices the Defendants in that it results in witnesses becoming unavailable and memories fading over time." (*Id.*) The tenth affirmative defense of equitable estoppel provides, "[a]mong other things, Plaintiffs' claims are barred, in whole or in part, to the extent Plaintiffs consented to the acts and/or omissions about which Plaintiffs now complain." (Dkt. No. 134, Am. Ans. at 26-27.)

On both the tenth and twelfth affirmative defenses, Defendants' supplemental interrogatory response added that the "evidence will show MedImpact consented to termination of the JV, therefore, it cannot now sustain a claim based on Defendants' alleged improper termination of the JV. Moreover, while MedImpact alleged early on in the Arbitration that IQVIA was engaged in the unlawful sale of MedImpact data, they elected not to bring any such claim against IQVIA in court until the Arbitration was concluded and the Tribunal issued its final and binding arbitral award. If Plaintiff believed at the outset of the Arbitration –in January 2018—that IQVIA was misappropriating their data, they could have availed themselves of the court system at

1  that time. Instead, they waited almost two full years before initiating this action in
2  September 2019." (Dkt. No. 466, Bennett Decl., Ex. 10 at 30, 31-32 (UNDER SEAL).)
3      The waiver and equitable estoppel affirmative defenses are based on consent and
4  lack of diligence in filing suit; yet, Plaintiffs only move for summary judgment on the
5  lack of diligence. To the extent that Defendants argue that their waiver and equitable
6  estoppel defenses are based on consent and do not dispute the lack of diligence argument
7  on waiver and equitable estoppel, the Court GRANTS as unopposed Plaintiffs' motion
8  for summary judgment on the waiver and equitable estoppel affirmative defenses based
9  on lack of diligence.
10     However, because Plaintiffs have failed to move for summary judgment on the
11 waiver and equitable estoppel defense based on the consent theory, the Court declines to
12 address them. *See Bullard v. Wastequip Mfg, Co. LLC*, CASE NO. CV 14-01309 MMM
13 (SSx), 2015 WL 12766467, at *14 & n. 86 (C.D. Cal. Apr. 14, 2015) ("[c]ourts have
14 regularly held that it is inappropriate to grant summary judgment on grounds not raised
15 by the moving party.").

16 **D.    Lack of Damages or Injury; Extraterritorial Application and Ascertainability**

17     Plaintiffs claim that lack of damages, extraterritorial application and
18 ascertainability are not affirmative defenses but instead are elements of the causes of
19 action in the first amended complaint that they bear the burden to prove. (Dkt. No. 405-1
20 at 20-22.) Defendants do not challenge Plaintiffs' argument that lack of damages,
21 extraterritorial application and ascertainability are not affirmative damages but instead
22 ask the Court to dismiss based on the reasoning set forth in their separately filed motion
23 for summary judgment. (Dkt. No. 450 at 26-27.)
24     The second affirmative defense alleges no damages or injury, the fourth
25 affirmative defense asserts no extraterritorial application, and the seventh affirmative
26 defense claims trade secrets were readily ascertainable. (Dkt. No. 134 at 25-26.)
27 Because Defendants do not dispute that these are elements that Plaintiffs must prove at
28 trial, the Court GRANTS Plaintiffs' motion for partial summary judgment on the alleged

affirmative defenses of lack of damages, extraterritorial application and ascertainability as unopposed.

## Conclusion

Based on the above, the Court GRANTS in part and DENIES in part Plaintiffs' motion for partial summary judgment.  The Court DENIES Plaintiffs' motion for summary judgment on the unclean hands affirmative defense and DENIES Plaintiffs' alternative motion to bifurcate.  The Court also GRANTS summary judgment on the waiver and equitable estoppel affirmative defenses premised on lack of diligence as unopposed.  Lastly, the Court GRANTS dismissal of the statute of limitation, and apportionment of responsibility affirmative defenses as well as lack of standing, lack of damages, extraterritorial application and ascertainability as unopposed.

IT IS SO ORDERED.

Dated: May 17, 2022

Hon. Gonzalo P. Curiel
United States District Judge