1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDIMPACT HEALTHCARE SYSTEMS, INC., a California corporation, MEDIMPACT INTERNATIONAL LLC, a California limited liability company, MEDIMPACT INTERNATIONAL HONG KONG LTD., a Hong Kong company,<br><br>          Plaintiff,<br>v.<br>IQVIA HOLDINGS INC., a Delaware corporation, IQVIA INC., a Connecticut corporation, IQVIA AG, a Swiss company, OMAR GHOSHEH, individually, and AMIT SADANA, individually,<br><br>          Defendant. | Case No.: 19cv1865-GPC(DEB)<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION**<br><br>**[REDACTED-ORIGINAL FILED UNDER SEAL]**<br><br>**[DKT. NO. 457.]** |

  Before the Court is Defendants' motion for reconsideration of the Court's order granting in part and denying in part Plaintiffs' motion for partial summary judgment based on issue preclusion. (Dkt. No. 457.) Plaintiffs filed an opposition and Defendants replied. (Dkt. Nos. 518, 549.) A hearing was held on June 17, 2022. (Dkt. No. 567.)

Based on the reasoning below, the Court DENIES Defendants' motion for reconsideration.

**Relevant Background**[1]

On February 1, 2012, Plaintiff MedImpact International, LLC ("MIL") and non-party Dimensions Healthcare LLC ("Dimensions") entered into a Joint Venture Agreement ("JVA") and Services and License Contract ("SLC") to expand Plaintiffs' pharmacy benefits management ("PBM") services to the Middle East. According to the FAC, beginning in 2015 and continuing until at least to late 2017, Dimensions secretly developed its Adjudication Insurance Management System ("AIMS"), a competing platform similar to MedImpact's PBM, using Medimpact's trade secret and confidential information. (Dkt. No. 93, FAC ¶¶ 55, 56.) Prior to terminating the JVA, Defendant IQVIA AG, which acquired Dimensions in February 2016, and Dimensions stole a number of joint venture clients, including Oman Insurance, the joint venture's largest client, by offering AIMS to replace MedImpact's PBM product. (*Id.* ¶¶ 58, 60.) Once Defendants[2] successfully developed and sold AIMS, Dimensions terminated the JVA on July 23, 2017. (*Id.* ¶ 60.)

On January 23, 2018, Plaintiffs MIL and MedImpact International Hong Kong Ltd. ("MI-HK") filed claims in arbitration against Dimensions for its conduct in developing AIMS, a misappropriated and competing product, and selling it to joint venture clients with the Dubai International Financial Centre-London Court of International Arbitration. Relevant to this motion, Plaintiffs sought relief for breaches of Articles 10.1 and 11.1(b) of the JVA and Article 9.2 of the SLC as well as misappropriation of trade secret under U.S., English and UAE Law. (Dkt. No. 396, Bennett Decl., Ex. 16, Statement of Claim ¶¶ 1.4, 5.9-5.32, 7.5 (UNDER SEAL); *see also* Dkt. No. 506-2, Swedlow Decl., Ex. 2,

---

[1] The parties are intimately familiar with the facts of this case. Due to the extensive factual background in this case, the Court only recounts relevant background as it relates to the reconsideration motion.

[2] Defendants are IQVIA Ltd., IQVIA Inc., IQVIA AG, Omar Ghosheh and Amit Sadana.

Partial Final Award on Liability ("Partial Final Award") ¶¶ 89(5) & 89(6) (UNDER SEAL).)

Article 10.1 of the JVA provides that " ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (Dkt. No. 506-2, Swedlow Decl., Ex. 2, JVA, Art. 10.1 at 80[3] (UNDER SEAL).) On Confidentiality, Article 11.1 of the JVA provides, ███████████████████████████████████████████████████████████████ (*Id.*, JVA, Art 11.1(a) at 80 (UNDER SEAL).) The " ███████████████████████████████████████████████████████████████ (*Id.*, JVA, Art 11.1(b)(iii) at 81 (UNDER SEAL).)

Similarly, the Confidentiality provision of the SLC under Article 9 provides, ███████████████████████████████████████████████,

---

[3] Page numbers are based on the CM/ECF pagination.

1
2
3
4
5 (*Id.*, SLC, Art. 9.1 at 87 (UNDER SEAL).)  In turn,
6
7
8
9 . . ." (*Id.*,
10 SLC, Art. 9.2 at 87 (UNDER SEAL).)

