1
2
3
4
5
6
7
8

9          UNITED STATES DISTRICT COURT

10         SOUTHERN DISTRICT OF CALIFORNIA

11

12  MEDIMPACT HEALTHCARE                    Case No.:  19cv1865-GPC(DEB)
    SYSTEMS, INC., a California
13  corporation, MEDIMPACT                  **ORDER GRANTING IN PART AND**
    INTERNATIONAL LLC, a California         **DENYING IN PART PLAINTIFFS'**
14  limited liability company, MEDIMPACT    **MOTION TO EXCLUDE EXPERT**
    INTERNATIONAL HONG KONG LTD.,           **OPINIONS OF MS. BARBARA**
15  a Hong Kong company,                    **FREDERIKSEN-CROSS, DR.**
16                                          **ROBERT NAVARRO AND DR.**
                                            **PATRICK KENNEDY**
17                        Plaintiffs,

18  v.

19  IQVIA HOLDINGS INC., a Delaware
    corporation, IQVIA INC., a Connecticut
20  corporation, IQVIA AG, a Swiss          **[Dkt. No. 421.]**
    company, OMAR GHOSHEH,
21  individually, and AMIT SADANA,
    individually,
22
23                        Defendants.

24

25          Before the Court is Plaintiffs' motion to exclude the expert opinions of Barbara

26  Frederiksen-Cross, Robert Navarro, Ph.D. and Patrick Kennedy, Ph.D.  (Dkt. No. 421.)

27  Defendants filed an opposition.  (Dkt. No. 462.)  Plaintiffs replied.  (Dkt. No. 500.)

28

                                           1

Based on the reasoning below, the Court GRANTS in part and DENIES in part Plaintiffs' motion to exclude.

**A.    *Daubert* Legal Standard**

The trial judge must act as the gatekeeper for expert testimony by carefully applying Federal Rule of Evidence ("Rule") 702 to ensure specialized and technical evidence is "not only relevant, but reliable." *Daubert v. Merrell Dow Pharms. Inc*., 509 U.S. 579, 589 & n.7 (1993); *accord Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (*Daubert* imposed a special "gatekeeping obligation" on trial judges). Under Rule 702, a witness, "qualified as an expert by knowledge, skill, experience, training, or education, may testify" . . . if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.  The proponent of the evidence bears the burden of proving the expert's testimony satisfies Rule 702.  *Lust By & Through Lust v. Merrell Dow Pharm., Inc.,* 89 F.3d 594, 598 (9th Cir. 1996).

Under *Daubert*, scientific evidence must be both reliable and relevant.  *Daubert*, 509 U.S. at 590-91.  Scientific evidence is reliable "if the principles and methodology used by an expert are grounded in the methods of science." *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1056 (9th Cir. 2003).  However, expert testimony may also rest on personal knowledge or experience.  *Kumho Tire Co., Ltd.*, 526 U.S. at 150.  In such a case, reliability depends on the knowledge, experience, education, and training of the expert.  *Id.; see Hangarter v. Provident Life & Accident Ins. Co*., 373 F.3d 998, 1018 (9th Cir. 2004) (district court did not abuse its discretion concluding the expert's testimony reliable based on his knowledge and experience).  The proposed expert testimony must also be "relevant to the task at hand," meaning that it "logically advances a material aspect of the proposing party's case." *Daubert*, 509 U.S. at 597.

