UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDIMPACT HEALTHCARE SYSTEMS, INC., a California corporation, MEDIMPACT INTERNATIONAL LLC, a California limited liability company, MEDIMPACT INTERNATIONAL HONG KONG LTD., a Hong Kong company,<br><br>                                    Plaintiffs,<br><br>v.<br><br>IQVIA HOLDINGS INC., a Delaware corporation, IQVIA INC., a Connecticut corporation, IQVIA AG, a Swiss company, OMAR GHOSHEH, individually, and AMIT SADANA, individually,<br><br>                                    Defendants. | Case No.:  19cv1865-GPC(DEB)<br><br>**ORDER**<br><br>**(1) DENYING DEFENDANTS' MOTION TO EXCLUDE THE EXPERT OPINIONS OF HEATHER BATES;**<br><br>**(2) DENYING DEFENDANTS' MOTION TO EXCLUDE THE OPINIONS OF PLAINTIFFS' NON-RETAINED EXPERT VASUDEVA BOBBA; AND**<br><br>**(3) DENYING DEFENDANTS' MOTION TO EXCLUDE THE EXPERT OPINIONS OF JAMES MALACKOWSKI**<br><br> [REDACTED - ORIGINAL]<br>**[FILED UNDER SEAL]**<br><br>**[Dkt. Nos. 440, 443, 446.]** |

Before the Court is Defendants' motions to exclude the opinions of Plaintiffs' technical expert Heather Bates, Plaintiffs' non-retained expert on damages, Vasudeva Bobba, and Plaintiffs' damages expert James Malackowski.  (Dkt. Nos. 440, 443, 446.)  Plaintiffs filed their oppositions on April 15, 2022.  (Dkt. Nos. 475, 478, 481.)  Defendants filed their replies on May 18, 2022.  (Dkt. Nos. 521, 524, 527.)  Based on the reasoning below, the Court DENIES Defendants' motion to exclude the opinions of Plaintiffs' technical expert Heather Bates, conditionally DENIES Defendants' motion to exclude the expert opinions of Vasudeva Bobba, and conditionally DENIES Defendants' motion to exclude the expert opinions of James Malackowski.

## Discussion

### A.  *Daubert* **Legal Standard**

The trial judge must act as the gatekeeper for expert testimony by carefully applying Federal Rule of Evidence ("Rule") 702 to ensure specialized and technical evidence is "not only relevant, but reliable."  *Daubert v. Merrell Dow Pharms. Inc.,* 509 U.S. 579, 589 & n.7 (1993); *accord Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (*Daubert* imposed a special "gatekeeping obligation" on trial judges).

Under Rule 702, a witness, "qualified as an expert by knowledge, skill, experience, training, or education, may testify" . . . if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  The proponent of the evidence bears the burden of proving the expert's testimony satisfies Rule 702.  *Lust By & Through Lust v. Merrell Dow Pharm., Inc.,* 89 F.3d 594, 598 (9th Cir. 1996).

In applying Rule 702, the Ninth Circuit "contemplates a *broad conception* of expert qualifications."  *Hangarter v. Provident Life & Accident Ins. Co.,* 373 F.3d 998, 1015 (9th

Cir. 2004) (emphasis in original) (quoting *Thomas v. Newton Int'l Enters.,* 42 F.3d 1266, 1269 (9th Cir. 1994)).    "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing *Daubert*, 509 U.S.at 596).

The district court must act as a gatekeeper to exclude "junk science." *Messick v. Novartis Pharms. Corp.,* 747 F.3d 1193, 1199 (9th Cir. 2014); *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 982 (9th Cir. 2011) ("Under *Daubert*, the trial court must act as a "gatekeeper" to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable.").

Under *Daubert*, scientific evidence must be both reliable and relevant.  *Daubert,* 509 U.S. at 590-91.  Scientific evidence is reliable "if the principles and methodology used by an expert are grounded in the methods of science." *Clausen v. M/V New Carissa,* 339 F.3d 1049, 1056 (9th Cir. 2003). However, expert testimony may also rest on personal knowledge or experience. *Kumho Tire Co., Ltd.,* 526 U.S. at 150. In such a case, reliability depends on the knowledge, experience, education, and training of the expert.  *Id.; see Hangarter*, 373 F.3d at 1018 (district court did not abuse its discretion concluding the expert's testimony reliable based on his knowledge and experience).

The focus of the district court's analysis "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert,* 509 U.S. at 595.  "[T]he test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology." *Daubert v. Merrell Dow Pharms., Inc.,* 43 F.3d 1311, 1318 (9th Cir. 1995) ("*Daubert II*").  Second, the proposed expert testimony must be "relevant to the task at hand," meaning that it "logically advances a material aspect of the proposing party's case." *Daubert,* 509 U.S. at 597.  Simply put, the question under *Daubert* is "whether or not the reasoning is scientific and will assist the jury.  If it satisfies these two requirements, then it is a matter for the finder of fact to decide what weight to accord the expert's testimony." *Kennedy v. Collagen Corp.,* 161 F.3d 1226, 1231 (9th Cir. 1998).  "Disputes

as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony.'" *Id.* (quoting *McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1044 (2d Cir. 1995)).

