UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDIMPACT HEALTHCARE SYSTEMS, INC., et al.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>IQVIA INC., et al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 19-cv-1865-GPC-DEB<br><br>**ORDER:**<br><br>**(1) DENYING DEFENDANTS' MOTION TO MODIFY PROTECTIVE ORDER;**<br><br>**(2) GRANTING DEFENDANTS' EX PARTE MOTION FOR LEAVE TO FILE REPLY IN SUPPORT OF MOTION TO MODIFY PROTECTIVE ORDER; AND**<br><br>**(3) GRANTING THE PARTIES' MOTIONS TO FILE DOCUMENTS UNDER SEAL**<br><br>**[DKT. NOS. 606, 608, 615, 619, 621, 622]** |

## I. INTRODUCTION

Before the Court is: (1) Defendants' Motion to Modify Protective Order ("Motion") (Dkt. Nos. 607, 608); (2) Defendants' Ex Parte Motion and Motion for Leave to File Reply (Dkt. Nos. 620, 621); and (3) the parties' Motions to File Documents Under Seal (Dkt. Nos. 606, 615, 619, 622). Defendants' Motion seeks to amend the Court's Protective Order so in-house attorney Adam Shanti can review materials designated "Outside Counsel and Court Approved In-House Counsel Only." Dkt. Nos. 607, 608. Plaintiffs oppose the Motion (Dkt. Nos. 616, 617) and Defendants have replied. Dkt. Nos. 620, 621.[1] For the following reasons, the Court DENIES Defendants' Motion.

## II. BACKGROUND

The Court's Protective Order permits the parties to designate certain discovery as viewable by "Outside Counsel and Court Approved In-House Counsel Only." Dkt. No. 179. In a separate Order, and over Plaintiff's objection, the Court allowed three members of IQVIA's in-house legal department to have access to the discovery so designated: Maureen Nakly, Laura Kibbe, and Lisa Katz. Dkt. No. 173 at 6.[2] The Court ruled that Harvey Ashman, IQVIA's Senior Vice President and Deputy General Counsel, could not receive this information because his "duties involve at least some of the decision-making described in [*Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992)]." *Id.* at 5–6.

Adam Shanti is in-house counsel for Dimensions Healthcare LLC ("Dimensions") and advises the IQVIA AMESA Payer-Provider Group. Dkt. No. 608-2, ¶ 2. He attended every day of the arbitration between Dimensions and MedImpact that preceded this case.

---

[1] The Court GRANTS Defendants' Ex Parte Motion for Leave to File Reply. Dkt. Nos. 621, 621-2.

[2] When referencing page numbers for documents filed with the Court, the Court's citation refers to the page numbers assigned by the Court's CM-ECF system.

*Id.* ¶ 11. Although Mr. Shanti claims there "were no restrictions on . . . [his] access to materials produced or submitted in connection with the arbitration, including discovery and the expert reports," *id.* ¶ 12, a "Short Form Confidentiality Agreement" between Dimension and MedImpact expressly stated "Mr. Adam Shanti shall not be provided with Confidential Information." Dkt. No. 617-2, ¶¶ 5, 8.[3]

In this case, Defendants initially sought to have Mr. Shanti included on the list of in-house counsel approved to review materials designated as "Outside Counsel and Court Approved In-House Counsel Only" but withdrew that request without prejudice after MedImpact objected. Dkt. No. 153 at 9 n.3.

Defendants now move to amend the Protective Order to allow Mr. Shanti to have access to this discovery. Defendants claim Mr. Shanti is not involved in competitive decision-making, and they need to consult with him because, among other things, he is the sole remaining member of Dimensions' legal department who attended the previous arbitration between Dimensions and MedImpact involving the same alleged trade secrets at issue here. Dkt. No. 607 at 6. Plaintiffs oppose the Motion, arguing Mr. Shanti is a competitive decision-maker for Dimensions, the same entity previously found to have misappropriated Plaintiffs' trade secrets. Dkt. No. 617 at 10.

### III.   LEGAL STANDARDS

"Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *GXP Capital, LLC v. Argonaut EMS*, No. 17-cv-2283-GPC-BLM, 2018 U.S. Dist. LEXIS 102581, at *7 (S.D. Cal. June 19, 2018) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). To resolve disputes over protective orders that "distinguish[] between outside and in-house counsel," courts balance the conflicting interests of the parties involved. *Brown Bag*, 960 F.2d at 1470. Specifically, the Court must balance the risk of inadvertent disclosure of the

---

[3] "Confidential Information" is a defined term in in the Short Term Confidentiality Agreement. The definition, however, is not material to the Court's ruling here.

producing party's confidential information against the risk that restricting access to confidential information might impair the requesting party's ability to litigate the case. *Kaseberg v. Conaco*, No. 15-cv-01637-JLS-DHB, 2016 WL 3997600, at *13 (S.D. Cal. July 26, 2016).

In striking this balance, courts must "examine factually all the risks and safeguards surrounding inadvertent disclosure by *any* counsel, whether in-house or retained." *Brown Bag*, 960 F.2d at 1470 (emphasis in original). A "crucial factor . . . [is] whether in-house counsel was involved in competitive decisionmaking; that is, advising on decisions about pricing or design made in light of similar or corresponding information about a competitor." *Id.* (quoting *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984)) (internal quotations omitted).

