1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17
18
19
20
21
22

MEDIMPACT HEALTHCARE
SYSTEMS, INC., a California
corporation, MEDIMPACT
INTERNATIONAL LLC, a California
limited liability company, MEDIMPACT
INTERNATIONAL HONG KONG LTD.,
a Hong Kong company,

                                        Plaintiffs,

v.

IQVIA INC., a Delaware corporation,
IQVIA LTD., a United Kingdom
company; IQVIA AG, a Swiss company,
OMAR GHOSHEH, individually, and
AMIT SADANA, individually,

                                        Defendants.

Case No.:  19cv1865-GPC(DEB)

**ORDER RE SUPPLEMENTAL
BRIEFING ON BREACH OF
FIDUCIARY DUTY AND
CONSPIRACY**

**[Dkt. Nos. 666, 669.]**

23
24
25
26
27
28

        Before the Court are the parties' supplemental briefings on the breach of fiduciary duty and conspiracy causes of action filed on December 2, 2022 in connection with Defendants' motion for summary judgment.  (Dkt. Nos. 666, 669.)  The parties filed responses on December 9, 2022.  (Dkt. Nos. 689, 690.)  Without leave of Court, Plaintiffs

filed a notice of additional evidence the day before the hearing.[1]  (Dkt. No. 699.)  On December 16, 2022, the Court held a hearing.  (Dkt. No. 701.)  After hearing oral argument and considering the supplemental briefs and the applicable law, the Court applies California law on the breach of fiduciary duty and conspiracy claims and GRANTS Defendants' motion for summary judgment on the breach of fiduciary duty claim based on trade secret misappropriation as it relates to AIMS as unopposed and DENIES summary judgment on the remaining allegations on the breach of fiduciary duty cause of action and DENIES summary judgment on the conspiracy claim.

### Procedural Background

Trial in this case is set on February 21, 2022.  The remaining causes of action brought by Plaintiffs[2] are the trade secret misappropriation claims against Defendants IQVIA AG and Omar Ghosheh ("Dr. Ghosheh") (collectively "Defendants" or "IQVIA") under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, and California Uniform Trade Secrets Act ("CUTSA"), Cal. Civil Code § 3426.1(b), and breach of fiduciary duty and conspiracy claims against Dr. Ghosheh.  (*See* Dkt. No. 625.)  On October 7, 2022, the Court denied summary judgment on the breach of fiduciary duty and conspiracy claims because neither party engaged in any analysis required to resolve the conflict of law principle of California's internal affairs doctrine and which law ultimately applies on these claims.  (*Id.* at 43-44.[3])

A pretrial conference was held on November 18, 2022.  (Dkt. Nos. 661, 662.)  At the conference, the Court directed the parties to file supplemental briefs on whether or not Cayman Island law ("Cayman law") or California law applies on the breach of fiduciary duty and conspiracy causes of action, and in the event that California law

---

[1] At the hearing, Defendants were allowed to respond to the contents of the additional evidence.  (Dkt. No. 701.)

[2] Plaintiffs are Medimpact Healthcare Systems, Inc. ("MHSI"), Medimpact International LLC ("MIL"), and MedImpact International Hong Kong Ltd. ("MI-HK") (collectively "Plaintiffs" or "MedImpact").

[3] Page numbers are based on the CM/ECF pagination.

applies, whether the causes of actions are preempted by CUTSA.  (Dkt. No. 662 at 4-5.)  Per the Court's direction, the parties simultaneously filed their supplemental briefs on the same date and simultaneously filed their responses.[4]  (Dkt. Nos. 666, 669, 689, 690.)

**Factual Background[5]**

Plaintiffs provides pharmacy benefit management ("PBM") services to its clients, and partners with health plans, third party administrators, self-funded employers and governments.  (Dkt. No. 510, Bennett Decl., Ex. 1, Partial Final Award on Liability ("Partial Final Award") ¶ 69 (UNDER SEAL).)  Its PBM platform "allows patients and dispensing pharmacies to obtain insurance approvals for prescribed medicines" by providing online real-time insurance coverage.  (*Id.*)  Non-party "Dimensions is a leading provider in the Middle East of healthcare software, information analytics and related services, and end-to-end technology solutions . . . [and] has broad capabilities across all types of claims and authorizations . . . and works with thousands of healthcare providers and payers in the Middle East."  (*Id.* ¶ 70 (UNDER SEAL).)  Defendant IQVIA AG acquired Dimensions in February 2016.  (Dkt. No. 545, Ds' Reply to SSUF, No. 92 (UNDER SEAL).)[6]

---

[4] As noted by Defendants, the Court limited briefing on which law applies on the breach of fiduciary duty and conspiracy claims, and preemption, if relevant.  (Dkt. No. 662 at 4-5.)  Contrary to the Court's direction, Plaintiffs additionally argue that the Court should apply issue preclusion that AIMS and CDS compete with MedImpact's PBM and should exclude Dr. Navarro's opinion that AIMS is not a PBM.  (Dkt. No. 666 at 13-15.)  The Court flatly declines to addresses these additional arguments raised by Plaintiffs as they go beyond what was ordered by the Court.  Moreover, again noted by Defendants and recognized by the Court, Plaintiffs wholly failed to address the relevant Rule 44.1 analysis in their opening brief depriving Defendants of the opportunity to respond to them.  Instead, Plaintiffs briefed issues that were not relevant or ordered by the Court.

[5] This case has an extensive factual history and the Court only recounts the undisputed facts presented in its order on summary judgment as well as allegations in the FAC as they relate to the breach of fiduciary duty and conspiracy claims.  (*See* Dkt. No. 625.)

[6] The Court has informed Defendants that the publicly redacted version of all the exhibits attached to their reply to the omnibus motion for summary judgment have not been filed.  (Dkt. Nos. 530, 545.)  In order to have a complete record, the Court DIRECTS Defendants to correct this docketing error as soon as possible.

On February 1, 2012, non-party Dimensions and Plaintiff MIL entered into a Joint Venture Agreement ("JVA") creating MedImpact Arabia Limited ("MIA") which was incorporated under the laws of the Cayman Islands.  (*Id.*, Nos. 85, 215 (UNDER SEAL).)  On June 28, 2013, MIL assigned its rights and interest in the JVA to Plaintiff MI-HK.  (*Id.*, No. 83 (UNDER SEAL).)  Plaintiff MIL is incorporated in California and Plaintiff MI-HK is incorporated in Hong Kong.  (*Id.*, Nos. 87, 88 (UNDER SEAL).)

MI-HK and Dimensions were the only two shareholders in the JV and each owned a 50% interest.  (Dkt. No. 93, FAC ¶¶ 11, 74.)  The three Board of Directors of MIA were Defendant Dr. Ghosheh, the now dismissed Defendant Amit Sadana, and Dale Brown of MIL.  (*Id.* ¶ 74; Dkt. No. 545, Ds' Reply to SSUF, No. 94 (UNDER SEAL).)  Defendant Dr. Ghosheh was a co-founder of Dimensions.  (Dkt. No. 545, Ds' Reply to SSUF, No. 216 (UNDER SEAL).)