The Arbitration Tribunal ("Tribunal") referred to the claims for breaches of Articles 10.1 and 11.1 of the JVA and Article 9.2 of the SLC as the "Contractual IP Claim" and the misappropriation of MedImpact's intellectual property rights under U.S., English and UAE law as the "Statutory IP Claim." (*Id.*, Partial Final Award ¶¶ 97(2)(iii) & (iv) (UNDER SEAL).)

Pursuant to the JVA and SLC, the laws of England applied to the interpretation of the contract claims. (*Id.*, Partial Final Award on Liability ¶¶ 27, 28 (UNDER SEAL).) On April 16, 2019, after extensive discovery and an evidentiary hearing, the Arbitrator made numerous legal and factual findings in a 75-page order entitled Partial Final Award on Liability. (*Id.*, Partial Final Award (UNDER SEAL).)

On the Contractual IP Claim, the Arbitrator ruled that:

(1) 

. . .

Case 3:19-cv-01865-GPC-DEB   Document 569   Filed 06/24/22   PageID.56131   Page 5 of 17

1  (5) ██████████████████████████████████
2  ██████████████████████████████ .
3
4  (*Id.* at ¶¶ 178(1), (2), & (5) (UNDER SEAL).)  In conclusion, the Arbitrator declared that
5  "██████████████████████████████████████
6  ██████████████████████████████████████
7  ████████████████████████████ (*Id.* ¶ 203(2) (UNDER
8  SEAL).)
9       On the Statutory IP Claim, the Arbitrator ruled:
10 ████████████████████████████████████
11 ████████████████████████████████████
12 ████████████████████████████████████
13 ████████████████████████████████████
14 ████████████████████████████████████
15 ████████████████████████████████████
16 ████████████████████████████████████
17 ████████████████████████████████████
18
19 (*Id.* ¶ 179 (internal footnotes omitted) (UNDER SEAL).)
20      On July 24, 2019, the Arbitrator issued an order on damages entitled Final Award.
21 (Dkt. No. 506-1, Swedlow Decl., Ex. 1, Final Award (UNDER SEAL).)  He ordered a
22 ████████████████████████████████████
23 ████████████████████████████████████ . (*Id.*, Final
24 Award ¶ 107 (UNDER SEAL).)  On April 20, 2021, pursuant to the parties' joint motion
25 for entry of judgment, this Court confirmed the international arbitration award pursuant
26 to 9 U.S.C. § 207 and final judgment was entered.  (Case No. 21cv193-GPC(DEB), Dkt.
27 No. 22.)  Dimensions has fully paid the damages to MIL and MI-HK.
28

5

19cv1865-GPC(DEB)

On March 10, 2022, the Court granted in part and denied in part Plaintiffs' motion for partial summary judgment and held that issue preclusion barred re-litigation in this case of the prior arbitration rulings that 1) "MedImpact's trade secrets used to build AIMS are protectible"; and 2) "AIMS uses Plaintiffs' misappropriated trade secrets." (Dkt. No. 432 at 25.)  Defendants move for reconsideration of this ruling and the motion is fully briefed.

## Discussion

### A.   Legal Standard on Motion for Reconsideration

The court has "inherent jurisdiction to modify, alter or revoke [a prior non-final order]." *United States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000).  "The authority of district courts to reconsider their own orders before they become final, absent some applicable rule or statute to the contrary, allows them to correct not only simple mistakes, but also decisions based on shifting precedent, rather than waiting for the time-consuming, costly process of appeal." *Id.*; *see* Fed. R. Civ. P. 54(b) (a non-final order "may be revised at any time before the entry of a judgment adjudicating all claims and all the parties' rights and liabilities.").

While a "district court may reconsider and reverse a previous interlocutory decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of controlling law . . . a court should generally leave a previous decision undisturbed absent a showing that it either represented clear error or would work a manifest injustice." *Abada v. Charles Schwab & Co., Inc.,* 127 F. Supp. 2d 1101, 1102-03 (S.D. Cal. 2000).

Local Civil Rule 7.1(i)(1) provides that a motion for reconsideration must include:

> (1) when and to what judge the application was made, (2) what ruling or decision or order was made thereon, and (3) what new and different facts and circumstances are claimed to exist which did not exist, or were not shown upon such prior application.