1    Moreover, the focus of the district court's analysis "must be solely on principles

2    and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

3    "[T]he test under Daubert is not the correctness of the expert's conclusions but the

4    soundness of his methodology." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311,

5    1318 (9th Cir. 1995) ("*Daubert II*"). "Shaky but admissible evidence is to be attacked by

6    cross examination, contrary evidence, and attention to the burden of proof, not

7    exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing *Daubert*, 509

8    U.S.at 596). "Disputes as to the strength of [an expert's] credentials, faults in his use of

9    [a particular] methodology, or lack of textual authority for his opinion, go to the weight,

10   not the admissibility, of his testimony.'" *Id.* (quoting *McCullock v. H.B. Fuller Co.*, 61

11   F.3d 1038, 1044 (2d Cir. 1995)).

12   **B.    Effect of the Rulings in the Prior Arbitration**

13   Plaintiffs argue that the expert opinions of Barbara Frederiksen-Cross ("Ms.

14   Frederiksen"), Robert Navarro, Ph.D. ("Dr. Navarro") and Patrick Kennedy, Ph.D. ("Dr.

15   Kennedy") that contradict the Arbitrator's ruling in the prior arbitration are barred under

16   the "law of the case" doctrine. (Dkt. No. 421-1 at 29-30.[1])  Defendants respond that the

17   law of the case doctrine applies to rulings decided by the same court or a higher appellate

18   court in the same case and does not apply to the arbitration. (Dkt. No. 462 at 28-29.)

19   Defendants also argue that the doctrine should not apply to those Defendants not in

20   privity with Dimensions in the arbitration. (*Id.*)  Finally, they assert that the case of the

21   law doctrine should not apply even to Defendants in privity because the experts opine on

22   issues that were not necessarily decided in the prior arbitration which is subject to their

23   pending motion for reconsideration. (*Id.* at 29.)

24   First, Defendants' latter two arguments are no longer meritorious.  In the Court's

25   recent order granting in part and denying in part Defendants' omnibus summary

26

27   ───────────────

28   [1] Page numbers are based on the CM/ECF pagination.

1    judgment motion, there are no longer any Defendants not in privity with Dimensions

2    remaining in the case.  Further, since the filing of this motion, on June 24, 2022, the

3    Court denied Defendants' motion for reconsideration on issue preclusion.  (Dkt. No.

4    569.)  Therefore, issue preclusion applies to the Arbitrator's ruling that "1) MedImpact's

5    trade secrets used to build AIMS are protectible; and 2) AIMS uses Plaintiffs'

6    misappropriated trade secrets."  (*Id.* at 17.)   The remaining issue is whether the law of

7    the case doctrine applies to the rulings in the prior, related arbitration.

8          The law of the case doctrine "posits that when a court decides upon a rule of law,

9    that decision should continue to govern the same issues in subsequent stages in the same

10   case." *Arizona v. California*, 460 U.S. 605, 618 (1983); *Askins v. United States Dep't of*

11   *Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018) ("The law-of-the-case doctrine

12   generally provides that 'when a court decides upon a rule of law, that decision should

13   continue to govern the same issues in subsequent stages in the same case.'").  Plaintiffs

14   rely on cases that apply the law of the case doctrine beyond the same case but those cases

15   are "atypical" with unique facts and are not supportive in this case.  (*See* Dkt. No. 421-2

16   at 29 *(citing Disimone v Browner*, 121 F.3d 1262, 1266-67 (9th Cir. 1997) (recognizing

17   "the law of the case doctrine is confined to decisions in the same case as the one in which

18   it is applied" but applying law of the case doctrine because even though petitioners were

19   different in both cases, they were brought against the same agency, about the same issue

20   and on behalf of the same citizen population); *Pompano-Windy City Partners, Ltd. v.*

21   *Bear, Stearns & Co*., Inc., Nos. 87 Civ. 7560 (PKL), 88 Civ. 7159 (PKL), 1993 WL

22   42786, at *10 (S.D.N.Y. Feb. 17, 1993) (applying law of the case doctrine as an

23   alternative because res judicata and collateral estoppel did not apply)).  Instead, the Court

24   concludes that the doctrine of issue preclusion applies to bar re-litigation of issues

25   decided by the Arbitrator.

26         Here, on April 20, 2021, the Court granted Defendants' unopposed petition to

27   confirm the arbitration and final judgment was entered in Case No. 21cv193-GPC(DEB).