**B.     Motion to Exclude Plaintiffs' Technical Expert Heather Bates**

Defendants first move to exclude certain opinions of Heather Bates arguing that she is not qualified to testify on technical topics regarding software, computer programming or source code.  (Dkt. No. 443-1 at 6-8.[1])  Plaintiffs respond that Ms. Bates is highly qualified to opine on PBMs to the extent they are implemented by computer software.  (Dkt. No. 475 at 9-13.)  In reply, Defendants do not dispute that Ms. Bates has PBM industry experience but argues she lacks technical source code expertise.  (Dkt. No. 524 at 5.)

Rule 702 requires that an expert possess "knowledge, skill, experience, training, or education" sufficient to "assist" the trier of fact, which is "satisfied where expert testimony advances the trier of fact's understanding to any degree." *Abarca v. Franklin Cnty. Water Dist.*, 761 F. Supp. 2d 1007, 1029-30 (E.D. Cal. 2011) (citations omitted). In applying Rule 702, the Ninth Circuit "contemplates *a broad conception* of expert qualifications." *Hangarter*, 373 F.3d at 1015 (emphasis in original) (quoting *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994)).  Therefore, "[t]he threshold for qualification is low for purposes of admissibility; minimal foundation of knowledge, skill, and experience suffices." *PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*, No. C 10–00544 JW, 2011 WL 5417090, at *4 (N.D. Cal. Oct. 27, 2011) (citing *Hangarter*, 373 F.3d at 1015-16) (25 years working in the insurance industry in general provided "minimal foundation of knowledge, skill, and experience" to qualify as expert in practices and norms of insurance companies in the context of a bad faith claim).  "A

---

[1] Page numbers are based on the CM/ECF pagination.

witness can qualify as an expert through practical experience in a particular field, not just through academic training." *Rogers v. Raymark Indus., Inc*., 922 F.2d 1426, 1429 (9th Cir. 1991).

"Rule 702 is broadly phrased and intended to embrace more than a narrow definition of qualified expert," *Thomas*, 42 F.3d at 1269, and "[g]aps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility," *Abarca,* 761 F. Supp. 2d at 1028 (quoting *Robinson v. GEICO General Ins. Co*., 447 F.3d 1096, 1100 (8th Cir. 2006) (internal quotation marks omitted)).  An expert's lack of specialization affects the weight of his or her testimony and not its admissibility.  *In re Silicone Gel Breast Implants Prods. Liab. Litig*., 318 F. Supp. 2d 879, 889 (C.D. Cal. 2004) (citing *Holbrook v. Lykes Bros. S.S. Co*., 80 F.3d 777, 782 (3d Cir. 1996)); *see also Hangarter*, 373 F.3d at 1015-16 (finding the district court did not abuse its discretion in permitting expert witness with general qualifications in insurance field to testify specifically about bad faith claims); *United States v. Garcia,* 7 F.3d 885, 889 (9th Cir. 1993) ("lack of particularized expertise goes to the weight accorded her testimony, not to the admissibility of her opinion as an expert.").

Heather Bates was retained to inspect and evaluate certain products, services and platforms offered by Dimensions/IQVIA and determine "(1) whether those products compete with those offered by MedImpact and (2) whether the products reflect functionality or development that is derived from or based on MedImpact trade secrets." (Dkt. No. 487, Swedlow Decl., Ex. 1, Bates' Expert Report ¶ 7.)

Ms. Bates has a B.A. in economics.  (*Id*., Bates' Expert Report, App'x 2.)  She is a managing director at Berkeley Research Group, LLC and provides consulting and analytical services to healthcare and life sciences clients.  (*Id*.)  She has been retained by pharmaceutical, biotechnology and medical device manufacturers, pharmacy, DME, physician and outpatient service providers, PBMs and other payors to address compliance issues, litigation, disputes, investigations, and business challenges.  (*Id*.)  She has over 20 years of experience in the healthcare, life sciences and PBM industries.  (*Id*.)  While she

testified that she is not a source code expert, (Dkt. No. 487, Ex. 2, Bates Depo. at 22:6-8 (UNDER SEAL)), she has relevant experience and considers herself an expert in "pharmaceutical supply chain and PBM systems and the software that supports those systems" and has experience and training in healthcare computer software and systems. (*Id.* at 21:1-19.)

Ms. Bates' over twenty years of experience in the PBM industry and software that supports the PBM platform provide a sufficient foundation of knowledge, skill, and experience to qualify as an expert in PBM and software development. *See Hangarter*, 373 F.3d at 1015-16. Any challenges to Ms. Bates' qualification based on her lack of specialization can be made at trial. *See In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 318 F. Supp. 2d at 889. Accordingly, Defendants' argument challenging her qualifications is without merit.[2]

Next, Defendants argue that Plaintiffs cannot assert misappropriation of MedImpact's PBM platform because it can only be misappropriated through source codes. (Dkt. No. 443-1 at 9-10.) In contrast, according to Plaintiffs, source codes were not needed to create AIMS because Dimensions was provided with MedImpact's MedAccess product which provided Dimensions with the building block elements of the claims adjudication platform where it could view all the values within each field and was provided with "unique details, functions, and logic" of the POS adjudication process. (Dkt. No. 475 at 17.) Defendants' argument concerning source codes is not only irrelevant to the issues to be tried but also barred by issue preclusion. The Court already ruled that Defendants are barred from re-litigating the Arbitrator's ruling that "1) MedImpact's trade secrets used to build AIMS are protectible; and 2) AIMS uses