### IV. DISCUSSION

Upon balancing the competing interests here, the Court concludes the risk of inadvertent disclosure of MedImpact's trade secrets outweighs any risk of impairing IQVIA's defense of this case.

The evidence before the Court establishes Mr. Shanti is involved in competitive decision-making. Mr. Shanti's LinkedIn profile describes him as "Head of Legal, Acquisitions, and Corporate Communications – Dimensions Healthcare," where he "[l]ead[s] the transaction lifecycle (due diligence, structuring, negotiation, execution, and integration) of multiple technology and informatics companies across Africa, the Middle East, and Southeast Asia to expand into new markets, gain new capabilities, and secure market strength." Dkt. No. 617-3 at 4.

Defendants previously stated Mr. Shanti has "over 15 years of management, financial, and legal experience with a focus on structuring transactions to establish new ventures." Dkt. No. 616-5 at 3. Additionally, Defendants listed Mr. Shanti as a senior consultant for IQVIA's "Business Development" group (Dkt. No. 616-6) and a member of the bid team for IQVIA's Egypt project (Dkt. No. 616 at 4).

This evidence establishes Mr. Shanti is involved in competitive decision-making for Dimensions and IQVIA, including on the same Egypt project that is part of Plaintiff's misappropriation claim in this case. This conclusion is also supported by Dimensions' prior agreement barring Mr. Shanti from receiving certain "Confidential Information" generated during the Dimensions/MedImpact arbitration that preceded this case. The Court, therefore, finds Mr. Shanti is a competitive decision-maker, which weighs against him having access to MedImpact's trade secrets and confidential information. *Brown Bag*, 960 F.2d at 1471 (finding in-house counsel "responsible for advising his employer on a gamut of legal issues, including contracts, marketing, and employment" was a competitive decision-maker).

The Court next evaluates the prejudice to Defendants if Mr. Shanti is denied access to materials labeled "Outside Counsel and Court Approved In-House Counsel Only" and finds it does not outweigh the risk of prejudice to MedImpact. The Court has previously authorized (over Plaintiffs' objection) three members of IQVIA's in-house legal department to receive and review materials designated "Outside Counsel and Court Approved In-House Counsel Only." Dkt. No. 173. In addition to these individuals, IQVIA's outside counsel and technical experts (all of whom have substantial expertise and experience in the subject matter of this lawsuit) have access to all "Outside Counsel and Court Approved In-House Counsel Only" materials produced by MedImpact. By contrast, Mr. Shanti has no technical expertise relevant to this case. Dkt. No. 608-2, ¶ 9.

The Court also observes that Mr. Shanti can provide much of the assistance Defendants claim they need from him without accessing materials designated as "Outside Counsel and Court Approved In-House Counsel Only." For example, there is no apparent reason why Mr. Shanti needs access to these materials to share his knowledge of the "business and documents at issue, and . . . the role of and [his] relationships with witnesses." Dkt. No. 607 at 12. Nor is there any apparent reason why Mr. Shanti cannot share his extensive "institutional knowledge" with outside counsel, including his

observations and recollections from attending the prior arbitration between Dimensions and MedImpact. *Id.*

In sum, the Court finds the risk of inadvertent disclosure of MedImpact's trade secrets and confidential information to one of Dimensions and IQVIA's competitive decision-makers outweighs any prejudice to Defendants in not granting Mr. Shanti access to this sensitive discovery. The Court, therefore, DENIES Defendants' Motion to Modify Protective Order.

## V.     MOTIONS TO SEAL

Each party filed motions to seal documents. Dkt. Nos. 606, 615, 619, 622. Defendants request the Court seal documents lodged at Dkt. Nos. 607 and 620 (portions of Defendants' Motion to Modify Protective Order, Defendants' Motion for Leave to File Reply, and certain exhibits) because they include an arbitration award and communications and other sensitive technical and business information that must remain confidential. *See* Dkt. Nos. 606 at 3, 619 at 3. Plaintiffs request the Court seal the documents lodged at Dkt. Nos. 616 and 623 (portions of Plaintiffs' Opposition to Motion to Modify Protective Order, Opposition to Motion for Leave to File Reply, and certain exhibits) for similar reasons. *See* Dkt. Nos. 615 at 3, 622 at 3. Both parties filed redacted pleadings that omit the information in question.

Good cause appearing, the Court GRANTS the Motions to File Under Seal and directs the Clerk of Court to file the documents lodged at Dkt. Nos. 607, 616, 620, and 623 under seal. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006) ("[A] particularized showing under the 'good cause' standard of Rule 26(c) will suffice to warrant preserving the secrecy of sealed discovery material attached to non-dispositive motions.") (internal quotations, citations, and edits omitted).

## VI.    CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' Motion to Modify Protective Order, GRANTS Defendants' Motion for Leave to File Reply, and GRANTS

the parties' Motions to File Under Seal.

**IT IS SO ORDERED**.

Dated:  November 16, 2022

_____

Honorable Daniel E. Butcher
United States Magistrate Judge