According to Plaintiffs, beginning in 2015 and at least to late 2017, Dimensions secretly developed AIMS, a competing platform similar to MedImpact's PBM, using Medimpact's trade secret and confidential information.  They claim that IQVIA AG and Dimensions stole a number of joint venture clients by offering AIMS to replace the PBM platform.  Once Defendants successfully developed and sold AIMS, Dimensions terminated the JVA on July 23, 2017.

On the breach of fiduciary duty cause of action, Plaintiffs allege that Dr. Ghosheh owed fiduciary obligations and duties of loyalty to act in the best interest of the JV and to MI-HK, as a shareholder.  Under the JVA, Dr. Ghosheh was required to promptly disclose to the company of any business opportunity in the Territory offered or made available to a shareholder.  (Dkt. No. 93, FAC ¶ 109.)  Dr. Ghosheh allegedly breached his fiduciary obligations and duties of loyalty "by secretly creating opportunities for personal gain and diverting those opportunities to Dimensions and IQVIA, including concealing the purpose behind [the] . . . acquisition of Dimensions, misrepresenting the AIMS platform as not PBM, stealing the JV's existing clients, and assisting IQVIA in selling the pharmaceutical data MedImpact processed for the JV."  (*Id.* ¶ 110.)

The conspiracy claim alleges that "IQVIA Defendants, Dimensions, Dr. Ghoseh and Mr. Sadana conspired and agreed to acquire Dimensions, gain access to an immense repository of pharmaceutical data, to develop and sell ICM and AIMS, compete against MIA's and MIHS' PBM platform, enter into the PBM market without MedImpact, and sell the pharmaceutical data obtained from MedImpact's PBM." (*Id.* ¶ 154.)

Because the issue of which law applies to the breach of fiduciary duty and conspiracy causes of action is a question of law, *see Gen. Signal Corp. v. MCI Telecomm. Corp.*, 66 F.3d 1500, 1505-06 (9th Cir. 1995), the Court directed the parties to file supplemental briefs on Defendants' motion for summary judgment in advance of the trial date.

## Discussion

### A. Legal Standard on Motion for Summary Judgment

Federal Rule of Civil Procedure ("Rule") 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp.,* 477 U.S. at 323. The moving party can satisfy its burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court

1   need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398

2   U.S. 144, 159-60 (1970).

3        Once the moving party has satisfied this burden, the nonmoving party cannot rest

4   on the mere allegations or denials of his pleading, but must "go beyond the pleadings and

5   by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions

6   on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,*

7   477 U.S. at 324.  If the non-moving party fails to make a sufficient showing of an

8   element of its case, the moving party is entitled to judgment as a matter of law.  *Id.* at

9   325.  "Where the record taken as a whole could not lead a rational trier of fact to find for

10  the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v.*

11  *Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In making this determination, the court

12  must "view[] the evidence in the light most favorable to the nonmoving party." *Fontana*

13  *v. Haskin,* 262 F.3d 871, 876 (9th Cir. 2001).  The Court does not engage in credibility

14  determinations, weighing of evidence, or drawing of legitimate inferences from the facts;

15  these functions are for the trier of fact.  *Anderson*, 477 U.S. at 255.

16  **B.    Breach of Fiduciary Duty as to Dr. Ghosheh**

17       **1.    California's Internal Affairs Doctrine**

18       Defendants argue that California law governs the breach of fiduciary duty claim

19  because Plaintiffs waived the application of Cayman law under Rule 44.1, and even if

20  they did not waive it, California still applies because the exception to the internal affairs

21  doctrine controls.[7]  (Dkt. No. 669 at 9-17.)  Plaintiffs maintain that Cayman law applies

22

23  _____

24  [7] At summary judgment, Defendants argued that the breach of fiduciary duty claim is preempted by
    CUTSA, and even if not, it fails as a matter of law for lack of damages.  (Dkt. No. 453-1 at 49, 52.)  In
25  response, Plaintiffs argued that CUTSA preemption was not applicable, and even if it did apply,
    preemption does not apply to the CDS claims, a competing claim, not a misappropriated claim.  (Dkt.
26  No. 472 at 33-34.)  In reply, Defendants generally argued that Plaintiffs waived the application of
    Cayman law because it was raised late and Plaintiffs relied on California law at the motion to dismiss
27  stage and their damages expert, James Malackowski, relied on California law.  (Dkt. No. 530 at 21-22.)
    Defendants also acknowledged that Plaintiffs' fiduciary duty claim as to AIIMS was not preempted by
28

pursuant to the internal affairs doctrine but acknowledge that parties are free to agree to another choice of law on the breach of fiduciary duty claim and they are willing to agree to California law as long as it applies to the related case, *IQVIA v. MedImpact*, 21cv2081-GPC(DEB) ("*MedImpact II*") case.[8]  (Dkt. No. 666 at 7-9.)

"A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law."  *Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 589 (9th Cir. 2012) (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001)); *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir. 2001) ("In a diversity case, federal courts apply the substantive law of the forum in which the court is located, including the forum's choice of law rules.").  Here, California's choice of law rule applies.

California has adopted and codified the "internal affairs doctrine," which requires a court to apply the law of the state of incorporation to those matters concerning the internal affairs of a corporation.  *State Farm Mut. Auto. Ins. Co. v. Superior Ct.*, 114 Cal. App. 4th 434, 442 (2003); *Vaughn v. LJ Int'l, Inc*., 174 Cal. App. 4th 213, 223 (2009): Cal. Corp. Code § 2116 ("The directors of a foreign corporation transacting intrastate

---

CUTSA but did not make the further argument that the breach of fiduciary duty claim fails even as to CDS.  (*See id.* at 21.)

[8] Plaintiffs argue that whatever law applies in this case will need to be applied in *MedImpact II* because both cases involve the same joint venture and same board of directors.  (Dkt. No. 666 at 9-10.) Defendants respond that *MedImpact II* is a distinct case "involving different facts, different issues, and different parties."  (Dkt. No. 689 at 15.)  Moreover, they argue a waiver of Cayman law would not apply in *MedImpact II* because Cayman law has been timely raised; nevertheless, they argue that because *MedImpact II* is a separate and distinct case, the Court's ruling in this case should not apply in *MedImpact II*.  The Court agrees with Defendants that it cannot determine which law to apply to the breach of fiduciary duty claim in *MedImpact II* because it is a separate case; however, the Court disagrees with Defendants that *MedImpact II* involves distinct facts, issues and parties.  The cases are related as demonstrated by Defendants' attempt to file the *MedImpact II* complaint as counterclaims in this case. The Court also recognizes that the policy behind the internal affairs doctrine is to avoid inconsistent application of different state laws when it comes to the internal affairs of a corporation. *Lidow v. Superior Ct*., 206 Cal. App. 4th 351, 358-59 (2012) (citation omitted). However, at this time, the Court is not in a position to make a ruling on which law applies in *MedImpact II*.

business are liable to the corporation, its shareholders, creditors, receiver, liquidator or trustee in bankruptcy for the making of unauthorized dividends, purchase of shares or distribution of assets or false certificates, reports or public notices or other violation of official duty according to any applicable laws of the state or place of incorporation or organization, whether committed or done in this state or elsewhere."). "The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands." *Lidow v. Superior Ct.*, 206 Cal. App. 4th 351, 358-59 (2012) (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982) (internal quotation marks omitted)). Simply put, matters of internal corporate governance fall within the internal affairs doctrine and those that go beyond internal corporate governance do not. *Id.* at 363 (citing *Vaughn*, 174 Cal. App. 4th at 223 (quoting *Atherton v. FDIC*, 519 U.S. 213, 224 (1997) ("States normally look to the State of a business' incorporation for the law that provides the relevant corporate governance general standard of care.").