Local Civ. R. 7.1(i)(1).[4]

Defendants move for reconsideration arguing the Court erred by stating that the parties only disputed the "actually litigated" element of issue preclusion when Defendants also argued that the "necessarily decided" factor was not met. (Dkt. No. 457-1 at 13.) Plaintiffs disagree. (Dkt. No. 518 at 16-17.) The Court recognizes that it incorrectly stated that Defendants only challenged the "actually litigated" prong of the Ninth Circuit's four factor test, and thus, this oversight warrants review of Defendants' reconsideration arguments. Nonetheless, the Court concludes that reconsideration is not warranted.

## B.   Issue Preclusion

A federal-court order confirming an international arbitration award[5] has "the same force and effect" as a final judgment on the merits, 9 U.S.C. § 207[6], including the same preclusive effect. *See Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1094 n.1 (9th Cir. 2011) ("Once the award is confirmed, the judgment has the same force and effect of a judgment in a civil action and may be enforced by the means available to enforce any other judgment."); *see also Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.*, 48 F.3d 576, 585 (1st

---

[4] Plaintiffs argue the motion should be denied for failing to comply with Civil Local Rule 7.1(i)(1) requiring a declaration stating different fact or circumstances which did not previously exist. (Dkt. No. 518 at 24.) Defendants disagree arguing they complied with the Local Rule. (Dkt. No. 549 at 10-11.) Because the Court denies Defendants' motion for reconsideration, the Court need not address whether the Swedlow declaration was in compliance with the Civil Local Rule.

[5] "Confirmation of foreign arbitration awards is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, known as the New York Convention, and federal law implementing the Convention, 9 U.S.C. §§ 201–208." *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1095 (9th Cir. 2011).

[6] "Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207.

Cir. 1995) (holding that "when a federal district court enters a judgment confirming an arbitration award pursuant to the Federal Arbitration Act, that judgment has res judicata effect as to all matters adjudicated by the arbitrators and embodied in their award.").

Here, Defendants move for reconsideration on two bases. First, they contend that the Arbitrator did not "necessarily decide" that Plaintiffs' alleged trade secrets were protectable and misappropriated. (Dkt. No 457-1 at 13.) Second, they assert that the Arbitrator did not "actually decide" that Plaintiffs' alleged trade secrets were protectable and misappropriated under English trade secret law. (*Id.* at 16.)

### 1. "Necessary to Decide the Merits"

The Ninth Circuit has identified four conditions that must be met for issue preclusion or collateral estoppel to apply: "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." *Snoqualmie Indian Tribe v. Washington*, 8 F.4th 853, 864 (9th Cir. 2021) (quoting *Janjua v. Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019)).

Defendants, relying on California law, contend the Arbitrator did not "necessarily decide" that Plaintiffs' alleged trade secrets were protectable or misappropriated in determining the Contractual IP Claim.[7] (Dkt. No. 457-1 at 13-16.) Plaintiffs respond, relying on federal law, that the Tribunal undeniably decided these two issues. (Dkt. No. 518 at 18-21.)

As a threshold matter, and as defense counsel acknowledged at the hearing,[8] federal law governs the Court's analysis on issue preclusion because it confirmed the prior arbitration and final judgment was issued in Case No. 21cv193-GPC(DEB). (*See*

---

[7] (Dkt. No. 457-1 at 14 (citing *In re Harmon,* 250 F.3d 1240, 1248-49 (9th Cir. 2001); *In re Nguyen*, BAP No. CC–11–1379–LaPaMk, 2012 WL 603680, at *6 (B.A.P, 9th Cir. 2012); *In re Honkanen*, 446 B.R. 373, 382 (B.A.P. 9th Cir. 2011).)

[8] (Dkt. No. 568, June 17, 2022 Trans. Hearing at 12:3-6.)

Dkt. No. 195 at 6 (quoting *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) ("The preclusive effect of a federal-court judgment is determined by federal common law.")).