28   Based on this judgment, the Court, in this case, ruled that Defendants were barred from

re-litigating the Arbitrator's rulings that "1) MedImpact's trade secrets used to build AIMS are protectible; and 2) AIMS uses Plaintiffs' misappropriated trade secrets." (Dkt. No. 432 at 25.)  The Arbitrator identified five categories of MedImpact's trade secret that were protectible and misappropriated.  (Dkt. No. 506-2, Swedlow Decl., Ex. 2, Partial Final Award on Liability ¶ 151 (UNDER SEAL).)  In that ruling, Arbitrator also imposed a permanent injunction against Dimensions enjoining it and its affiliates from "selling, offering for sale, using, disclosing or transferring . . . AIMS . . . and any products, howsoever named or branded, containing or using the same or substantially similar functionality." (Dkt. No. 506-1, Swedlow Decl., Ex. 1, Final Award ¶ 107(1) & App'x ¶ 4 (Final Injunction) (UNDER SEAL).)  Therefore, issue preclusion bars Defendants, through their experts, from challenging the Arbitrator's ruling identifying the protectible and misappropriated trade secrets at issue in this case.  However, Defendants may challenge Plaintiffs' efforts to demonstrate that the post-Arbitration products such as ACM and EMS are the same or substantially the same as AIMS.

In this case, Plaintiffs advance a trade secret misappropriation theory arguing that Defendants' post-Arbitration products, such as ACM and EMS, are identical to AIMS and they have essentially violated the permanent injunction imposed by the Arbitrator. In order to determine whether issue preclusion on the Arbitrator's rulings concerning AIMS applies in this case, Plaintiffs will have to demonstrate that AIMS is "essentially the same or only colorable different" as the post-Arbitration products. *Cf. Hallco Mfg. Co., Inc. v. Foster*, 256 F.3d 1290, 1298 (Fed. Cir. 2001) (remanding patent case for the district court to determine whether the device in the prior action was "essentially the same or only colorably different" than the device in the present case for the application of claim preclusion).  If Plaintiffs show that Defendants' post-Arbitration products are essentially the same as AIMS with only colorable differences, then issue preclusion applies and bars Defendants from challenging the Arbitrator's ruling that "1) MedImpact's trade secrets used to build AIMS are protectible; and 2) AIMS uses Plaintiffs' misappropriated trade secrets." *See e.g.,* (if the district court concludes that the

"two devices are essentially the same or only colorably different, it should find that Hallco is precluded from challenging validity and infringement").  But if Plaintiffs are unable to show that Defendants' post-Arbitration products are essentially the same as AIMS, then Plaintiffs' case fails.  To the Court's understanding, Plaintiffs have not proposed a middle ground where if they fail to show that the post-Arbitration products are essentially the same with only colorable differences with AIMS, then they will pursue a trade secret misappropriation claim on the post-Arbitration products from scratch.  *See e.g.,* ("if the district court concludes that the two devices are not essentially the same, Hallco is free to challenge validity and infringement.").

With this guidance in mind, the Court considers Plaintiffs' motion to exclude Defendants' experts.

**C.   Barbara Frederiksen-Cross**

Plaintiffs seek to exclude the opinions of Barbara Frederiksen-Cross, Defendants' technical and source code expert, arguing 1) she is not qualified to offer opinions on PBMs; 2) her opinions on development and design and "hypothetical maximum benefit" are conclusory and unreliable; 3) she simply regurgitates emails that require no expert translation, and simply repeats witness testimony without expert analysis; and 4) her opinion that real-time adjudication has been removed from EMS is simply repeating witness testimony without any expert analysis.  (Dkt. No. 421-1 at 8-16.)  Defendants disagree on all four arguments.  (Dkt. No. 462.)

Ms. Frederiksen was designated to "analyze the source code, source code histories, technical 'look and feel', file types . . . to determine whether any of Defendants' products impermissibly incorporate Plaintiffs' alleged trade secrets."  (Dkt. No. 421-3, Bennett Decl., Ex. 1 at 3.)  She was also retained to provide rebuttal response to Plaintiffs' designated expert.  (*Id*.)