---

[2] In response, Plaintiffs additionally explain that Ms. Bates does not provide an opinion on computer programming or conduct any source code analysis, (Dkt. No. 475 at 12), and this case is not about access to MedImpact's source codes. (Dkt. No. 487, Swedlow Decl., Ex. 1 Bates Expert Report ¶ 107 (UNDER SEAL).) Instead, Ms. Bates opines that Dimensions was given access to the MedAccess tool and modules in MedAccess with insight into the logic of MedImpact's pharmacy claim adjudication process. (*Id.* (UNDER SEAL).)

Plaintiffs' misappropriated trade secrets." (Dkt. No. 432 at 25). The Arbitrator identified five categories of MedImpact's trade secrets that were protectible and misappropriated. (Dkt. No. 506-2, Swedlow Decl., Ex. 2, Partial Final Award on Liability ¶ 151 (UNDER SEAL).) Because the five categories of trade secrets identified by the Arbitrator are the same ones that Plaintiffs assert in this case, these trade secrets are not subject to challenge.

Instead, in prosecuting this case relying on issue preclusion, MedImpact will be required to convince the trier of fact that these five categories of trade secrets identified by the Arbitrator were maintained in Defendants' post-arbitration PBM platforms, or in other words, MedImpact will be required to convince the trier of fact that the AIMS platform and post-Arbitration PBM platforms are essentially the same with, at most colorable differences. *Cf. Hallco Mfg. Co., Inc. v. Foster*, 256 F.3d 1290, 1298 (Fed. Cir. 2001) (remanding patent case for the district court to determine whether the device in the prior action was "essentially the same or only colorably different" than the device in the present case for the application of claim preclusion)*; Tivo v. EchoStar Corp.*, 646 F.3d 869, 882 (Fed. Cir. 2011) (party seeking to enforce injunction must prove newly accused product is not more than colorably different from product found to infringe and actually infringes).

Relatedly, Defendants raise a valid argument concerning the use of the 27-page interrogatory response clarifying or detailing the five categories of trade secrets identified by the Arbitrator. (Dkt. No. 443-1 at 9-10.) While the 27-page interrogatory response may further describe the trade secrets in Plaintiffs' view, Plaintiffs will be confined at trial to evidence based on the findings and sources of information relied upon by the Arbitrator in identifying the trade secrets that were misappropriated in the AIMS platform. As seen in his findings as to the misappropriated trade secrets, the Arbitrator relied on Ms. Bates' report and testimony presented at the arbitration. Thus, Ms. Bates may provide testimony that corresponds to these findings and information. The Court DENIES the motion to exclude Ms. Bates' opinions.

## C.   Motion to Exclude Plaintiffs' Non-Retained Expert Vasudeva Bobba

Defendants move to exclude Vasudeva Bobba's expert opinions because his analysis is not reliable, he relies on improper assumptions, and his statements do not fit the allegations in this case.  (Dkt No. 446-1.)  Plaintiffs disagree contending that his avoided costs methodology is relevant and reliable and the underlying assumptions he applies are not a basis to exclude but are grounds for cross-examination.   (Dkt. No. 478.) Alternatively, even if he is excluded as an expert witness, Mr. Bobba can still testify as a fact witness.  (*Id.*)

Vasudeva Bobba ("Mr. Bobba") is designated as an unretained expert.  He was the Vice President of Application Development at MedImpact Heathcare Systems, Inc. and has twenty-five years of engineering experience which include over 16 years with MedImpact in various software engineering, IT, and leadership roles.  (Dkt No. 489, Swedlow Decl., Ex. 2, Bobba Witness Statement ¶¶ 1, 2 (UNDER SEAL).)  He was "



."  (*Id.* ¶ 3.)  He was the "

."

(*Id.*)

Mr. Bobba states, "[

."

(*Id.* ¶ 4.)

Looking at the 2012-2017 time frame, Mr. Bobba assessed the manpower it would take to build a PBM platform from scratch.  He concluded it would have taken

approximately 81 employees five years to build a PBM and determined it would have cost approximately $████ in research and development costs.  (*Id.* ¶ 6.)  He explained the roles and duties of each person on the team and provides a chart specifying the job title, salary, the number of years needed as well as benefits/payroll taxes and a separate line item for general and administrative ("G&A") costs to arrive at a Total Estimated Costs of $████ ████  (*Id.* at 45.)  Mr. Bobba's Witness Statement is dated January 12, 2019 and is the same witness statement MIL and MI-HK offered in the arbitration.