Here, MIA was incorporated in the Cayman Islands in 2012. (Dkt. No. 545, Ds' Reply to SSUF, No. 215 (UNDER SEAL)); therefore, under California's "internal affairs doctrine", Cayman law applies to the breach of fiduciary claim against Dr. Ghosheh.

### 2.      Exception to Internal Affairs Doctrine

Defendants argue that the exception to the internal affairs doctrine applies because the claims against Dr. Ghosheh have nothing to do with the Cayman Islands, none of the parties are residents of Cayman Islands and the alleged conduct did not occur there. (Dkt. No. 669 at 14.) Instead, California has a more significant relationship to and interest in protecting against harm caused by unfair competition as well as misappropriation of trade secrets. (*Id.* at 15.) In their opposition, they further argue that many of Plaintiffs cases predate *Lidow* and also involved derivative, not direct, breach of fiduciary duty claims. (Dkt. No. 689 at 14.)

1           Plaintiffs argue that the internal affairs doctrine requires application of Cayman

2    Island law on the breach of fiduciary duty claim based on the relationship between Dr.

3    Ghosheh, as a director, and MI-HK, as a shareholder, because that relationship is internal

4    to the corporation.  (Dkt. No. 666 at 8.)  They further contend that the exception to the

5    internal affairs doctrine does not apply because the interests at stake are internal to MIA

6    and do not implicate statewide interests.  (*Id.* at 8-9.)  They also disagree with

7    Defendants' argument relying on the location of the alleged misconduct conduct and

8    instead the focus should be on whether there are internal corporate relationships.  (Dkt.

9    No. 690 at 11.)

10           California recognizes a limited exception to the internal affairs doctrine "*where,*

11    *with respect to the particular issue, some other state has a more significant relationship .*

12    *. . to the parties and the transaction . . .* [t]here is no reason why corporate acts involving

13    the making of contracts, the commission of torts and the transfer of property should not

14    be governed by the local law of different states.  *Id.* at 359 (quoting Restatement 2d

15    Conflicts of Laws, §§ 302, 309) (internal quotation marks omitted) (emphasis in

16    original).  "[C]ourts are less apt to apply the internal affairs doctrine when vital statewide

17    interests are at stake, such as maintaining the integrity of California security markets and

18    protecting its citizens from harmful conduct. . . [and] when less vital state interests are at

19    stake (e.g., whether a foreign corporation headquartered in another state pays promised

20    dividends to its shareholders, or whether the shareholder of a foreign corporation must

21    fulfill certain procedural requirements set before bringing a derivative suit), courts are

22    more apt to apply the internal affairs doctrine."  *Id.* at 362.

23           In *Lidow*, the issue of first impression before the court was "whether the

24    termination of a corporate officer for reasons that allegedly violate public policy falls

25    within the scope of a corporation's internal affairs."  *Lidow*, 206 Cal. App. 4th at 360.

26    The court held that while removal of a CEO falls within the internal affairs of a

27    corporation, the facts in the case, removing an officer in retaliation for his complaints

28    about illegal or harmful activity and breaches of ethical conduct, go beyond internal

governance and touches upon the broader public interest in protecting California residents from harmful conduct.  *Id.* at 362, 363-64 ("[o]ur Supreme Court has long recognized that claims for wrongful termination in violation of public policy serve vital interests insofar as they impose liability on employers who coerce their employees to engage in criminal or other harmful conduct, or employers who retaliate against their employees for speaking out against such conduct."); *see Friese v. Superior Ct.*, 134 Cal. App. 4th 693, 708-09 (2006) (insider trading not subject to the internal affairs doctrine because of broad public interest to protect California residents against fraud in the sale of securities of a foreign corporation).

The California Supreme Court, in dicta, has suggested and the Ninth Circuit has applied the internal affairs doctrine to breach of fiduciary duty claims.  *See Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal. 4th 459, 471 (1992) ("even in the absence of a choice-of-law clause, Hong Kong's overriding interest in the internal affairs of corporations domiciled there would in most cases require application of its law."); *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1527 (9th Cir. 1985) *superseded on other grounds as stated in Mattel, Inc. v. MGA Entm't, Inc.,* 705 F.3d 1108, 1110 (9th Cir. 2013) ("[i]ndemnification of corporate directors" similar to breach of fiduciary duty, involves internal affairs of corporation); *see also Vaughn,* 174 Cal. App. 4th at 223-25 n. 5 (applying internal affairs doctrine to breach of fiduciary duty claim in derivative action by shareholder alleging the defendant overstated the company's financial results by understating tax liability, falsely projected full profitability and misleadingly predicted the company would meet or exceed its goal); *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1215 (N.D. Cal. 2007) (claims related to internal affairs of a corporation include "claims for breach of fiduciary duty, accounting, unjust enrichment, rescission, constructive fraud, corporate waste, breach of contract, gross mismanagement, and restitution"); *Voss v. Sutardja*, No. 14-01581-LHK, 2015 WL 349444, at *9 (N.D. Cal. Jan. 26, 2015) (applying internal affairs doctrine to breach of fiduciary duty claim concerning shareholder derivative action as it related to underlying patent litigation, and

19cv1865-GPC(DEB)

rejecting the plaintiff's argument that an exception to internal affairs doctrine should apply simply because of the company's extensive contacts with California); *Booth v. Strategic Realty Trust, Inc.*, No. 13-04921-JST, 2014 WL 3749759, at *8-9 (N.D. Cal. July 29, 2014) (undisputed and applying Maryland law to a breach of fiduciary duty claim alleging directors paid themselves unearned fees, entered into agreements unfair to SRT; provided SRT with worthless financial guarantees; and acquired properties on terms outside the company's investment objectives, which violated its loan covenants based on the internal affairs doctrine concerning derivative claims); *Miele v. Franklin Resources, Inc*., Case No. 3:15–cv–00199–LB 2015 WL 4934071, at *1, 8 (N.D. Cal. Aug. 18, 2015) (applying internal affairs doctrine to claims arising out of the defendant's alleged failure to safeguard the plaintiff's shares that he asserted were transferred in the 1990s without his consent and that now would be worth approximately $136,000,000.). However, the cases that have applied the internal affairs doctrine to breaches of fiduciary duty involved an officer or directors' conduct relating to corporate governance and/or derivative claims raised by shareholders alleging harm to the corporation.