Under Ninth Circuit precedent, to invoke collateral estoppel, an issue must have been "'necessarily' (and not 'presumably') decided in the first proceeding." *United States v. Weems*, 49 F.3d 528, 532 (9th Cir. 1995) (internal citations omitted). The Ninth Circuit explained that "'necessarily' . . . means only that the court undeniably decided the issue, not that it was unavoidable for it to do so." *United States v. Johnson*, 256 F.3d 895, 915 (9th Cir. 2001) (citing *Weems*, 49 F.3d at 532). "[W]here the court heard evidence and argument from both parties, and specifically ruled on the issue, a party may not escape the ruling's binding effect on the ground that it was not logically essential to the court's ultimate determination." *Id.* (citing *Weems*, 49 F.3d at 532).

In *Weems,* the defendant used structured funds to purchase two parcels of land, one of which was used for the cultivation of marijuana. *Weems*, 49 F.3d at 530. In a prior forfeiture decision, a district court found that the defendant was unaware of the marijuana cultivation on his property, but nevertheless held that the properties were subject to forfeiture because they had been purchased with illegally structured funds. *Id.* About fifteen months later, the defendant was indicted on three counts of structuring currency transactions, and the trial court permitted the prosecution to introduce evidence that the defendant was growing marijuana on his property as evidence of his motive in structuring the transactions. *Id.* After he was convicted, the defendant appealed his conviction on collateral estoppel grounds, arguing that the prior forfeiture finding that he was unaware of marijuana cultivation on his property precluded the prosecution from arguing in a successive proceeding that this cultivation motivated his decision to structure funds. The Ninth Circuit disagreed with the government's argument, that collateral estoppel should not apply because the district court ordered forfeiture on another ground, and therefore its determination that the defendant was an innocent owner was not "necessary to the judgment" forfeiting defendant's property, as too narrowly interpreted. *Id.* at 532. Instead, the Ninth Circuit explained that "it is very clear that the district court heard

1  evidence and argument from both sides on the question of whether or not defendant knew
2  of the marijuana grow, and specifically concluded that he did not. This conclusion was
3  necessary to the court's decision that the [ ] property was forfeitable on one of the
4  government's requested grounds, but not both." *Id.*

5  Similarly in *Sempra Energy v. Marsh USA, Inc.*, CV 07-05431 SJO (JCx), 2008
6  WL 11335050, at *10 (C.D. Cal. Oct. 15, 2008), a prior arbitration panel's ruling rested
7  on two alternative grounds. On a motion in limine, the district court rejected a collateral
8  estoppel argument relying on California law that one of the rulings was merely dicta and
9  unnecessary to the panel's determination, *id.* at 9, and held that under federal law, citing
10 to *Weems* and *Johnson,* "'necessarily' . . . means only that the court undeniably decided
11 the issue, not that it was unavoidable for it to do so." *Id.* at 10. The court concluded that
12 "given that the panel necessarily decided the issue that currency devaluation caused
13 Sempra's loss, it does not matter whether the determination was unavoidable or logically
14 required for the panel to reach its ultimate conclusion." *Id.*

15 Defendants contend that because the Arbitrator found that Dimensions breached
16 the "███████████████" and "█████████████" provisions in the JVA and SLC, he did
17 not necessarily decide that MedImpact's trade secrets were protectable or
18 misappropriated as a matter of trade secret law. (Dkt. No. 457-1 at 15.) Instead, because
19 ████████████████████████ broadly covers more than just trade secrets, the Arbitrator could
20 have found breaches of the contracts based on misuse of confidential information and not
21 necessarily misuse of trademarks. In other words, Defendants claim ██████████████
22 █████████████████████████████████████████████████████████████████████████
23 ██████████████████████████████████ but not necessarily trade secret law. (*Id.*) Plaintiffs
24 respond that Defendants misconstrue the "necessary" factor arguing that the Tribunal
25 made two determinations relevant to this case that were "undeniably decided." (Dkt. No.
26 518 at 19.)