First, Plaintiffs argue that Ms. Frederiksen improperly provides opinions outside her specialty in software and source code disciplines into the PBM field and improperly opines about the functional requirements of PBM systems, such as whether products

perform claim adjudication, the role of payers, and other opinions on PBMs.  (Dkt. No. 421-1 at 9-11.)  Defendants maintain that Ms. Frederiksen has the requisite background to opine on certain aspects of PBMs and she also relies on the opinions of others she interviewed to support her opinions.  (Dkt. No. 462 at 7-10.)

Rule 702 provides that a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify."  Fed. R. Evid. 702.  In applying Rule 702, the Ninth Circuit "contemplates *a broad conception* of expert qualifications." *Hangarter*, 373 F.3d at 1015 (emphasis in original) (quoting *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994)).

Ms. Frederiksen has 47 years of experience as a software developer and consultant as well as experience in the design, development and analysis of computer software. (Dkt. No. 421-4, Bennett Decl., Ex. 2 at 4.)  She also has expertise in healthcare and insurance systems, including being retained as an expert to evaluate the functionality of Canada's eHealth system, which include PBM services.  (Dkt. No. 483, Bennett Decl., Ex. 4, Frederiksen Depo. at 33:17-34:8; 89:9-90:4 (UNDER SEAL).)  She also evaluated the drug related services for health insurance services and spent a lot of time understanding its system and capabilities for the U.S. Department of Justice.  (*Id.* at 34:9-17; 91:7-11.)

Because Ms. Frederiksen has qualifications in software development, which is not disputed, and practical experience with PBMs as well as healthcare and insurance services, she has the relevant experience to opine on software development relating to PBMs.  On some opinions, she interviewed individuals with first-hand knowledge or relied on the definition of PBM services provided by both parties' PBM expert.  (*See e.g.*, Dkt. No. 483, Bennett Decl., Ex. 3, Frederiksen Expert Report ¶ 257 & n. 230 (UNDER SEAL); Dkt. No. 483, Ex. 4, Frederiksen Depo. at 34:18-25 (UNDER SEAL).)  Her report does not contain "unreliable nonsense opinions" that are subject to exclusion.  *See Pyramid Techs., Inc. v. Hartford Cas. Ins. Co*., 752 F.3d 807, 815 (9th Cir. 2014).

Instead, Plaintiffs' challenge to her opinions on PBM functionality and features of PBM go to the weight of the testimony and credibility, but not its admissibility.

Second, Plaintiffs argue her "hypothetical maximum benefit" of 31-35% that Dimensions could have gleaned from misappropriating MedImpact's PBM trade secrets because the trade secrets only inform the design of AIMS and not the development of AIMS is based on a faulty assumption and this estimate lacks any traceable methodology. (Dkt. No. 421-1 at 11-13.)  Defendants respond that her opinions on "hypothetical maximum benefit" is based on the fact that Dimensions and Defendants did not have access to MedImpact's source code for the POS engine and MedAccess, and her conclusion is based on her own experience and a peer-reviewed study.  (Dkt. No. 462 at 10-12.)

In her report, Ms. Frederiksen calculated the "hypothetical maximum benefit" Dimensions could have gleaned from MedImpact's trade secrets, (Dkt. No. 483, Bennett Decl., Ex. 3, Frederiksen Expert Report ¶¶ 19-21 (UNDER SEAL), and concluded that MedImpact's alleged trade secrets would have saved Dimensions 31-35% of the cost of developing the AIMS software.  (*Id.* ¶ 19 (UNDER SEAL).)  Ms. Frederiksen distinguishes between development and design phases of software development. According to her, because Dimensions did not have access to the source code, the development time and costs would not have saved Dimensions any time and costs.  (*Id.* (UNDER SEAL).)  However, she acknowledges Dimensions was provided with materials concerning the design phases of AIMS' software development from MedImpact.  (*Id.* (UNDER SEAL).)