The Defend Trade Secrets Act ("DTSA") provides that a court may grant injunctive relief, an award of monetary damages, or both.  *See* 18 U.S.C. § 1836(b)(3).  It authorizes three separate measures of damages: (1) "damages for actual loss caused by the misappropriation of the trade secret"; (2) "damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss;" or (3) "in lieu of damages measured by any other methods, the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret."   18 U.S.C. § 1836(b)(3)(B).  An award of actual losses and unjust enrichment are permissible as long as there is no double counting.  *See* 18 U.S.C. § 1836(b)(3)(B).  CUTSA also authorizes three separate measure of damages (1) "[a] complainant may recover damages for the actual loss caused by misappropriation"; (2) "[a] complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss"; (3) [i]f neither damages nor unjust enrichment caused by misappropriation are provable, the court may order payment of a reasonable royalty for no longer than the period of time the use could have been prohibited."  Cal. Civ. Code § 3426.3(a) & (b).  CUTSA also provides that "[i]f willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subdivision (a) or (b)."  *Id.* § 3426.3(c).  CUTSA differs from the DTSA on reasonable royalty as a court may order a reasonable royalty only where "neither actual

damages to the holder of the trade secret nor unjust enrichment to the user is provable." *Ajaxo Inc. v. E\*Trade Fin. Corp.*, 187 Cal. App. 4th 1295, 1308-09 (2010).

Relevant to the *Daubert* motion, Plaintiffs seek unjust enrichment in the form of "avoided costs" as to what it would have taken Defendants to develop a PBM from scratch in the UAE. "Unjust enrichment damages derive from a policy of preventing wrongdoers from keeping ill-gotten gains, and therefore do not require a corresponding loss to the plaintiff." *Syntel Sterling Best Shores Mauritius Ltd v. TriZetto Grp.*, 15 Civ. 211 (LGS), 2021 WL 1553926, at \*6 (S.D.N.Y. Apr. 20, 2021). The Ninth Circuit has not yet ruled on whether avoided costs are available as damages for unjust enrichment under the DTSA[3] but other jurisdictions have recognized that avoided costs of developing a trade secret are recoverable for unjust enrichment under the DTSA and state law counterparts. *Id.* at \*6 (citing cases); *see also* Restatement (Third) of Unfair Competition § 45 cmt. f (1995) ("If the benefit derived by the defendant consists primarily of cost savings, such as when the trade secret is a more efficient method of production, the 'standard of comparison' measure that determines relief based on the savings achieved through the use of the trade secret may be the most appropriate measure of relief.'"); *see also GlobeRanger Corp. v. Software AG United States of Am., Inc.,* 836 F.3d 477, 499 (5th Cir. 2016) ("The costs a plaintiff spent in development . . . can be a proxy for the costs that the defendant saved.").

First, Defendants argue that Mr. Bobba's analysis is not reliable because his statement was created for the purposes of the Arbitration, and he did not provide any objective information about his inputs that could be used to independently verify or assess his opinions. (Dkt. No. 446-1 at 9.) Plaintiffs respond that Defendants do not challenge

---

[3] Plaintiffs' reliance on *Bourns, Inc. v. Raychem Corp.*, 331 F.3d 704, 709 (9th Cir. 2003) to support the proposition that courts routinely approve unjust enrichment damages based on "avoided costs" methodology is not supportive because it addressed the amount defendant saved in development costs as it relates to CUTSA, not the DTSA. In fact, the DTSA was not enacted until May 11, 2016. Defend Trade Secrets Act of 2016, Pub. Law 114-153, 130 Stat 376.

Mr. Bobba's qualifications and do not provide legal authority that an expert's opinion must always be independently verified.  (Dk. No. 478 at 13.)

Reliability of expert testimony can rest on an expert's personal knowledge or experience.  *Kumho Tire Co., Ltd.*, 526 U.S. at 150 ("Engineering testimony rests upon scientific foundations, the reliability of which will be at issue in some cases. . . . In other cases, the relevant reliability concerns may focus upon personal knowledge or experience."); *Hangarter*, 373 F.3d at 1018 (an expert's experience, training and education can provide a sufficient foundation for reliability); *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000) ("The *Daubert* factors (peer review, publication, potential error rate, etc.") simply are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it.").  Further "[a] witness can qualify as an expert through practical experience in a particular field, not just through academic training."  *Rogers*, 922 F.2d at 1429.

Here, Mr. Bobba's expert opinions are based on his over 16 years of experience at MedImpact in software engineering and IT positions as well as being the "████████████ ████████████████████████████████████████████████████████.  (Dkt. No. 489, Swedlow Decl., Ex. 2, Bobba Witness Statement ¶ 3 (UNDER SEAL).)  Based on his personal work experience employed at MedImpact, Mr. Bobba is qualified to opine on how to build a PBM, what resources are needed and the costs involved and his experience provides a basis for reliability of his opinions.

Defendants also argue that Mr. Bobba relies on faulty assumptions about the relevant time period, salary information and the burden rate.  (Dkt. No. 446-1 at 9-11.)  Plaintiffs respond these challenges may be raised on cross-examination and are not a basis to exclude his opinions.  (Dkt. No. 478 at 14-17.)  Defendants do not dispute that avoided costs is a measure of damages under the DTSA and do not challenge Mr. Bobba's method of calculating the costs to develop a PBM from scratch.  Instead, they argue Mr. Bobba relied on improper assumptions on many of the inputs, including the relevant time period, the salary information and the burden rate.  However, improper assumptions are not bases to

exclude expert testimony as they concern the weight of the testimony, not admissibility and may be challenged on cross-examination. *See Shimozono v. May Dept. Stores Co.*, No. 00-04261 WJR, 2002 WL 3437390, at *8 (C.D. Cal. Nov. 20, 2002) (citation omitted) (arguments that an expert relied on unfounded assumptions in forming his opinion go to the weight, not the admissibility, of expert testimony).