In determining whether the exception to the internal affairs doctrine applies, a court is directed to analyze the specific claim at issue, and whether that claim implicates a broader public interest that California has a vital interest in protecting. *See Lidow,* 206 Cal. App. 4th at 359; *Kaul v. Mentor Graphics Corp*., No. 16-CV-02496-BLF, 2016 WL 6249024, at *9 (N.D. Cal. Oct. 26, 2016), *aff'd*, 730 Fed. App'x 437 (9th Cir. 2018) (holding that the law of the state where a company is incorporated should apply to breach of fiduciary duties unless there is no choice-of-law clause in the agreement and it is an unusual case where a different state has a more significant relationship to the parties and corporation).

In general, California has a strong interest in providing a forum to its residents for causes of action arising from the misappropriation of trade secrets. *See e.g., Integral Dev. Corp. v. Weissenbach*, 99 Cal. App. 4th 576, 591-92 (2002) ("California has a manifest interest in providing a local forum for its residents to redress injuries inflicted by

out-of-state defendants . . . [t]he enactment of CUTSA indicates a strong legislative intent to protect California residents against the misappropriation of their trade secrets."); *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1078 (N.D. Cal. 2016) ("The public interest is served by protecting trade secrets."); *Bank of Am., N.A. v. Lee*, No. CV 08–5546 CAS(JWJX), 2008 WL 4351348, at *7 (C.D. Cal. Sept. 22, 2008)  ("While California has a strong public policy in favor of competition, this interest yields to California's interest in protecting a company's trade secrets.").

In *Int'l Petroleum Prods*., the district court held that the internal affairs doctrine did not apply to claims relating to misappropriation of trade secrets as the "breaching of contracts, the commission of torts, and the pilfering of IPAC's trade secrets by the officers of Black Gold for the benefit of themselves and PXL Chemicals cannot be inoculated merely by calling them the 'internal affairs' of Black Gold" as they did not concern corporate governance.  *See Int'l Petroleum Prods. And Additives Co., Inc. v. Black Gold S.A.R.L.*, Case No. 19-cv-03004-YGR (RMI), 2021 WL 7448611, at *10 (N.D. Cal. Oct. 7, 2021), *report and recommendation adopted by* 2021 WL 8154891 (Dec. 7, 2021).

*Int'l Petroleum Prods*. concerned two agreements between the plaintiff IPAC, a California based business engaged in the development, production, marketing and sale of additives used in petrochemical products, and the defendant Black Gold, a seller and distributor of petroleum products, incorporated in Monaco.  *Id*. at *1.  The shareholders and officers of Black Gold were a married couple, Mr. and Mrs. Napoleonis.  *Id.*  IPAC and Black Gold entered into two contracts.  *Id.*  One was a sales agreement where Black Gold would receive a commission on its sales of IPAC products and Black Gold agreed it would not sell any products that compete with IPAC's products and would agree to keep IPAC's sensitive information confidential.  *Id.*  The second distributor agreement allowed Black Gold to purchase IPAC's products for resale and that agreement also included an agreement that Black Gold would not compete directly with the business of IPA and keep IPAC's sensitive information confidential.  *Id*.  During the pendency of the agreements,

Mr. Napoleoni formed a competitor company, PXL, with the use of IPAC's confidential information.  *Id.* at 1-2.  IPAC filed an arbitration demand alleging breach of both agreements as well as breach of the duty of good faith and fair dealing, breach of the duty of loyalty, tortious interference of contractual relations and misappropriation of trade secrets.  *Id.* at 2.  The arbitrator ruled in favor of IPAC and found, among other things, that Black Gold had misappropriated IPAC's confidential information and sold PXL products which caused a decline in IPAC's sales.  *Id.* at 2.  In the process of confirming the arbitration award and amending the judgment in federal court, the district court was faced with the question of whether California or Monaco law should apply to IPAC's request to amend the judgment to include the Napoleonis as alter egos of Black Gold so they would be joint and severally liable with Black Gold.  Black Gold argued that Monaco law should apply to the issue of the alter ego claim because it concerned the relationship among or between Black Gold and its shareholders, the Napoleonis.  *Id.* at 10.

The district court held that the internal affairs doctrine did not apply.  While recognizing that the internal affairs doctrine applies to corporate governance, *id*. at 11, the court stated that the issue was not about how the Napoleonis governed Black Gold but about their decision to use Black Gold in order to steal IPAC's trade secrets and to form PXL in order to unfairly compete with IPAC while using "IPAC's own proprietary data to outsell it using knock-off products."  *Id.*

While *Int'l Petroleum Prods*.[9] concerned breaches of contracts and not breach of fiduciary duty between officers/directors and shareholders, the case highlights that trade secret misappropriation does not relate to corporate governance and falls outside the

---

[9] The court in *Int'l Petroleum Prods*. summarily stated that breach of fiduciary duty actions typically relate to the internal affairs of a corporation, 2021 WL 7448611, at *10; however, it was citing a case, *CleanFish, LLC v. Sims*, No. 19cv3663-HSG, 2020 WL 1274991 at *12 (N.D. Cal. Mar. 17, 2020), that applied the internal affairs doctrine on a breach of fiduciary duty concerning misappropriation of trade secret without analysis and was not in dispute by the parties.

internal affairs doctrine.  *See e.g., SC Botanicals, LLC v. Intragenix Holdings, LLC*, No. 20-1698, 2021 WL 2156503, at *5 (D. Del. May 27, 2021) (addressing exercise of personal jurisdiction and concluding that breach of contract, tortious interference, misappropriation of trade secrets, and fraud do not arise in relation to the corporate governance or internal affairs of a limited liability company).

Here, in order to determine whether the exception to the internal affairs doctrine applies, the Court must consider whether California has a vital interest in the issues in the case.[10]  The breach of fiduciary duty cause of action alleges that Dr. Ghosheh, a director of MIA, created opportunities for personal gain and diverted those opportunities to one shareholder, Dimensions, causing harm to the other shareholder, MI-HK,[11] by misrepresenting that AIMS was not a PBM, stealing the JV's existing clients and aiding IQVIA in selling MedImpact's pharmaceutical data processed for the JV.  (Dkt. No. 93, FAC ¶ 110.)  These actions by Dr. Ghosheh do not implicate corporate governance such as the election/appointment of directors or officers, issues related to by-laws, issuance of corporate shares, holding of meetings, voting, right to examine records, or reclassification of shares, *see Lidow*, 206 Cal. App. 4th at 359, but concern conduct outside of corporate governance.  *See Int'l Petroleum Prods. And Additives Co., Inc.*, 2021 WL 7448611, at *10.  Therefore, the Court concludes that the exception to the internal affairs doctrine applies and will apply California law to the breach of fiduciary duty and related conspiracy causes of action.[12]

---

[10] Defendants' argument concerning the parties' connection with Cayman Islands is not part of the analysis for the exception to the internal affairs doctrine.

[11] The FAC alleges MI-HK is a private Hong Kong corporation but it is a wholly owned subsidiary of MIL, which is a wholly owned subsidiary of MHSI.  (Dkt. No. 93, FAC ¶ 16.)  "MI-HK's principal place of business is also in San Diego, California where MedImpact is headquartered. MedImpact employees in San Diego support MI-HK's business strategies and initiatives." (*Id.*)  Therefore, California would have an interest in protecting the interests of MI-HK.