27 It is true that the Arbitrator, in determining ████████████████████████████
28 ████████████████████████████████, did not have to conclude that Dimensions

1  misappropriated trade secrets because the ▓▓▓
2  ▓▓▓
3  ▓▓▓ (Dkt. No. 506-2, Swedlow Decl., Ex. 2
4  at 87 (UNDER SEAL).)  However, the Arbitrator did indeed make specific findings that
5  Dimensions misappropriated MedImpact's Trade Secrets in developing AIMS.[9]  By
6  making this explicit finding, the Arbitrator "undeniably decided" the issue for purposes
7  of issue preclusion.  *See Johnson,* 256 F.3d at 915.
8        This finding is further evidenced by the Arbitrator's reliance and adoption of the
9  opinions of MedImpact's technical expert, Heather Bates ("Ms. Bates").  In her expert
10 report, Ms. Bates ▓▓▓
11 ▓▓▓
12 ▓▓▓
13 ▓▓▓
14 ▓▓▓
15 ▓▓▓
16 ▓▓▓
17 ▓▓▓
18 ▓▓▓  (Dkt. No. 506-6, Swedlow Decl., Ex. 6, Bates Expert Report dated 12/3/18 ¶
19 123 (UNDER SEAL).)  ▓▓▓
20 ▓▓▓.  (*Id.* ¶ 123 n.288 (UNDER SEAL).)

---

[9] The elements of a misappropriation claim under the DTSA requires the plaintiff to prove "(1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 657-58 (9th Cir. 2020) (citing 18 U.S.C. § 1839(5)).  The "definition of a trade secret consists of three elements: (1) information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret." *Id.* at 657 (citing 18 U.S.C. §§ 1839(3), (5)).  An analysis on CUTSA is "substantially similar" to the DTSA.  *Id.*; *compare* 18 U.S.C. § 1839(5), *with* Cal. Civ. Code § 3426.1(b); *see also Deerpoint Grp., Inc. v. Agrigenix, LLC*, 345 F. Supp. 3d 1207, 1228 (E.D. Cal. 2018) (interpreting "DTSA claims consistently with its CUTSA claims").

Based on this, Ms. Bates identified three categories of "protectable and definable trade secrets": 1) █████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████." (*Id.* ¶¶ 131-39, 140-46, 147-54 (UNDER SEAL).) While Ms. Bates also references ████████████████████", she identifies them distinctly from "trade secrets." (*See id.* (UNDER SEAL).) Further, her report does not reference "████████████████████."

The Arbitrator relied on Ms. Bates' expert report and identified five categories of trade secrets from the three categories of trade secrets identified by Ms. Bates.[10] (Dkt. No. 506-2, Swedlow Decl., Ex. 2, Partial Final Award ¶¶ 150, 151 (UNDER SEAL).) The Arbitrator stated that Ms. Bates "████████████████████████████████████ ████████████████████████████████████████████████████████████", (*id.* ¶ 150 (UNDER SEAL)), which he then adopts as the ████████████████████████████████ ████████.[11] (Dkt. No. 506-1, Swedlow Decl., Ex. 1, Final Award, App'x ¶ 2 (UNDER SEAL).) Thus, it is undeniable that the Arbitrator's reference to the five categories of Trade Secrets as Confidential Information were, in fact, trade secrets under the misappropriation laws, and not just confidential information. *See Johnson* 256 F.3d at 915. These same five categories are the identified trade secrets Plaintiffs allege that Defendants misappropriated in this case.

Defendants argue that because the Arbitrator defined ████████████████ █████████████████████████████, (Dkt. No. 506-2, Swedlow Decl., Ex. 2, Partial Final Award ¶ 151 n.148 (UNDER SEAL)), his conclusion that Dimensions misappropriated Trade Secrets is not a reference to trade secrets as defined under the trade secret laws.

---

[10] Two of Ms. Bates' three categories include more than one type of trade secret which the Arbitrator identified as separate trade secrets.

[11] In his description of "████████████████████████████████████████ the Arbitrator copied Ms. Bates' description. (*Compare* Dkt. No. 506-2, Swedlow Decl., Ex. 2, Partial Final Award ¶ 151 *with* Dkt. No. 506-6, Swedlow Decl., Ex. 6, Bates Expert Report dated 12/3/18 ¶ 132.)