Based on her experience, she opined that the resource requirements for "software planning, requirements analysis and design for large software projects will consume an average of around 31-35% of the total development resources."  (*Id.* (UNDER SEAL).) She confirmed this range with software development effort allocations published in peer reviewed papers, including a published study that examined empirical evidence from 75 projects that were gathered from 46 software organizations."  (*Id.* ¶ 20 (UNDER SEAL).)

In her calculations, Ms. Frederiksen assumed that the AIMS design adopted all elements of MedImpact's trade secrets and Dimensions had only to code, test, and deploy the AIMS software.  (*Id.* ¶ 21 (UNDER SEAL).)

Here, Ms. Frederiksen's opinion addresses the amount of time and costs saved resulting from Defendants misappropriating Plaintiffs' trade secrets.  Avoidance of costs as a form of unjust enrichment is an equitable remedy that focuses on the amount by which Defendant was enriched by avoiding costs that would have been incurred.  *See Syntel Sterling Best Shores Mauritius Ltd v. TriZetto Grp*., 15 Civ. 211 (LGS), 2021 WL 1553926, at *6 (S.D.N.Y. Apr. 20, 2021) ("Unjust enrichment damages derive from a policy of preventing wrongdoers from keeping ill-gotten gains, and therefore do not require a corresponding loss to the plaintiff.").  Her opinion bears on the costs that were not avoided in misappropriating trade secrets.[2]  Any issues regarding Ms. Fredericksen's methodology can be addressed on cross examination.  The Court DENIES Plaintiffs' motion to exclude Ms. Frederiksen's opinions on the "hypothetical maximum benefit."

Third, Plaintiffs argue that Appendix 1 and 2 of her expert report merely regurgitate factual evidence and summarize emails which do not require any expertise.  (Dkt. No. 421-1 at 13-16.)  Defendants respond that Ms. Frederiksen's opinion is based on her technical expertise and includes her analysis and interpretation of the meaning of emails containing technical words and terms related to software development that a lay juror would not understand.  (Dkt. No. 462 at 15.)

The Court grants Plaintiffs' motion to exclude Ms. Frederiksen's opinions contained in Appendix 1 and 2 but for other reasons.  First, Appendix 1 concerns Ms. Frederiksen's opinion on the claims data claim which the Court granted summary judgment in favor of Defendants; therefore, Plaintiffs' challenge is now moot.  Next, Appendix 2 is used to bolster Ms. Frederiksen's opinion that AIMS was developed

---

[2] Ms. Fredericksen will be permitted to testify on Hypothetical Maximum Benefit if Plaintiffs are allowed to present an avoided costs damages theory at trial.

1    starting in 2014 "from scratch" without the benefit of MedImpact's trade secrets.  As

2    discussed above, her opinions whether MedImpact trade secrets are contained in AIMS

3    are barred under the Court's ruling on issue preclusion.

4         Finally, Plaintiffs argue that Ms. Frederiksen's opinion that EMS does not

5    adjudicate pharmacy claims in real-time because the capability has been purportedly

6    removed is not supported by any computer software or source code analysis.  (Dkt. No.

7    421-1 at 16.)  They assert that her opinions with respect to the EMS workflow for

8    pharmaceutical claims adjudication based on her conversations with EMS developers is

9    not highly technical and would not aid the jury.  (*Id.*)  Defendants disagree maintaining

10   that Ms. Frederiksen's opinion that real-time adjudication has been removed from EMS is

11   admissible as she is allowed to rely on statements of EMS developers which are highly

12   technical and would assist the jury.  (Dkt. No. 462 at 16.)