Finally, Defendants argue that Mr. Bobba's statement does not fit the allegations of this case because his estimated costs to develop a PBM platform does not include costs for elements and capabilities that Dimensions, itself, developed and does not apportion costs associated with the POS Engine and MedAccess that Plaintiffs claims were misappropriated in this case. (Dkt. No. 446-1 at 11-14.) Plaintiffs contend that this apportionment contention was decided by the Court's issue preclusion ruling that their trade secrets were misappropriated to the full extent captured by Mr. Bobba's technical opinion suggesting that the Court found that the entirety of the PBM platform was misappropriated. (Dkt. No. 478 at 9.)

The Court questions whether Mr. Bobba's analysis on the cost to develop a PBM platform from scratch "fits" the theory of liability in this case which is limited to the five categories of trade secrets identified by the arbitrator. *See Daubert*, 509 U.S. at 591 ("fit" addressed whether the proposed expert testimony is "relevant to the task at hand," or "whether expert testimony proffered in the case is sufficiently tied to the facts of the case"). Plaintiffs skirt the issue by hiding behind the Court's order on issue preclusion. Yet, the Court's ruling did not find that the entirety of the PBM platform was misappropriated and did not address whether Mr. Bobba's statements of the estimated costs to develop a PBM Platform from scratch fit the allegations of trade secret misappropriation in this case.

As articulated above, the Court held that issue preclusion bars Defendants from re-litigating the Arbitrator's ruling that "1) MedImpact's trade secrets used to build AIMS are protectible; and 2) AIMS uses Plaintiffs' misappropriated trade secrets." (Dkt. No. 432 at 25). The Arbitrator identified five categories of MedImpact's trade secret that were protectible and misappropriated. (Dkt. No. 506-2, Swedlow Decl., Ex. 2, Partial Final

Award on Liability ¶ 151 (UNDER SEAL).)  It is only these five categories of trade secrets that are subject to issue preclusion and these five categories of trade secrets are the only ones at issue in this case.  Here, Plaintiffs have not articulated or shown that the identified secrets involving the five categories correspond to a complete PBM platform.  The Arbitrator did not find that the entire PBM platform was a trade secret or that the misappropriated trade secrets made up the entire PBM.  Without that connection, the avoided costs damages opinions would not fit the trade secrets at issue.

Based on the record to date, Mr. Bobba's cost analysis on building a PBM platform from scratch fails to account for the trade secrets that were found to have been misappropriated by the Arbitrator.  By submitting only his witness statement of January 12, 2019, Mr. Bobba clearly did not attempt to account for the arbitrator's findings given that his opinions are the same ones that were offered prior to the arbitrator's decision.  (*See* Dkt. No. 489, Swedlow Decl. Ex. 2 at 35 (UNDER SEAL).)  At his deposition, Mr. Bobba confirmed that since his witness statement of January 2019, he has not gone back to re-evaluate or reconsider his opinions.  (Dkt. No. 489, Swedlow Decl., Ex. 5, Bobba Depo. at 112:6-11 (UNDER SEAL).)

However, because there is an issue on Plaintiffs' theory as to whether the five categories of identified trade secrets constitute the entirety of the PBM platform, and if so whether an avoided costs theory of unjust enrichment can include the cost to build an entire PBM platform from scratch without taking into account the specific trade secrets misappropriated, the Court conditionally DENIES Defendants' motion to exclude the opinions of Mr. Bobba relating to the avoided costs associated with building a PBM platform from scratch subject to further briefing at the motions in limine stage.

**D.    Motion to Exclude Plaintiffs' Damages Expert James Malackowski**

Defendants move to exclude the expert opinions of James Malackowski ("Mr. Malackowski") on trade secret identification for the trade secret misappropriation claim, and the three damages theories based on 1) Plaintiffs' alleged development costs as a proxy for IQVIA's avoided costs, 2) IQVIA's avoided costs to rebuild a PBM from scratch, and

3) a reasonable royalty rate.  (Dkt. No. 440-1 at 7-17.)  They also argue that Mr. Malackowski's breach of fiduciary damages opinions should be excluded concerning disgorgement of revenues relating to the Relevant Platforms and Claims Data.  (*Id.* at 17-21.)  Finally, Defendants argue that the damages on the RICO claims which are predicated on unjust enrichment for trade secret misappropriation and disgorgement for breach of fiduciary duty should also be excluded.  (*Id.* at 29.)

Plaintiffs respond that the Court's recent summary judgment ruling moots Defendants' argument on the disconnect between proof of the misappropriated trade secrets and his damages opinion because the Court concluded that identification and proof of misappropriation have been established.  (Dkt. No. 481 at 11.)  In addition, they assert that Defendants conflate liability with damages.  (*Id.*)  Second, Plaintiffs argue that the breach of fiduciary duty opinions should not be excluded because Cayman law provides for equitable compensation.  (*Id.* at 28.)  Finally, on RICO, Plaintiffs argue they are seeking treble damages under RICO for Defendants' wrongful conduct predicated on establishing liability against defendants on misappropriation of trade secret and breach of fiduciary duties.  (*Id.* at 29.)