[12] Defendants, relying on *Rustico v. Intuitive Surgical, Inc.*, 993 F.3d 1085, 1091 (9th Cir. 2021), suggest that once the internal affairs doctrine exception applies, the Court must then conduct California's common law governmental interest test to determine which law to apply.  (Dkt. No. 669 at 15.)  However, *Rustico* addressed general choice of law principles and did not concern the internal

### 3.    Rule 44.1 Waiver of Foreign Law

Defendants additionally argue that California law applies because Plaintiffs waived the application of Cayman law by failing to provide reasonable and timely notice, and therefore, they have been prejudiced.  (Dkt. No. 669 at 10-11.)  Plaintiffs maintain that they raised Cayman law in February 2022, the first opportunity to raise it after they learned about it, and Defendants had sufficient time to research Cayman law.  (Dkt. No. 690 at 13-18.)

Federal Rule of Civil Procedure 44.1 provides that a "party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing."  Fed. R. Civ. P. 44.1.  Rule 44.1's purpose is to "avoid unfair surprise" during discovery or at trial.  Fed. R. Civ. P.  44.1, Advisory Committee Notes.  The rule does not set a definite limit on the time for giving notice of an issue of foreign law because the relevance of foreign law may not be apparent at the outset and "the issue may not become apparent until the trial and notice then given may still be reasonable."  *Id.*  To determine whether a

---

affairs doctrine.  In response, Plaintiffs, relying on *Voss,* 2015 WL 349444, at *7, contend that the Court need not address the governmental interest test arising from the common law because California has codified the internal affairs doctrine.  (Dkt. No. 690 at 11.)  Plaintiffs also note that in applying the internal affairs doctrine exception, the court of appeal in *Lidow* did not consider the governmental interest test when it determined that the exception applied.  (*Id.* at 11-12.)  The Court agrees with Plaintiffs.  In *Voss,* the district court concluded it did not need to conduct the common law governmental interest test because the internal affairs doctrine is codified.  *See Voss,* 2015 WL 349444, at *7 (citing *McCann v. Foster Wheeler LLC*, 225 P.3d 516, 524, 527 (Cal. 2010) (governmental interest test, a product of common law, does not apply when the California legislature has passed a statute that unambiguously resolves the choice of law issue); *Wehlage v. EmpRes Healthcare Inc*., 821 F. Supp. 2d 1122, 1128 (N.D. Cal. 2011) ("Where a statute dictates the choice-of-law, the court need not apply a common law choice-of-law analysis.") (citing *Barclays Disc. Bank Ltd. v. Levy*, 743 F.2d 722, 725 (9th Cir. 1980) ("however, when there is a statute covering choice of law which is expected to change common law choice of law principles . . . Restatement principles do not control")).  Here, because the internal affairs doctrine is codified, and the court of appeal in *Lidow* did not conduct the governmental interest test when it held that the internal affairs exception applied, the Court concludes it need not take the unnecessary step to conduct the governmental interest test as proposed by Defendants.  Even if the governmental interest test applies, neither party, including Plaintiffs, has articulated any interest under Cayman law in protecting trade secrets and unfair competition of corporations.  (*See* Dkt. Nos. 669 at 16-17; Dkt. No. 666 at 8-9; Dkt. No. 690 at 12-13; *see also Rustico v. Intuitive Surgical, Inc*., 993 F.3d 1085, 1091 (9th Cir. 2021) (articulating the governmental interest test).)

notice is reasonable, courts should consider "the stage which the case had reached at the time of the notice, the reason proffered by the party for his failure to give earlier notice, and the importance to the case as a whole of the issue of foreign law sought to be raised." *Id.*; *see APL Co. Pte. Ltd. v. UK Aerosols Ltd*., 582 F.3d 947, 955 (9th Cir. 2009) (applying these factors on Rule 44.1 analysis). The district court has discretion in determining whether there was reasonable notice of Cayman law under Rule 44.1. *See DP Aviation v. Smiths Indus. Aerospace and Defense Sys. Ltd*., 268 F.3d 829, 832, 845 (9th Cir. 2001).

### a.  Stage of Case at Time of Notice and Reasons Proffered

Defendants argue that Plaintiffs failed to provide reasonable and timely notice of the application of Cayman law because they have known that MIA was incorporated in the Cayman Islands since the inception of the case but Cayman law was not raised until April 2022 in Plaintiffs' opposition to Defendants' summary judgment motion which was long after discovery had closed. (Dkt. No. 669 at 10.) Moreover, prior to April 2022, Plaintiffs relied on California law in response to challenges to the breach of fiduciary duty claim during the motion to dismiss stage, and their damages expert, James Malackowski, also relied on California law on his damages opinion concerning breach of fiduciary duty. (*Id.*)

Plaintiffs counter that they first raised Cayman law in their motion for partial summary judgment filed on February 25, 2022, (Dkt. No. 690 at 14), not April 2022, and declare that they were not aware that Cayman law applied to the fiduciary duty claim when they opposed Defendants' motion to dismiss on July 10, 2020. (Dkt. No. 690-3, Bennett Decl. ¶ 3 ("At the time MedImpact filed an opposition to IQVIA's motion to dismiss in this case (ECF No. 111), MedImpact was not aware that Cayman law may apply to its fiduciary duty claim brought in California.").) However, after learning that Cayman law controls, Plaintiffs claim they raised Cayman law at the first opportunity available in February 2022 when they filed their motion for partial summary judgment. (Dkt. No. 690 at 16.)

In support, Plaintiffs rely heavily on the Ninth Circuit case of *DP Aviation* for the general assertion that notice is sufficient as long as it is provided at the time of the pretrial conference.  (Dkt. No. 690 at 14-15.)

In *DP Aviation*, the district court held a bench trial and entered judgment in favor of the plaintiff on a breach of contract claim and applied Washington state law.  *DP Aviation*, 268 F.3d at 832, 836.  After the trial, the plaintiff submitted a proposed judgment to which the defendant objected arguing that the prejudgment interest should be calculated under English Law.  *Id.* at 836.  After additional briefing on which law applies, the district court ultimately applied Washington law to the award of prejudgment interest.  *Id.*

On appeal, the Ninth Circuit held that the defendant failed to provide reasonable notice of English law under Rule 44.1.  *Id.* at 845.  Despite the choice of law provision in the contract invoking English law, the parties relied on Washington law throughout the case.  *Id.*  The court also rejected the defendant's argument that it raised English law in its briefing on summary judgment based on contract interpretation when it stated, "[i]t does not appear that the law of Washington is materially different from English law on these issues."  *Id.* at 846.  The court explained that this statement did not provide notice that the defendant was invoking English law on prejudgment interest.  *Id.* ("As SIADS was disclosing no material difference between English and Washington substantive law of contract, it cannot fairly be said that SIADS was implying that such a difference existed for prejudgment interest.").  The court also explained that the defendant "should reasonably have expected that prejudgment interest would be an issue if liability were determined. We see no reason in law or policy to condone a belated notice of contention of application of foreign law on an issue that reasonably can be anticipated."  *Id.* at 848.  Ultimately, the court held that the defendant failed "to show that prior notice was impracticable or that the need for notice was not reasonably foreseeable."  *Id.* at 849.