1  Within the Partial Final Award in a footnote, "███████████████" is defined as
2  "████████████████████████████████████████████████████████████████████
3  ████████████████████████████████." (*Id.* ¶ 97(2)(iii) n. 74 (UNDER SEAL).)
4  Defendants, relying on footnote 148, argue the Arbitrator defined "███████████
5  █████████████████████████████████."[12]  (*Id.* ¶ 151 n.148.)  The Court
6  disagrees.  The Court recognizes that the Arbitrator, at times, did not use the terms
7  "█████████" and "████████████████" with precision.  However, Defendants
8  fail to account for the Arbitrator's conclusions in the Award where he separately and
9  distinctly uses the terms ██████████ and ████████████████.[13]  Further, the Final
10 Injunction also defines ████████████████████████████████████████████
11 █████████████.  (*Id.*)  Ultimately, it is plain that the Arbitrator's reference to five
12 categories of Trade Secrets relate to trade secrets under the statutory law and not a
13 combination of confidential information and trade secrets.
14      Additionally, at the hearing, Defendants argued that the Award did not identify the
15 trade secrets given that the Arbitrator stated, "[███████████████████████████
16 █████████████████████████████████████████████████████████████████
17 █████████████████████████████████████████████████████████████████
18 █████████████████████████████████████████████████████████████████
19 █████████████████████████████████████████████████████████████████
20 ████████████████████████████████████████████████████." (Dkt. No.
21 506-2, Swedlow Decl., Ex. 2, Partial Final Award ¶ 167 (UNDER SEAL).[14])  Defendants

---

[12] Whether the Arbitrator globally defined ████████████ to include both trade secrets and confidential information is not clearly articulated and subject to interpretation.
[13] On the Contractual IP Claim, the Arbitrator concluded, *inter alia*, that "█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (Dkt. No. 506-2, Swedlow Decl., Partial Final Award ¶¶ 178(1) & (2) (UNDER SEAL).)
[14] At the hearing, Defendants commented on the Joint Report by Ms. Bates and Mr. Gibson submitted in the Arbitration but did not provide a citation to the record.  The Court has been unable to locate the joint

1 are correct this statement does not identify the trade secrets or identify constituent
2 elements from AIMS that were not derived from Confidential Information.  Yet, the
3 Arbitrator, a few paragraphs later, "███████████████████████████████████
4 ████████████████████████████████████████████████████████████████████
5 ████████████████████████████████████████████████████████████████████
6 ███████████████████████████████." (*Id.* ¶ 171 (UNDER SEAL).)

7     The Arbitrator's observations about ████████████████████████████
8 ███████████████████████████ was required to find that trade secrets
9 were misappropriated.[15]  Because Ms. Bates identified the Trade Secrets at issue in AIMS,
10 it was not necessary to identify the specific elements that were not protectable**.**

11     Accordingly, the Court DENIES Defendants' motion for reconsideration on the
12 "necessary to decide the merits" element.

13     **2    "Actually Litigated and Decided in the Prior Proceedings"**

14     Defendants additionally argue that the Arbitrator did not "actually decide" that
15 MedImpact's alleged Trade Secrets, defined by the Arbitrator as "trade secrets and
16 confidential information", were protectable and misappropriated under English trade
17 secret law because he never expressly applied English law in connection with the
18 Contractual IP Claim.  (Dkt. No. 457-1 at 16-18.)  Plaintiffs contend that the legal
19 standard to consider on "actually decided" is whether there is an "identity of the issues."
20 (Dkt. No. 518 at 21.)

21     For issue preclusion to apply, the issue was must have been "actually litigated and
22 decided in the prior proceedings."  *Janjua,* 933 F.3d at 1065.  "[A]n issue is actually
23 litigated when an issue is raised, contested, and submitted for determination."  *Janjua,*

---

report.  The Court only reviewed the summary of the Joint Report as stated in the Arbitrator's Partial Final Award.  (Dkt. No. 506-2, Swedlow Decl., Ex. 2, Partial Final Award ¶ 154 (UNDER SEAL).)

[15] ████████████████████████████████████████████████████████████████████
████████ (Dkt. No. 506-2, Swedlow Decl., Ex. 2, Partial Final Award ¶¶ 167-168 (UNDER SEAL).)

933 F.3d at 1066. Courts must look to the record of the prior proceeding to determine if the issue was "in fact raised, contested, and submitted for determination." *Id.* at 1065; *Factory Direct Wholesale, LLC v. iTouchless Housewares & Prod., Inc.*, 411 F. Supp. 3d 905, 921 (N.D. Cal. 2019). Previously and now, the parties do not dispute that the two issues were raised, contested and submitted for determination. (*See* Dkt. No. 432 at 13 & n.9 (Court's citation to arbitration record showing the two issues were raised, disputed, and presented to the Arbitrator for determination).)