13        Under Rule 703, an expert may base an opinion on facts or data "perceived by or

14   made known to the expert at or before the hearing."  Fed. R. Evid. 703.  Rule 703 allows,

15   otherwise inadmissible evidence, to be admissible if the expert opinion is based on "facts

16   or data" that is "of a type reasonably relied upon by experts in the particular field in

17   forming opinions."  Fed. R. Evid. 703.  "[A]n expert may rely on data that she did not

18   personally collect," and "need not have conducted her own tests."  *Gussack Realty Co. v.*

19   *Xerox Corp.*, 224 F.3d 85, 94-95 (2d Cir. 2000).  Rule 703 "merely relaxes, for experts,

20   the requirement that witnesses have personal knowledge of the matter to which they

21   testify."  *Claar v. Burlington Northern R. Co.*, 29 F.3d 499, 501 (9th Cir. 1994); *see also*

22   *Daubert*, 509 U.S. at 591 (noting that Rule 703's "relaxation of the usual requirement of

23   firsthand knowledge  . . . is premised on an assumption that the expert's opinion will have

24   a reliable basis in the knowledge and experience of his discipline.").

25        Here, Ms. Frederiksen is allowed to rely on statements of EMS developers

26   concerning whether EMS is capable of performing real-time adjudication to support her

27   own expert opinion.  *See In re Conagra Foods, Inc.*, 302 F.R.D. 537, 556 (C.D. Cal.

28   2014) ("an expert can appropriately rely on the opinions of others if other evidence

1    supports [the expert's] opinion and the record demonstrates that the expert conducted an

2    independent evaluation of that evidence."). Plaintiffs may challenge her opinions and the

3    underlying bases of her opinions on cross-examination.

4        In sum, the Court GRANTS in part and DENIES in part Plaintiffs' motion to

5    exclude the opinions of Ms. Frederiksen.

6    **D.    Dr. Robert Navarro**

7        Plaintiffs move to exclude the opinions of Dr. Robert Navarro, Defendants' PBM

8    expert, that 1) Medmpact's trade secrets have common functionality, and thus are not

9    trade secrets, (Dkt. No. 421-1 at 16-19); 2) MedImpact's trade secrets are not trade

10   secrets, an impermissible legal conclusion, (*id.* at 19-20); and 3) AIMS is not a PBM, as

11   irrelevant and unreliable. (*Id.* at 20-21.) Defendants disagree arguing that Dr. Navarro's

12   opinions that Plaintiffs' challenge are relevant and reliable and he does not offer an

13   improper legal conclusion. (Dkt. No. 462 at 17-23.)

14       Dr. Navarro was retained to analyze "the functionality of Defendants' products at

15   issue . . . to determine whether any of those products offer or incorporate PBM services

16   and could be considered competitive with Plaintiffs' products." (Dkt. No. 421-3, Bennett

17   Decl., Ex. 1 at 4.) He was also retained to provide rebuttal expert testimony of Plaintiffs'

18   designated expert. (*Id.*)

19       As to Plaintiffs' first two challenges to Dr. Navarro's opinions, he opines that the

20   "trade secrets claimed in the Bates Report include many items that are common to PBMs

21   and would not be considered trade secrets. (Dkt. No. 483, Bennett Decl., Ex. 5, Dr.

22   Navarro Expert Report ¶ 11(g) (UNDER SEAL).) He concludes that PBM services and

23   functionality associated with MedImpact's trade secrets are "common among PBMs",

24   "not unique to MedImpact," and "generally known" in the industry. (*Id.* ¶¶ 43-47

25   (UNDER SEAL).)

26       Dr. Navarro presents an opinion challenging Heather Bates' conclusion that

27   Plaintiffs' POS system, MedAccess screens, Client Implementation Questionnaires,

28   Standard Benefit Templates, and File Types are protectable trade secrets. (Dkt. No. 483,

Bennett Decl., Ex. 5, Dr. Navarro Expert Report ¶¶ 43-48.)  Under issue preclusion, Dr. Navarro is barred from opining that Plaintiffs' alleged trade secrets in this case that are allegedly identical to AIMS as not protectible and not misappropriated in AIMS.[3]

Therefore, the Court GRANTS Plaintiffs' motion to exclude the opinions of Dr. Navarro about the common functionality of MedImpact's trade secrets and that MedImpact's trade secrets are not trade secrets are barred by issue preclusion.  (*See* Dkt. No. 483, Bennett Decl., Ex. 5, Dr. Navarro Expert Report ¶ 11(g); ¶¶ 43-48 (UNDER SEAL)).