As an initial matter, because the Court granted Defendants' summary judgment motion on the RICO cause of action, the Court DENIES Defendants' motion to exclude Mr. Malackowski's opinions on RICO damages as MOOT.

Mr. Malackowski was retained to analyze and determine the measure and amount of monetary recovery from Plaintiffs' claims against Defendants for trade secret misappropriation under the DTSA and CUTSA, breach of fiduciary duty, conspiracy and RICO.  (Dkt. No. 485-17, Swedlow Decl., Ex. 17 at 6 (UNDER SEAL).)  On misappropriation of trade secrets, he measured IQVIA's unjust enrichment based upon ███████████████████████████████████████████████████████████ as a proxy for IQVIA's unjust enrichment.  (*Id.* § 3.1 (UNDER SEAL).) Relying on Mr. Bobba's analysis, Mr. Malackowski opined that ███████████ ████████████████████████████████████████.  (*Id.* (UNDER SEAL).)  He

concluded that ███████████████████████████████████████████
██████████████ (*Id.* (UNDER SEAL).)  Therefore, IQVIA's range of unjust enrichment would be between $███████████████████████. (*Id.* (UNDER SEAL).)

On reasonable royalty, Mr. Malackowski considered a hypothetical negotiation between MedImpact and IQVIA, where MedImpact would license the Asserted Trade Secrets[4] to IQVIA.  The R&D costs to develop the trade secrets of $████████ and relying on the 50/50 sharing agreed upon for joint venture profits under the joint venture agreement, Mr. Malackowski opined that the parties would have agreed to a lump sum reasonable royalty of $████████ (*Id.* (UNDER SEAL).)  Because MedImpact was awarded ████████ in damages on certain contracts in the Arbitration, Mr. Malackowski deducted the damages award from the lump sum reasonable royalty for a reasonable royalty award of $████████ (*Id.* (UNDER SEAL).)  Mr. Malackowski also assessed monetary recovery for breach of fiduciary duty based on disgorgement of profits.  *(Id.* § 3.2 (UNDER SEAL).)

### 1.    Mr. Malackowski's Trade Secret Opinions

Defendants argue that Mr. Malackowski's opinion relying on Plaintiffs' identification of trade secrets in their 27 pages in interrogatory responses is not co-extensive with the broad trade secret identification of Heather Bates.  (Dkt. No. 440-1 at 7-13.)  Plaintiffs contend the Court's ruling on issue preclusion disposes of these arguments.  (Dkt. No. 481 at 11-12.)

The Court's ruling on issue preclusion has not disposed of Defendants' arguments regarding the calculation of damages.  As discussed above concerning the opinions of Heather Bates, MedImpact will be required to convince the trier of fact that the AIMS platform and post-Arbitration PBM platforms are essentially the same with at most colorable differences.  *See Foster*, 947 F.2d at 479-80.

---

[4] (Dkt. No. 485-17, Swedlow Decl., Ex. 17 § 7 (UNDER SEAL).)

Here, Mr. Malackowski has formulated opinions relating to damages that are premised upon "trade secrets, as outlined in Plaintiff's Objections and Amended Further Response to Defendant IQVIA Inc.'s Interrogatories No. 1". (Dkt. No. 485-17, Swedlow Decl., Ex. 17, Malackowski Expert Report §§ 7.1 *et seq*. (UNDER SEAL)).   Neither Ms. Bates nor Mr. Malackowski will be permitted to base their opinions upon the interrogatory responses.   As stated above, the Amended Further Response does not define the trade secrets here, it is the Arbitrator's findings and supporting information.   Any opinions regarding damages must be predicated upon the Arbitrator's findings.

Next, Defendants challenge Mr. Malackowski's reliance on ███████████ ███████████████████ assessed by Kelley Vaughan, a MedImpact employee, and ██████ █████████████ by Mr. Bobba, also a MedImpact employee, because he did not apportion out ████████████████████████████████████ for developing a competing PBM with the trade secrets at issue in this case.   (Dkt. No. 440-1 at 23-24.) Instead, he adopted wholesale Ms. Vaughan's and Mr. Bobba's calculations and assessments.   Defendants additionally argue that Mr. Malackowski improperly opined on damages on the entire categories of trade secrets, such as the entirety of the POS engine and MedAccess where the evidence shows the contrary.   (*Id*. at 24.)

As discussed above, because Mr. Malackowski adopted Mr. Bobba's ████████ ████████████████████ without any adjustments to account for the five identified categories of trade secrets at issue in this case, the Court questions the "fit" between his avoided costs damages opinions and the trade secrets at issue in this case. (Dkt. No. 485-17, Swedlow Decl., Ex. 17, Malackowski Expert Report § 12.1 (relying solely on Bobba's witness statement and discussions with Mr. Bobba) (UNDER SEAL).)