The Ninth Circuit stated that "notice of intent to raise an issue of foreign law, if not given in the pleadings, *generally* should be given before or during the pretrial conference,

and normally a contention of application of foreign law should be disclosed at the latest in the pretrial order. *Id.* at 847 (emphasis added). But the court provided additional guidance by stating that it "[i]s only fair to provide notice of potential application of foreign law as early as is practicable and, in any event, at a time that is reasonable in light of the interests of all parties and the court." *Id.* at 847. The court explained that reasonable notice provides the "parties ample opportunity to marshal resources pertinent to foreign law, which normally will not be as well known as domestic law to parties and courts" and the "[i]nterests of judicial economy favor early notice so that the parties may plan and present argument on any issues pertinent to an application of foreign law." *Id.* at 848.

Therefore, the Court disagrees with Plaintiffs' reliance on the proposition that the notice of foreign law is reasonable in their case as long as foreign law is raised at the time of the pretrial conference. Instead, the Ninth Circuit asserted that notice of the application of foreign law must be provided "as early as is practicable" and must be "reasonable" considering the interests of the parties and the court. *See Von Jones v. Chapungu Safaris*, No. 1:11–cv–00027–BLW, 2013 WL 5876280, at *2 (D. Idaho Oct. 31, 2013) ("But a notice given before the pretrial conference might still be unreasonable under Ninth Circuit authority. The key is that the party seeking to invoke foreign law should do so 'as early as is practicable and, in any event, at a time that is reasonable in light of the interests of all parties and the court.'").

In *APL Co. Pte. Ltd.*, another Ninth Circuit case applying Rule 44.1, the court held the plaintiff's notice to invoke Singapore law on a motion for attorneys' fees after liability had been determined was reasonable. *APL Co. Pte. Ltd.*, 582 F.3d at 956. The Ninth Circuit explained that the plaintiff reserved its right to invoke Singapore law at summary judgment stating, "by arguing U.S. law in this motion, APL does not waive the right to contend Singapore law applies to other issues in the case". *Id.* at 955. It was not until the issue of Singapore law became material at the motion for attorneys' fees stage that reasonable notice was provided invoking Singapore law. *Id.* at 956.

*DP Aviation* and *APL Co. Pte. Ltd.* both involve the invocation of foreign law after the determination of liability.   However, in cases where the applicability of foreign law is relevant and material prior to trial, district courts have held that failing to provide notice earlier in the case may be unreasonable under the circumstances of the case.   *See Von Jones*, 2013 WL 5876280, at *1-2 (invocation of Zimbabwe law unreasonable in supplemental post-hearing brief on summary judgment where the defendants did not explain why they did not provide earlier notice and moved for summary judgment based on Idaho law "putting plaintiff and the Court to the task of analyzing the issues under Idaho law" and where changing course would be inefficient and prejudicial to the plaintiff); *Flintkote Co. v. Gen. Accident Ass. Co. of Canada*, No. C 04-1827 MHP, 2009 WL 3568644, at *5 (N.D. Cal. Oct. 27, 2009) (concluding that the defendant failed to timely raise Canadian law when the issue became "material" and instead applied California law and decided by the court under California law even though the defendant provided earlier notice that Canadian law might apply).

Here, the Court finds that Plaintiffs provided notice that Cayman law would apply on February 25, 2022 when they filed their motion for summary judgment and cited to Cayman law to support certain elements of a fiduciary duty claim.  (Dkt. No. 405-1 at 17, 20, 25.)  Plaintiffs attest that they were not aware that Cayman law applied to the breach of fiduciary duty claim at the time they filed the opposition to Defendants' motion to dismiss on July 10, 2020, and submit that February 2022 was the first opportunity to raise Cayman law in the case.  (Dkt. No. 690-3, Bennett Decl. ¶ 3.)  Yet, they fail to explain why they continued to rely on California law related to the breach of fiduciary duty claim in their opposition to Defendants' motion for partial summary judgment on January 21, 2021 and in opposition to Defendants' motion for leave to file a second amended answer and counterclaims on September 24, 2021.  (*See* Dkt. No. 170 at 19 (1/21/21); Dkt. No. 323 at 26 (9/24/21).)  Further, in an expert report dated October 29, 2021, Plaintiffs' damages expert applied California law when analyzing damages for breach of fiduciary duty claim.  (Dkt. No. 669-1 Schmit Decl. ¶ 3; *id.*; Ex. 1, Malackowski Report § 11.2 at

75-76.)  Finally, on July 6, 2021, IQVIA AG's response to Plaintiff's Request for Admission asking "[a]dmit that Dr. Omar Ghosheh owed fiduciary duties to MedImpact Arabia as member of the Board of Directors of MedImpact Arabia, stated "IQVIA AG admits that Dr. Ghosheh is bound by the law of the Cayman Islands with respect to his fiduciary duties to the joint venture as a director thereof, and objects to being obligated to characterize or summarize that law."[13]  (Dkt. No. 600 at 6-7.)  This response provided Plaintiffs with notice that Cayman law should apply in July 2021 and it is not evident why Plaintiffs continued to rely on California law when Mr. Malackowski disclosed his expert report on October 29, 2021.

Accordingly, the Court concludes that Plaintiffs have not provided sufficient reasons or extenuating circumstances why they raised Cayman law in February 2022 after the parties and the Court applied California law in prior motions and when all discovery had been completed.  *See Nike Int'l, Ltd. v. HDS Mfg. Mktg. and Distrib*. of *Sports Prods*., CIV. No. 86–1395–FR, 1989 WL 97882, at *1 (D. Or. Aug. 18, 1989) (foreign law waived because notice was unreasonable in supplemental motion for summary judgment because Nike has been aware of the facts upon which it now relies to assert the applicability of English law, it relied on Oregon law in its motions for summary judgment on defendants' counterclaims, discovery was conducted with the understanding that Oregon law would apply and Nike failed to provide an explanation why it did not give notice earlier); *cf. Mitsui Sumitomo Ins. Co., Ltd. v. Shaughnessy Heavy Indus., Inc*., No. C04-1666MJP, 2006 WL 126438, at *4 (W.D. Wash. Jan. 17, 2006) (notice was reasonable when foreign law raised at summary judgment because plaintiff did not know the defendant would raise the waiver of subrogation as an affirmative defense in this

---

[13] While it appears that Plaintiffs presented this additional evidence to support the lack of prejudice of Defendants regarding knowledge of the applicability of Cayman law much sooner than February 2022, this evidence also provided Plaintiffs with notice, if they had not yet known, of the applicability of Cayman law and it was their burden to raise the foreign law under Rule 44.1.

matter and summary judgment was the "first point at which this issue became pertinent to this case").