The issue raised by Defendants on reconsideration is whether the issues of trade secret protectability and misappropriation were "decided in the prior proceeding." *See Janjua*, 933 F.3d at 1066 n. 4 (because the Ninth Circuit's preclusion test already requires that an issue be "decided in the prior proceedings," "there is no need to require that an issue was 'determined' for it to have been 'actually litigated.'"). "Issue preclusion applies in 'subsequent suits based on a different cause of action involving a party to the prior litigation'" and the issue "decided in the prior adjudication is [to be] substantially identical to the issue in the subsequent litigation." *Durkin v. Shea & Gould*, 92 F.3d 1510, 1515-16 (9th Cir. 1996); *Montana*, 440 U.S. at 153 (after "an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.").

The Court agrees with Defendants that the Arbitrator did not specifically rule that Plaintiffs' ███████████████ misappropriated under English trade secret law. Instead, the Court concluded the Arbitrator made a necessary ruling that when he addressed the Contractual IP Claim he had to consider whether Dimensions misused MedImpact's trade secrets through the development ███████████████ ███████████████████████████████████████████████████████. (Dkt. No. 432 at 16-22.) The Court made a several step ruling. First, it concluded that, through necessary inferences from the arbitration record, the Arbitrator's statement on the Statutory and Contractual IP Claims were related and overlapping claims. (Dkt. No. 432

1 at 16.) Next, the Court determined that on ruling on the Contractual IP Claim, the
2 Arbitrator necessarily considered the underlying misuse by Dimensions of MedImpact's
3 trade secrets used to build AIMS. (*Id.* at 16-17.) Finally, the Court concluded that
4 because the choice of law provisions in the JVA and SLC state that the laws of England
5 applied, the Arbitrator necessarily applied English laws on the Contractual IP Claim and
6 the Court concluded he implicitly applied trade secret law similar to the DTSA. (*Id.* at
7 18-22.)

Even if the Court was in error by asserting, by implication, that the Arbitrator applied English trade secret misappropriation to the Contractual and/or Statutory IP Claim, the Arbitrator relied on a misappropriation standard that was similar to the DTSA by having relied on Heather Bates' ███████████████████████████████████████ ███████████████████████████████████████████████████████████████.[16] Accordingly, the Court DENIES Defendants' motion for reconsideration on the "decided in the prior proceedings" factor.

**3.     Clarification**

Finally, in the event the Court denies reconsideration, Defendants seek clarification on two points. First, they argue that because the Arbitrator did not actually or necessarily decide which constituent elements of the alleged trade secrets were protectable ██████ ████████████████████████████████████████ Defendants should not be precluded from challenging the protectability of the specific alleged trade secrets. (Dkt. No. 457-1 at 21-22.) Therefore, Defendants seek clarification that ███████████████████████

---

[16] Heather Bates noted that the ███████████████████████████████
██████. (Dkt. No. 506-6, Swedlow Decl., Ex. 6, Bates Report dated 12/3/18 ¶ 123 n.288 (UNDER SEAL) ("████████████████████████████████████████████████
████████████████████████████████████.

██████████████████████████████████████████████████████

██████████████████████████████████████." (*Id.* at 7.)

Second, Defendants assert that any preclusive effect of the Arbitrator's decision should be limited to the discrete alleged trade secrets that he arguably found ████ ████. Because it is undisputed that ███████████████████████████ ██████████████████████████████████████████████████████ ███████████████████████ On this issue, they ███████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████" or, in other words seek "█████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████." (*Id.* at 8, 24.) Plaintiffs respond that Defendants' request for clarification is essentially a reconsideration of issues previously raised. (Dkt. No. 518 at 26-27.)

As the Court held, issue preclusion applies to the Arbitrator's ruling that "1) MedImpact's trade secrets used to build AIMS are protectible; and 2) AIMS uses Plaintiffs' misappropriated trade secrets." The effect that these findings will have on the trial will be determined at future proceedings, including the pending motion for summary judgment and *Daubert* motions, future motion in limine hearing and trial. As a result, at this time, the clarification issues raised by Defendants are premature.

## Conclusion

Based on the above, the Court DENIES Defendants' motion for reconsideration.

IT IS SO ORDERED.

Dated: June 24, 2022

Hon. Gonzalo P. Curiel
United States District Judge