Lastly, Plaintiffs argue that Dr. Navarro's opinion that AIMS is "not a PBM" is irrelevant as to whether AIMS was created using MedImpact's trade secrets and unreliable because it is premised on the fact that a PBM must provide all possible PBM services.  (Dkt. No. 421-1 at 20-21.)  Defendants respond that Dr. Navarro's opinion that AIMS is not a PBM is not being offered on the trade secret misappropriation claim but on whether Defendants competed unlawfully against MedImpact which relates to the claims for breach of fiduciary duty, conspiracy, and RICO.[4]  (Dkt. No. 462 at 22-23.)

In their FAC, Plaintiffs have alleged that Dr. Ghosheh breached a fiduciary duty by misrepresenting that AIMS was not a PBM.  (Dkt. No. 93, FAC ¶ 110.)  As a result, Plaintiffs have made Dr. Navarro's opinion relevant.[5]  On this, Plaintiffs simply disagree with Dr. Navarro's conclusion that AIMS is not a PBM and disagree with his opinions as to what services constitute a PBM; however, their arguments challenge Navarro's conclusions, not reliability, and may be addressed on cross-examination.

---

[3] Dr. Navarro testified that he was not rendering any opinions relating to the ACM and EMS products, or ICM.  (Dkt. No. 493, Swedlow Decl., Ex. 11, Dr. Navarro Depo. at 26:14-23; 26:24-27:9; 27:10-18 (UNDER SEAL).)

[4] Given that the summary judgment has been entered on the RICO claim, RICO does not provide a basis for the opinion to be admitted.

[5] The motion for summary judgment on the breach of fiduciary claim and related conspiracy claim were left undecided given the state of the briefing.  Based upon the state of the record, the opinion is relevant on the alleged misrepresentation by Dr. Ghosheh

Defendants continue that "[w]hether Defendants 'competed unlawfully' requires an analysis as to whether AIMS is considered a 'PBM' or, if, as Dr. Navarro opines, it is not, Defendants would have been free to compete with Plaintiffs under the terms of the Joint Venture Agreement." (Dkt. No. 462 at 22-23.) However, given that Plaintiffs' theory of breach of fiduciary duty does not rely on a breach of the joint venture agreement, Dr. Navarro's opinion is inadmissible on this offered ground.

Accordingly, the Court GRANTS Plaintiffs' motion to exclude Dr. Navarro's opinions concerning the common functionality of MedImpact's trade secrets and whether the trade secrets asserted by Heather Bates are in fact trade secrets based on issue preclusion. The Court also DENIES Plaintiff's motion to exclude his opinion that AIMS is not a PBM as it is relevant to the breach of fiduciary duty and conspiracy claim against Dr. Ghosheh but GRANTS the motion to exclude his opinion that AIMS is not a PBM as it relates to the JVA.

**E.    Dr. Patrick Kennedy**

Plaintiffs seek to exclude the opinions of Dr. Kennedy, Defendants' economic expert, on his calculations of Plaintiffs' damages because 1) he fails to assume liability and relies on Ms. Frederiksen's unreliable assumptions; and 2) his rebuttal opinions challenging Plaintiffs' damages expert Mr. Malackowski are not tied to the trade secrets at issue, fail to assume liability and again rely on the unreliable assumptions of Ms. Frederiksen. (Dkt. No. 421-1 at 21-29.) Defendants respond that Dr. Kennedy accepted liability based on trade secrets claims in Ms. Bates' expert report and that his "sufficient tie" opinion is admissible. (Dkt. No. 462 at 23-28.)