Similarly, Mr. Malackowski adopted Ms. Vaughan's calculations without adjusting her calculations to account for the trade secrets at issue in this case and adopted her calculation of ████████ to be ██████████████████████████.   (Dkt. No. 485-17, Swedlow Decl., Ex. 17, Malackowski Expert Report § 12.2; *id.,* Figure 35 (UNDER SEAL).)   Ms. Vaughan testified that she had never seen Plaintiffs' trade secret

identification ███████████████████████████████████. (Dkt. No. 485-18, Swedlow Decl., Ex. 18, Vaughan Depo. at 57:3-16 (UNDER SEAL).) ███

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████. (*Id.* at 28:21-30:3 (UNDER SEAL).)  In fact, ███████

███████████████████████████████████████████████

██████████. (*Id.* at 30:4-7 (UNDER SEAL).)



At this time, as with the opinions of Mr. Bobba, because Plaintiffs' theory as to whether the five categories of identified trade secrets constitute the entirety of the PBM platform, and if so whether an avoided costs theory of unjust enrichment can include the cost to build an entire PBM platform from scratch without taking into account the specific trade secret misappropriated, the Court conditionally DENIES Defendants' motion to exclude Mr. Malackowski's damages opinions on trade secret misappropriation based on ███████████████████████████████████████ subject to further briefing at the motions in limine stage.

Finally, on the alternative reasonable royalty rate, Defendants submit that "[h]alf of a fatally flawed number is obviously no more reliable than the original." (Dkt. No. 440-1 at 17.  Defendants argue that the royalty Mr. Malackowski calculated is not reasonable because it exceeds the total revenue that he claims that IQVIA allegedly gained from the misappropriation by over 60%. (*Id.* at 27.)  Plaintiffs disagree. (Dkt. No. 481 at 25.)

The DTSA allows for the reasonable royalty as an alternative form of relief.  *See* 18 U.S.C. § 1836(b)(3)(B)(iii) ("in lieu of damages measured by any other methods, the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret.").  CUTSA only allows a reasonable royalty rate if damages and unjust enrichment caused by misappropriation are not provable.  *See* Cal. Civ. Code § 3426.3(a) & (b).  Because caselaw addressing calculation of reasonable royalty under the DTSA is limited,

courts have adopted the reasonable royalty rates in intellectual property cases.   *See Motorola Sols,, Inc. v. Hytera Commc'ns Corp. Ltd.,* Case No. 1:17-cv-01973, 2021 WL 6690279, at *2 (N.D. Ill. Dec. 14, 2021) (citing *Bianco v. Globus Med., Inc*., 53 F. Supp. 3d 929, 932 (E.D. Tex. 2014) (adopting patent law analysis for reasonable royalty on state law trade secret misappropriation claim); *RKI, Inc. v. Grimes,* 200 F. Supp. 2d 916, 926-27 (N.D. Ill. 2002) (*same*)).   While there are several methods to calculate reasonable royalty, at issue in this case, and the most common, is the hypothetical negotiations or the "willing licensor-willing licensee" method.   *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).   This method "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began."   *Id.*   Because this method involves "an element of approximation and uncertainty," *id.* at 1325, "a trier of fact must have some factual basis for a determination of reasonable of a reasonable royalty."   *Unisplay S.A. v. American Elec. Sign Co., Inc.,* 69 F.3d 512, 517 (Fed. Cir. 1995).

One Fifth Circuit case identified salient factors to assess a reasonable royalty in a trade secret misappropriation case:

> In calculating what a fair licensing price would have been had the parties agreed, the trier of fact should consider such factors as the resulting and foreseeable changes in the parties' competitive posture; that prices past purchasers or licensees may have paid; the total value of the secret to the plaintiff, including the plaintiff's development costs and the importance of the secret to the plaintiff's business; the nature and extent of the use the defendant intended for the secret; and finally whatever other unique factors in the particular case which might have affected the parties' agreement, such as the ready availability of alternative processes.

*Univ. Computing Co. v. Lykes-Youngstown Corp*., 504 F.2d 518, 539 (5th Cir. 1974) (citing *Hughes Tool Co. v. G.W. Murphy Indus., Inc*., 491 F.2d 923, 931 (5th Cir. 1973).

Mr. Malackowski conducted a detailed analysis of an alternative reasonable royalty measure of damages analyzing the factors articulated in *Univ. Computing Co*.   (Dkt. No. 485-17, Swedlow Decl., Ex. 17, Malackowski Expert Report §§ 13, 14 (UNDER SEAL).)

18

After considering these factors, he concluded that the parties would have agreed to a reasonable lump-sum royalty of ███████ relying on Ms. Vaughan's calculation of $██ million to be the cost of ████████████████████. (*Id.* § 14.5.)  He concluded that because a hypothetical negotiation would have considered splitting the benefits of the trade secrets by 50/50 due to the JV where the parties agreed to split the profits equally, Mr. Malackowski concluded that █████████████████████████████████ █████████

Because Plaintiffs' theory as to whether the five categories of identified trade secrets constitute the entirety of the PBM platform, and if so, whether an avoided costs theory of unjust enrichment can include the cost to build an entire PBM platform from scratch without taking into account the specific trade secrets misappropriated remain, the Court conditionally DENIES Defendants' motion to exclude Mr. Malackowski's damages opinions on reasonable royalties subject to further briefing at the motions in limine stage.