### b.     Importance to the Case as a Whole of the Issue of Foreign Law Sought to be Raised

Defendants argue that they will be prejudiced if waiver of Cayman law is not found because Plaintiffs waited years before raising Cayman law until after fact and expert discovery had closed and deprived them of the opportunity to litigate their defenses under Cayman law.  (Dkt. No. 669 at 11.)  Plaintiffs respond that Defendants will not be prejudiced because they had notice since February 2022, and they, in fact, apply Cayman law in the instant supplemental briefing.  (Dkt. No. 690 at 17.)  Further, Defendants have failed to articulate any additional discovery that needs to be conducted as to Dr. Ghosheh and expert testimony on Cayman law is not needed because Cayman cases are written in English, and Cayman law is derived from the common law of England, just like California law.  (*Id.* at 18.)

In *DP Aviation*, the Ninth Circuit rejected the defendant's argument that the plaintiff had an adequate opportunity to brief the application of foreign law at the time the late notice was given stating the defendant "could have anticipated the issue of prejudgment interest and given notice before the pretrial conference. . . .We cannot say with confidence that DPA was not prejudiced by the late timing of the notice." *DP Aviation*, 268 F.3d at 849.  Therefore, Defendants' ability to brief Cayman law in their supplemental brief does not demonstrate lack of prejudice.

Since the inception of the case, Plaintiffs have relied on California law until February 2022.  At the hearing, Plaintiffs argued there is no prejudice to IQVIA because even if Cayman law applied from the beginning, the Court's ruling would not have been any different.  While the Court recognizes that may be so, a troubling factor is Mr. Malackowski's reliance on California law in assessing damages for breach of fiduciary duty.  Due to his report, Defendants retained a rebuttal damages expert, Dr. Patrick Kennedy, to perform a damages analysis to determine damages Plaintiffs suffered due to

Defendants' alleged misconduct and provide rebuttal testimony as to Plaintiffs' designated expert.  (Dkt. No. 421-3, Bennett Decl., Ex. 1 at 4.)  Dr. Kennedy, in his report, rebutted Mr. Malackowski's calculation of damages based on disgorgement of profits.[14]  (Dkt. No. 483, Bennett Decl., Ex. 7, Kennedy Expert Report ¶¶ 53, 66-73 (UNDER SEAL).)  Therefore, Defendants' rebuttal expert unnecessarily conducted an analysis based on California law.

Further, this factor also considers the importance of Cayman law to this case. Because Plaintiffs have proposed that they are willing to forego the application of Cayman law as long as California law also applies in *MedImpact II* and Plaintiffs argue that Cayman and California law are both derived from the common law of England, the application of Cayman law does not appear to be important to the case as a whole.  *See Sosa v. Pfeiffer*, Civil No. 10cv0280 JAH (BLM), 2013 WL 5204104 at *3 (S.D. Cal. Sept. 16, 2013) (argument that "action is precluded by res judicata by the Mexican Labor Court action demonstrates the significance of Mexican law to the matter.").  Therefore, the Court concludes this factor also supports waiver.

Therefore, in sum, the Court exercises its discretion and concludes that Plaintiffs have failed to provide reasonable notice under Rule 44.1 and waived the application of Cayman law on the breach of fiduciary duty claim.

Ruling that the exception to the internal affairs doctrine applies and Plaintiff have waived the application of Cayman law under Rule 44.1, the Court now applies California law to the breach of fiduciary duty and conspiracy causes of action.

/ / /

/ / /

/ / /

---

[14] The Court recognizes that Dr. Kennedy referenced Cayman law and damages available in connection with the breach of fiduciary duty claim, but his opinion primarily rebutted Mr. Malackowski's expert opinion on breach of fiduciary duty relying on California law. (Dkt. No. 483, Bennett Decl., Ex. 7, Kennedy Expert Report ¶ 53 (UNDER SEAL).)

### 4.      Breach of Fiduciary Duty Claim Under California Law

As a threshold matter, the parties agree that the breach of fiduciary duty claim as it relates to AIMS, a misappropriated product, is preempted by CUTSA.[15]  (Dkt. No. 666 at 11; Dkt. No. 669 at 17-18.)  Accordingly, the Court GRANTS Defendants' motion for summary judgment on the breach of fiduciary duty claim based on trade secret misappropriation as it relates to AIMS.

Defendants argue that MedImpact lacks standing to bring the breach of fiduciary duty claim as it relates to CDS, a competing product, because it is a derivative claim[16] alleging competition with the joint venture or diversion of a corporate opportunity.  (Dkt. No. 669 at 19.)  Plaintiffs respond that the fiduciary duty claim is a direct claim and not a derivative one and the Court made that ruling at the motion to dismiss stage.  (Dkt. No. 690 at 20.)

Corporate directors and officers owe a fiduciary duty to the corporation and its shareholders.  *Berg & Berg Enters., LLC v. Boyle*, 178 Cal. App. 4th 1020, 1037 (2009). Shareholders may bring either "a *direct* action filed by the shareholder individually (or on behalf of a *class* of shareholders to which he or she belongs) for injury to his or her interest as a *shareholder*," or a "*derivative* action filed *on behalf of the corporation* for *injury to the corporation* for which it has failed or refused to sue."  *Schuster v. Gardner*, 127 Cal. App. 4th 305, 311 (2005) (emphasis in original) (citation omitted). In general, "an action is derivative if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance of distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets."  *Id.* at 313.  "We recognize that an action may lie both

---

[15] Even in the underlying MSJ briefing, Defendants did not disagree that the claims regarding CDS was not preempted. (Dkt. No. 530 at 21 "Plaintiffs' fiduciary duty claim is preempted by CUTSA (other than as it relates to CDS).")

[16] Interestingly, Defendants, in support of the exception to the internal affairs doctrine, suggested that the breach of fiduciary duty claims were direct in nature.  (Dkt. No. 669 at 14-15.)

derivatively and individually based on the same conduct. . . . the pivotal question is whether the injury is incidental to or an indirect result of a direct injury to the corporation or to the whole body of its stock or property." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

"An individual cause of action exists only if damages to the shareholders were not *incidental* to damages to the corporation." *Schuster*, 127 Cal. App. 4th at 313.*; Lapidus v Hecht*, 232 F.3d 679, 683 (9th Cir. 2000) ("A shareholder does not acquire standing to maintain a direct action when the alleged injury is inflicted on the corporation and the only injury to the shareholder is the indirect harm which consists of the diminution in the value of his or her shares."). "To determine whether shareholder claims are direct or derivative, [the court] must examine both who suffered the harm alleged—the shareholders or the corporation—and who would receive the benefit of any remedy." *Indiana Elec. Workers Pension Trust Fund, IBEW v. Dunn*, 352 Fed. App'x 157 (9th Cir. 2009) (unpublished).