Dr. Kennedy is an economist and was retained to perform a damages analysis to determine damages Plaintiffs suffered due to Defendants' alleged misconduct and provide rebuttal testimony as to Plaintiffs' designated expert. (Dkt. No. 421-3, Bennett Decl., Ex. 1 at 4.) He calculated an alternate measure of damages for unjust enrichment or what he describes as the "avoided design development costs" relying on Ms. Frederiksen's "hypothetical maximum benefit" opinion. (Dkt. No. 483, Bennett Decl.,

Ex. 7, Dr. Kennedy Expert Report ¶¶ 113-18 (UNDER SEAL).)  He accepted liability based on the trade secrets outlined in Ms. Bates' report but according to Dr. Kennedy, the benefit of the alleged use of the trade secrets is limited to an "incremental savings in the design development time and effort associated with IQVIA's alleged misappropriation of MedImpact's claimed trade secrets."  (*Id.*)  According to Defendants, the alternative measure of avoided design development costs looks to Dimensions' alleged savings costs in developing AIMS, not the development costs of Plaintiffs' entire PBM which Plaintiffs expert proposes.  (Dkt. No. 462 at 24.)

Dr. Kennedy relies on the trade secrets identified in Ms. Bates' report.  (Dkt. No. 483, Bennett Decl., Ex. 7, Dr. Kennedy Expert Report ¶¶ 23-29, 77 (UNDER SEAL).)  After discussions with Ms. Frederiksen who informed him that the claimed trade secrets in MedImpact's 27-page interrogatory response are broader than the ones set forth in Ms. Bates report, Dr. Kennedy relied on the trade secrets in Ms. Bates report.  (*Id.*)  In contrast, according to Defendants, the calculations of Mr. Malackowski, Plaintiffs' damages expert, are based on the trade secrets identified in the 27-page interrogatory response.  (Dkt. No. 491-29, Swedlow Decl., Ex. 35 (UNDER SEAL).)  According to Plaintiffs, the 27 pages "describe the specific proprietary elements of the five trade secrets."  (Dkt. No. 472 at 37.)  In her report, Ms. Bates incorporates by reference the 27-page description of the five identified trade secrets by the Arbitrator stating "MedImpact's identified trade secrets are further described throughout this report as well as in [Interrogatory Response No. 1]."  (Dkt. No. 491-21, Swedlow Decl., Ex. 27, Bates Report dated Nov. 21, 2021 ¶ 28 (UNDER SEAL).)

While the 27-page interrogatory response may further describe the trade secrets in Plaintiffs' view, at trial, Plaintiffs will be confined to the findings and sources of information relied upon by the Arbitrator in identifying the trade secrets that were misappropriated in the AIMS platform.  The fact that Dr. Kennedy did not rely on the 27-page interrogatory is of no consequence given that he did consider Ms. Bates' opinions.  Accordingly, the Court DENIES Plaintiffs' motion to exclude Dr. Kennedy's opinions

for failing to assume liability and his rebuttal opinions challenging Mr. Malackowski's opinions.

Finally, Plaintiffs object to Dr. Kennedy's analysis because he relies on Ms. Frederiksen's theory of liability.  Because the Court denies Plaintiffs' motion to exclude Ms. Frederiksen's "hypothetical maximum benefit" or design/development distinction, the Court also, at this time, DENIES Plaintiffs' motion to exclude Dr. Kennedy's damages calculations relying on Ms. Frederiksen's theory.

### Conclusion

Based on the above, the Court GRANTS in part and DENIES in part Plaintiffs' motion to exclude certain expert opinions of Barbara Frederiksen-Cross, Dr. Robert Navarro, and Dr. Patrick Kennedy as discussed above.

IT IS SO ORDERED.

Dated:  October 7, 2022

Hon. Gonzalo P. Curiel
United States District Judge

19cv1865-GPC(DEB)