### 2.    Mr. Malackowski's Breach of Fiduciary Opinions

Defendants argue that because the breach of fiduciary duty claim is only against the individual Defendants, IQVIA Defendants' revenues, as damages, in connection with the breach of fiduciary duty cannot apply.  (Dkt. No. 440-1 at 27 (citing *Liu v. Sec. & Exchange Comm'n*, 140 S. Ct. 1936, 1949 (2020).)  Plaintiffs do not address this argument; however, in opposition to Defendants' omnibus motion for summary judgment, Plaintiffs argue that under *Liu*, disgorgement can apply "for partners engaged in concerted wrongdoing."  (Dkt. No. 472 at 36.)

In *Liu*, an SEC agency action, the Supreme Court expressed concern of the SEC's request to "impose disgorgement liability on a wrongdoer for benefits that accrue to his affiliates, sometimes through joint-and-several liability, in a manner sometimes seemingly at odds with the common-law rule requiring individual liability for wrongful profits" as "it runs against the rule to not impose joint liability in favor of holding defendants 'liable to account for such profits only as have accrued to themselves . . . and not for those which have accrued to another, and in which they have no participation.'"  *Liu*, 140 S. Ct. at 1949.

However, the Court recognized that common law "permit[ed] liability for partners engaged in concerted wrongdoing." *Id.* Therefore, liability for partners depends on the facts of the case, and the court must consider "whether the facts are such that [defendants] can, consistent with equitable principles, be found liable for profits as partners in wrongdoing or whether individual liability is required." *Id.*

Here, *Liu* does not automatically bar damages against Dr. Ghosheh based on IQVIA Defendants' revenues. In this case, Plaintiffs allege that Dr. Ghosheh was engaged in wrongdoing with IQVIA Defendants by selling a competing product CDS in breach of his fiduciary duty. Thus, Defendants' argument relying on *Liu* is not supportive of their motion to exclude.

Next, Defendants maintain that the disgorgement of profits damages fail because Defendants did not receive any revenue for the "Relevant Platforms[5]" which include CDS, as to the BUPA Arabia, Injazat, EHSI, Sehati and Infoline contracts, incurred losses on the Vodafone and Infoline contracts, and Plaintiffs were already compensated on the Cerner, Nahdi, Oman, Al-Dawaa and Innova contracts in the Arbitration. (Dkt. No. 440-1 at 28.) In response, Plaintiffs rely on Cayman law arguing that it provides for equitable compensation for loss caused to the principal by the breach of fiduciary duty which Plaintiffs' claim is what "drove Malackowski's opinion." (Dkt. No. at 481 at 28.) They argue that Mr. Malackowski's opinion is not based on Defendants' profits but what amounts "Plaintiffs would have expected to benefit had it secured the relevant contracts, which includes the (very real) possibility that MedImpact may have performed those contracts better than IQVIA, which would have yielded increased benefits." (*Id.*) Therefore, Plaintiffs maintain that Defendants' argument that no profits were generated on these contracts is irrelevant. (*Id.* n. 16.) In reply, Defendants argue that Mr. Malackowski's report addresses disgorgement of Defendants' profits under California law, and now,

---

[5] Mr. Malackowski defined "Relevant Platforms" to include "AIMS, CDS, and ICM." (Dkt. No. 485-17, Swedlow Decl., Ex. 17, Malackowski Expert Report § 3.1 (UNDER SEAL).)

Plaintiffs are seeking their lost profits and improperly relying on Cayman law recognizing they cannot recover under a disgorgement of profits theory. (Dkt. No. 527 at 13.)  Because Mr. Malackowski's report fails to explain the shift from Defendants' alleged gains to Plaintiffs' alleged losses, his opinions on fiduciary duty damages should be excluded. (*Id*.)

In the order on Defendants' omnibus summary judgment motion, the Court concluded that under California's conflict of law principles, the internal affairs doctrine applies to the breach of fiduciary duty claim.  But California courts have recognized a limited exception to the application of the internal affairs doctrine. *See Lidow v. Superior Ct.*, 206 Cal. App. 4th 351 359 (2012) (limited exception "where, with respect to the particular, issue, some other state has a more significant relationship . . . to the parties and the transaction").  Because no argument or legal analyses had been conducted by the parties to determine which law applies, the Court, in the summary judgment order, denied the motion for summary judgment on the breach of fiduciary duty claim.  At this juncture, because it has not yet been determined whether Cayman or California law applies, the Court DENIES the motion to exclude Mr. Malackowski's expert opinions on breach of fiduciary duty damages.

## Conclusion

Based on the above, the Court DENIES Defendants' motion to exclude the expert opinions of Heather Bates.  In addition, the Court conditionally DENIES the motion to exclude the opinions of non-retained expert Vasudeva Bobba and conditionally DENIES Defendants' motion to exclude the expert opinions of James Malackowski subject to further briefing at the motions in limine stage.

IT IS SO ORDERED.

Dated:  October 7, 2022

Hon. Gonzalo P. Curiel
United States District Judge

19cv1865-GPC(DEB)