In a prior order on Defendants' motion to dismiss, the Court ruled that Plaintiffs sufficiently alleged facts to support a direct-action suit by MI-HK to survive a motion to dismiss. (Dkt. No. 130 at 41.) The Court noted that the FAC alleged that while MI-HK and Dimensions are the two shareholders in the JV, the harm alleged was specific to Plaintiffs and not to Dimensions. (*Id.*) As an example, the Court explained that IQVIA's acquisition of Plaintiffs' pharmaceutical claims data through Dimensions and subsequent sale to pharmaceutical companies in California alleged injuries suffered by Plaintiffs and not Dimensions or the JV, because it was the only shareholder kept in the dark about Defendants' fraudulent scheme and their injuries were separate and distinct. (*Id.*)

Here, Defendants simply contend that because the Court granted summary judgment on the claims data allegations in the FAC, the Court's reasoning on the motion to dismiss based on the claims data allegation to support the breach of fiduciary duty claim also "vanished." (Dkt. No. 669 at 20.) Therefore, the Court's prior ruling no longer supports standing for a direct breach of fiduciary duty claim. (*Id.*) Defendants

argue that what remains are the allegations that Dr. Ghosheh breached his fiduciary obligation to MIA by diverting opportunities from MIA to Dimensions and IQVIA. (*Id.*) Because MIA lost business as a result of this alleged conduct, MIA's revenue would decrease and MI-HK and Dimensions would both share in the losses equally as joint shareholders. (*Id.*) Therefore, the harm is against MIA and is a derivative claim.

The Court disagrees. The FAC alleges Dr. Ghosheh owed a fiduciary duty to the two shareholders, MI-HK and Dimensions as well as the JV. (Dkt. No. 93, FAC ¶¶ 74-76, 109.) Dr. Ghosheh allegedly breached his fiduciary duty to the "the JV and MedImpact by secretly creating opportunities for personal gain and diverting those opportunities to Dimensions and IQVIA, including concealing the purpose behind IMS Health's acquisition of Dimensions, misrepresenting the AIMS platform as not PBM, stealing the JV's existing clients, and assisting IQVIA in selling the pharmaceutical data MedImpact processed for the JV."[17] (Dkt. No. 93, FAC ¶ 110.) As to CDS, Plaintiffs argue that Dr. Ghosheh worked with Dimensions and Defendants to market, offer and sell CDS through Dimensions without informing MI-HK. (Dkt. No. 690 at 23.)

MI-HK and Dimensions were the only two shareholders in the JV, (Dkt. No. 93, FAC ¶ 11), and the alleged wrongful conduct concerns diverting customers and business opportunities away from one shareholder, MI-HK and into the pockets of the other shareholder, Dimensions. Therefore, Plaintiffs have alleged an injury solely to MI-HK and not to the corporation as a whole, meaning injury to both MI-HK and Dimensions. *See Schuster,* 127 Cal. App. 4th at 313 ("an action is derivative if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance of distribution among individual holders"). Thus, Plaintiffs have

---

[17] In their response brief, Plaintiffs also maintain that the claims data allegations against Dr. Ghosheh still remain on the breach of fiduciary duty claim and are not preempted by CUTSA because the Court ruled on summary judgment that the claims data allegations are not trade secrets. (Dkt. No. 690 at 21-22, 26.)

standing to bring a breach of fiduciary duty claim against Dr. Ghosheh and DENIES Defendants' summary judgment motion on this basis.

Finally, Defendants maintain that the breach of fiduciary claim fails for lack of damages because there were no alleged profits relating to every contract at issue in the case. (Dkt. No. 669 at 22.)  Moreover, Plaintiffs' new theory of lost profit damages is not supported by their expert and seeking lost profits they would have made through direct business is not a viable theory because under the JVA, MI-HK was prohibited from conducting direct business.  (*Id.* at 23-24.)  In response, Plaintiffs do not directly challenge Defendants' arguments but disagree with Defendants because their arguments are limited to financial losses.  (Dkt. No. 690 at 24.)  Instead, Plaintiffs claim they suffered reputational injuries and seek an injunction enjoining Defendants from continuing to harm their reputation by "selling the pharmaceutical data."[18]  (*Id.* (citing Dkt. No. 93 FAC ¶¶ 13, 81).)

Here, Plaintiffs raise an issue of fact whether breach of fiduciary duty claim fails for lack of damages because they also seek injunctive relief.  Moreover, the Court notes that Dr. Patrick Kennedy, Defendants' economic expert, responding to Mr. Malackowski's analysis, determined that profits from the CDS-only contract amounted to $408,259.  (Dkt. No. 483, Bennett Decl., Ex. 7, Kennedy Expert Report ¶ 210 (UNDER SEAL).) Accordingly, the Court DENIES summary judgment on the breach of fiduciary duty cause of action for lack of damages.

## C.   Civil Conspiracy as to Dr. Ghosheh

Defendants simply argue the civil conspiracy claim fails because the underlying breach of fiduciary duty claim cannot survive.  (Dkt. No. 669 at 24.)  Plaintiffs respond

---

[18] In response to Defendants' argument on lack of damages, Plaintiffs contend that under California law, they may seek nominal damages in order to obtain punitive damages.  (Dkt. No. 690 at 29.)  However, because this is a new argument raised for the first time in their response brief and Defendants have not had the opportunity to brief it, the Court declines to address it.  In fact, Defendants complain that Plaintiffs were aware of the lack of damages argument yet failed to raise them in their initial brief and they are deprived of responding to Plaintiffs' position.  (Dkt. No. 689 at 17.)

that even if the breach of fiduciary duty claim were dismissed, conspiracy can still be pled as a theory of liability.  (Dkt. No. 690 at 32.)

"Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd*., 7 Cal. 4th 503, 510-11 (1994); *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1097 (C.D. Cal. 2009) (civil conspiracy is not an independent cause of action, but rather a theory of vicarious liability under which certain defendants may be held liable for torts committed by others.).  Civil conspiracy is merely derivative of its other claims.  *Teva Pharms. USA Inc. v. Health IQ LLC*, Case No.: SACV 13-00308-CJC(RNBx), 2013 WL 12132029, at *5 (C.D. Cal. Apr. 29, 2013).

The civil conspiracy claim alleges that IQVIA Defendants, Dimensions, Dr. Ghosheh and Mr. Sadana conspired "to acquire Dimensions, gain access to an immense repository of pharmaceutical data, to develop and sell ICM and AIMS, compete against MIA's and MIHS' PBM platform, enter into the PBM market without MedImpact, and sell the pharmaceutical data obtained from MedImpact's PBM."  (Dkt. No. 93, FAC ¶ 154.)  Here, because the Court denies Defendants' motion for summary judgment on certain allegations of the breach of fiduciary duty claim, the Court DENIES summary judgment on the conspiracy claim.[19]

### Conclusion

Based on the reasoning above, the Court the Court applies California law on the breach of fiduciary duty and conspiracy claims and GRANTS Defendants' motion for summary judgment on the breach of fiduciary duty claim based on trade secret misappropriation as it relates to AIMS as unopposed and DENIES summary judgment on

---

[19] The Court declines to get entangled in the parties' analysis on whether conspiracy can be preempted as Defendants did not move for judgment on civil conspiracy based on CUTSA preemption.

the remaining allegations on the breach of fiduciary duty cause of action and DENIES

summary judgment on the conspiracy claim.

IT IS SO ORDERED.

Dated:  December 19, 2022

Hon. Gonzalo P. Curiel
United States District Judge

19cv1865-GPC(DEB)